JASINSKI, P.C.
60 Park Place, 8th Floor
Newark, New Jersey 07102
T:  (973) 824-9700
F: (973) 824-6061
*Attorneys for Defendants*
*The Beverage Works NY, Inc. and Ricardo Valentine*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWIN PACHECO and NICOLAS JONES, on behalf of themselves and all others similarly-situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE BEVERAGE WORKS NY, INC., and RICARDO VALENTINE, in his individual and professional capacities,<br><br>Defendants. | Civil Action No. 14-5763 (DLI) (MDG)<br><br>**CERTIFICATION OF**<br>**DAVID F. JASINSKI, ESQ.** |

DAVID F. JASINSKI, ESQ., hereby certifies as follows:

1.      I am an attorney admitted to practice before this Court and a member of the firm of Jasinski, P.C., attorneys for Defendants The Beverage Works NY, Inc. and Ricardo Valentine ("Defendants") in this action.   In that capacity, I have personal knowledge of the facts set forth and the documents identified herein.

2.      This Certification is being submitted in support of Defendants' Motion seeking to either stay or dismiss the within action, and for entry of an order compelling individual arbitration of Plaintiffs' claims.

3.    Attached collectively hereto as Exhibit A are true and correct copies of the requests for arbitration for each of the Plaintiffs sent to Wellington Davis pursuant to the parties' collective bargaining agreement.

4.    Attached collectively hereto as Exhibit B are true and correct copies of the unpublished decisions.

*    *    *

I hereby certify that the foregoing statements made by me are true to the best of my knowledge and belief.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: December 2, 2014                  /s/ David F. Jasinski
                                          DAVID F. JASINSKI

## CERTIFICATE OF SERVICE

The undersigned, hereby certifies that he caused a true and accurate copy of the Defendant's Notice of Motion, Memorandum of Law, Certification of Jeffrey C. Brown and Certification of David F. Jasinski, Esq. to be served on December 2, 2014 upon:

***Via CM/ECF***
Alexander T. Coleman, Esq.
Borrelli & Associates PLLC
1010 Northern Blvd , Suite 328
Great Neck, NY 11201
Email: atc@employmentlawyernewyork.com


Michael J. Borrelli, Esq.
Borrelli & Associates PLLC
1010 Northern Blvd , Suite 328
Great Neck, NY 11201
Email: mjb@employmentlawyernewyork.com

Jeffrey Robert Maguire, Esq.
Borrelli & Associates PLLC
1010 Northern Blvd , Suite 328
Great Neck, NY 11201
Email: jrm@employmentlawyernewyork.com


/s/ David F. Jasinski
DAVID F. JASINSKI

# Exhibit A

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> *Re:    The Beverage Works NY, Inc.*
> *Darnell Brunston*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Darnell Brunston, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

Case 1:14-cv-05763-DLI-MDG    Document 21-3    Filed 12/02/14    Page 6 of 61 PageID #: 197

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> **Re:    *The Beverage Works NY, Inc.***
> ***Jonathan E. Hill***

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Jonathan E. Hill, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**<u>Via Electronic and Regular Mail</u>**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> *Re:    The Beverage Works NY, Inc.*
> *Samuel Hernandez*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Samuel Hernandez, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**<u>Via Electronic and Regular Mail</u>**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> *Re:*   ***The Beverage Works NY, Inc.***
> ***Nicholas Vincent Jones***

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Nicholas Vincent Jones, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A Professional Corporation  |  Counselors-At-Law

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

> *Re:*   *The Beverage Works NY, Inc.*
> *Edwin Pacheco*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees.  The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure.  You serve as a member of the arbitration panel member to resolve disputes.  A dispute has arisen between the Employer and Edwin Pacheco, a Union member, alleging violations of the CBA.  We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure.  We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI    A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**<u>Via Electronic and Regular Mail</u>**

Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

> *Re:    The Beverage Works NY, Inc.*
> *Lenny Reyes*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees.  The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure.  You serve as a member of the arbitration panel member to resolve disputes.  A dispute has arisen between the Employer and Lenny Reyes, a Union member, alleging violations of the CBA.  We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure.  We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

      *Re:   The Beverage Works NY, Inc.*
              *Efrain F. Rodriguez*

Dear Arbitrator Davis:

     The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Efrain F. Rodriguez, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

                    Sincerely,

                    JASINSKI, P.C.

                    DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**<u>Via Electronic and Regular Mail</u>**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> *Re:    The Beverage Works NY, Inc.*
> *Whitley Tavaris, Jr.*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Whitley Tavaris, Jr., a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**<u>Via Electronic and Regular Mail</u>**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> *Re:  The Beverage Works NY, Inc.*
> *Samuel Torres-Soto*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Samuel Torres-Soto, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# Exhibit B



Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Pennsylvania.
Sandra J. BABCOCK Individually and on behalf of all those similarly situated, et al, Plaintiffs,
v.
BUTLER COUNTY, et al, Defendants.

No. 12cv394.
May 10, 2012.

Justin L. Swidler Swartz Legal LLC Cherry Hill, NJ, for Plaintiffs.

Marie Milie Jones, Michael R. Lettrich, Jonespassodelis PLLC, Pittsburgh, PA, for Defendant.

MEMORANDUM AND OPINION

ARTHUR J. SCHWAB, District Judge.

*1 Plaintiffs, who are employees at a Butler County prison, allege that Defendants, Plaintiffs' employers, violated the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs allege that Defendants required them to take a one-hour meal break, but during that one hour, Plaintiffs were "on call" (which required them to remain within the prison and in their uniforms), but were not paid for fifteen minutes of this one-hour meal break.

Presently before the Court are two motions: (1) Defendants' Motion to Dismiss, or in the Alternative, Stay Proceedings (doc. no. 30), and (2) Plaintiffs' Motion to Certify Class (doc. no. 14). Plaintiffs filed a Brief in Opposition to the Motion to Dismiss, or in the Alternative, Stay Proceedings. Doc. No. 38. Defendants filed a Response in Opposition to Certify Class. Doc. No. 27.

For the reasons set forth herein, this Court will grant Defendants' Motion to Dismiss, or in the Alternative, Stay Proceedings. Doc. No. 30. In addition, based on this Court's reasoning and decision with respect to Defendants' Motion to Dismiss and/or Stay Proceedings, the Court will deny the pending Motion to Certify Class as moot. Doc. No. 14.

I. Standard of Review

Defendants contend that this case should be dismissed under Fed.R .Civ.P. 12(b)(1) for lack of subject matter jurisdiction and/or under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

A party may move for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) based on lack of subject matter jurisdiction. Under Article III of the Constitution, because courts may only adjudicate "cases and controversies," a party must have standing to bring a claim in court. A challenge to a party's standing is a challenge to subject matter jurisdiction. PA Prison Soc'y v. Cortes, 622 F.3d 215, 229 (3d Cir.2010). To establish standing, a party must show that: (1) he suffered some actual or threatened injury as a result of illegal conduct by the defendant; (2) the injury can be fairly traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))

610 (2000).

When analyzing a Rule 12(b)(1) challenge, the court must first determine whether the moving party is making a facial or factual jurisdictional attack. CNA v. U.S., 535 F.3d 132, 139 (3d Cir.2008). "If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the [non-moving party]." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 513 (3d Cir.2007). However, if it is a factual jurisdictional attack, where the moving party argues that the court lacks jurisdiction based on evidence outside of the pleadings, the court may "consider and weigh evidence outside the pleadings ..." Id. at 514. A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [the non-moving party's] claims to comport with the jurisdictional prerequisites." Id.

*2 Here, Defendants raised a factual Rule 12(b)(1) challenge, and based on the pleadings and evidence presented by the parties, the Court finds that it lacks subject-matter jurisdiction and will grant Defendants' Motion under F.R.Civ.P. 12(b)(1).[FN1]

   FN1. Thus, the Court will not reach nor address the Fed.R.Civ.P. 12(b)(6) issue raised by Defendants.

II. Case History and Relevant Facts

Plaintiffs filed their Complaint on February 23, 2012 (doc. no. 1) and shortly thereafter filed a Motion to Certify Class. Doc. No. 14. Defendants timely filed a Motion to Dismiss the Complaint or, in the Alternative, to Stay Proceedings. Doc. No. 19. In response to Defendants' Motion (doc. no. 19), Plaintiffs filed a First Amended Complaint. Doc. No. 25.

In their Amended Complaint, Plaintiffs essentially claim that Defendants failed to properly compensate Plaintiffs for overtime in violation of Section 16 of the FLSA, 29 U.S.C. § 216. Doc. No. 25, ¶ 13. Based on the averments set forth in their Amended Complaint, Plaintiffs describe themselves as current and former employees of Defendants who "within the last three years have been employed as correction officers." Id. at ¶ 21.

Plaintiffs specifically claim that Defendants required Plaintiffs to work eight and one-quarter hours, including a meal period, but only paid them for eight hours of work. Id. at ¶ 26. As further explained by Plaintiffs, Defendants require Plaintiffs to take a one-hour meal break, but during that one hour, Plaintiffs were "on call" (which required them to remain within the prison and in their uniforms), and Plaintiffs were only paid for 45 minutes of this one-hour meal break. Id. at ¶ 28. Plaintiffs aver that because of the restrictions under which Plaintiffs are placed during their one-hour meal break period, the meal break period predominantly benefits Defendants and is not a "non-compensable meal period as defined by 29 CFR § 785.19(a)." Id. at ¶¶ 41, 50.

In response to the Amended Complaint, Defendants filed a Motion to Dismiss, or in the Alternative, Stay Proceedings. Doc. No. 30. In Defendants' Motion, Defendants contended that Plaintiffs failed to exhaust their administrative remedies under their Collective Bargaining Agreement ("CBA") with Defendants, and thus, argued that this Court currently lacks subject matter jurisdiction over this matter. In making this argument, Defendants supplied the Court with a copy of the CBA, thereby advancing a factual attack to this Court's subject matter jurisdiction.

Defendants Rule 12(b)(1) argument suggests that because a CBA exists and addresses payment of the one-hour meal break period, this Court presently lacks subject matter jurisdiction over this dispute.[FN2] Defendants claim that Plaintiffs may not proceed directly to a federal court on an FLSA claim because their "claim rests upon an interpretation of a provision of [the CBA]." Doc. No. 30 at ¶ 9.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))

> FN2. The CBA is an agreement "between the Butler County Board of Commissioners and Butler County (Correctional Officers) American Federation of State, County and Municipal Employees, District Council 84 AFL–CIO." Doc. No. 32–1.

With respect to the meal period, the CBA indicates as follows:

Eight and one quarter (8 1/4 ) consecutive hours of work shall constitute a work shift. There shall be a paid roll call period of one-quarter ( 1/4 ) hour (15 minutes) at the beginning of each shift for the purpose of addressing operational needs of the facility and/or mandatory training. The lunch period shall be a duty-free period of one (1) hour (three-quarters ( 3/4 ) of an hour (45 minutes) of which will be paid, and one-quarter ( 1/4 ) of and hour (15 minutes) of which will be unpaid.) If the duty-free period is interrupted, the time will be compensable. Employees must remain within the facility during the lunch period unless authorized to leave by the Warden/Deputy Warden.

*3 Doc. No. 32–1 at page 6, Section 5.1 D. 1.

In addition to the above language, the CBA also indicates that the "County of Butler ... hereby recognizes the American Federation of State, County and Municipal Employees, AFL–CIO as the sole and exclusive bargaining representative for ... all regular full-time and regularly scheduled part-time employees of the Butler County Prison...." Id. at p. 3, Section 2.1.

Finally, the CBA sets forth a four-step mandatory grievance procedure to resolve "[a]ll disputes ... relating to the application or interpretation of [the CBA] and/or any dispute concerning the wages, hours, and working conditions of employees covered by this [CBA]...." Id. at p. 21, Section 22.1.

Plaintiffs' filed a Response to Defendants' Rule 12(b)(1) arguments (doc. no. 38) and Defendants also filed a Response in Opposition to the Motion to Certify Class (doc. no. 27), and thus, the Motion to Dismiss and the Motion to Certify Class are now ripe for adjudication.

III. Discussion

A. Substantive Law

There is a federal preference for enforcing parties' agreements to submit disputes to arbitration and this preference applies to the employment arena. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111–12, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

Courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, but different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers. Barrantine v. Arkansas–Best Freight System, Inc., 450 U.S. 728, 737, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

Where a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that it should apply "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The question of the arbitrability of an issue is ordinarily for the court, but once arbitration is found to be applicable, the court should not address the merits of the grievance. AT & T Techs, Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))

The United States Supreme Court has held that a CBA provision which "clearly and unmistakably requires union members to arbitrate [statutory rights] claims is enforceable as a matter of federal law." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 274, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009). The Supreme Court has also held that when considering a collective bargaining agreement, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Wright v. Universal Maritime Service Corp., 525 U.S. 70, 78, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (emphasis added).

*4 Here, Plaintiffs' contend that their CBA is not a clear and unmistakable waiver of their right to sue in federal court under the FLSA. Thus, the Plaintiffs argue that the case at bar is distinguishable from 14 Penn Plaza, but akin to Wright. Simply put, Plaintiffs argue that their CBA does not cover their FLSA dispute, and thus, they are not required to exhaust the four-step grievance procedure contained within the CBA prior to filing suit in a federal court.

In 14 Penn Plaza, there was an enumerated list of statutes covered by the arbitration agreement. Here, Plaintiffs contend this case distinguishable from 14 Penn Plaza because their CBA does not clearly and unmistakably indicate that it covers the arbitration of FLSA rights because it does not contain a list of statutes which includes the acronym "FLSA."

Given the language found in the CBA at bar, Plaintiffs' argument is unconvincing. The CBA provides in relevant part:

All disputes between the County and the Union or between the County and any of its employees relating to the application or interpretation of this Agreement and/or any dispute concerning the wages, hours, and working conditions of employees covered by this Agreement shall be settled in accordance with the following procedure ...

Doc. No. 32–1 at p. 21, Section 22.1 (emphasis added).[FN3] Although this provision does not mention the FLSA, it does specifically state that any dispute concerning wages and hours is subject to the four-step procedure (which, in step four, includes arbitration). The parties to this CBA chose to enumerate the types of disputes that would be submitted to arbitration. Disputes regarding hours and wages were listed among those disputes. Thus, this Court finds that Section 22.1 is not a "general" arbitration provision.

> FN3. The remainder of this section outlines the four-step grievance process, which, in step four, requires the employee, through his or her Union, to "appeal the [wage, hour, or working condition] grievance to arbitration." Doc. No. 32–1 at pp. 21–22, Section 22.1.

Next, the Court finds that the case at bar is distinguishable from Wright. In Wright, the language of the arbitration provision did not mention the word "disability." Thus, the Supreme Court held that it was unclear whether the arbitration provision was meant to cover claims under the Americans with Disabilities Act. However, in the case at bar, the arbitration provision specifically mentions hours and wages as being covered by the arbitration provision. See Doc. No. 32–1 at p. 21, Section 22.1. In addition, Section 5.1 D.1. of this CBA (quoted above at p. 4 of this Opinion) specifically addresses the wages to be paid to an employee for his or her meal period. Doc. No. 32–1 at p. 6. Thus, any dispute concerning wages to be paid for the meal period should follow the procedure set forth at Section 22.1

Plaintiffs also contend that the last paragraph of Section 22.1 permits them to file an FLSA lawsuit in a fed-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))

eral court without following the four-step grievance procedure set forth in the preceding paragraphs of Section 22.1. Doc. No. 38 at p. 4. However, the last paragraph of Section 22.1 reads as follows:

> The parties have specifically agreed that the inclusion of the above language [referring to the four-step grievance procedure] does not grant an arbitrator any authority to award any statutory damages or relief and no monetary award to any employee shall be made except as such compensation is otherwise payable under the specific terms of this [CBA].

*5 Doc. No. 32–1 at p. 22, Section 22.1 (emphasis added). First, as noted, Section 5.1 D.1. of the CBA specifically addresses the wages to be paid to an employee for his or her meal period, and thus, falls within the exception of "compensation ... otherwise payable" under the CBA. Doc. No. 32–1 at p. 6. Also, if this paragraph were read in the manner suggested by Plaintiffs, this paragraph would render the four-step grievance procedure of Section 22.1 without meaning.

Finally, Plaintiffs reliance on Gallagher v. Lackawanna County, 2008 U.S. Dist. LEXIS 43722, *11–12 (M.D.Pa. May 30, 2008) (Vanaskie, J) likewise is distinguishable. Gallagher was decided prior to 14 Penn Plaza, in which the Supreme Court clarified the scope of Wright. Further, there is a major factual difference between the case at bar and Gallagher. In Gallagher, the CBA was silent with regards to pre-shift meetings, which was the basis for the FLSA claim. Id. at *6. In the case at bar, the CBA specifically addresses pay for meal breaks, which is Plaintiffs' basis for the FLSA claim. Thus, the interpretation of the CBA was not at issue in Gallagher, while it is at issue in this case.

This Court has considered the CBA's terms, given Defendants' factual challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), and based on the terms quoted above, finds that Plaintiffs are bound by the CBA's terms. Thus, the Court finds that Plaintiffs must first exhaust their administrative remedies in accordance with the four-step procedure outlined in the CBA before bringing their lawsuit here. See generally, Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221 (3d Cir.2012). Congress and the United States Supreme Court have repeatedly held that arbitration provisions are to be respected by the Courts. Plaintiffs cannot simply avoid the four-step grievance procedure outlined in the CBA, because the issue is one that would ordinarily evoke the federal question jurisdiction of this Court.

B. Remedy

When a defendant (such as Defendants here) files a Motion to Dismiss, or in the Alternative, to Stay Proceedings, and the basis for that request is to compel the plaintiff to arbitrate the matter, "a stay, rather than a dismissal, is the required course of action when compelling arbitration." Id., 673 F.3d at 227 n. 2 (citations omitted).

IV. Conclusion

Based on the foregoing law and authority, this Court will issue an Order, contemporaneously with this Memorandum Opinion, compelling Plaintiffs to exhaust their administrative remedies in accordance with the four-step procedure set forth in Section 22.1 of the CBA, and thereby granting Defendants' Motion to Dismiss, or in the Alternative, Stay Proceedings (doc. no. 30), and will stay these proceedings. This ruling renders the Plaintiffs' Motion to Certify Class (doc. no. 14) moot and thus, it will be denied without prejudice.

W.D.Pa.,2012.
Babcock v. Butler County
Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1655737 (W.D.Pa.)
(Cite as: 2012 WL 1655737 (W.D.Pa.))


END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

 Westlaw.

Page 1

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Eliot COHEN, Philip Ricasata and Charles Shoemaker, on behalf of themselves and all others similarly situated,
Plaintiffs,
v.
UBS FINANCIAL SERVICES, INC., and UBS AG, Defendants.

No. 12 Civ. 2147(BSJ)(JLC).
Dec. 4, 2012.

Memorandum and Order

BARBARA S. JONES, District Judge.

*1 Plaintiffs Eliot Cohen ("Cohen"), Philip Ricasata ("Ricasata") and Charles Shoemaker ("Shoemaker"), as well as David Hale ("Hale") and Stan Sklenar ("Sklenar") who filed consents to sue in this action, (collectively "Plaintiffs") are all California residents. Along with other members of the proposed California class and nationwide collective group, they either currently work or previously worked for Defendant UBS Financial Services Inc. ("UBS") [FN1] as financial advisors in California and nationwide. Plaintiffs bring the instant action asserting class and collective action claims for UBS' alleged violations of the Fair Labor Standards Act ("FLSA"), the California Labor Code ("CLC"), and the California Unfair Competition Law ("UCL"). In response to Plaintiffs' Third Amended Complaint, Defendants have filed the present Motion to Compel Arbitration and Stay the Action. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., Defendants move on the grounds that, in arbitration agreements signed by Plaintiffs during the course of their employment with UBS, Plaintiffs agreed to individually arbitrate the claims made in their Third Amended Complaint. For the reasons discussed the Court GRANTS Defendants' motion.

> FN1. Although UBS Financial Services Inc was Plaintiffs' sole employer, the Third Amended Complaint also names UBS AG as a Defendant. The Court adopts "UBS" herein to refer to both named defendants.

FACTUAL BACKGROUND

As part of their employment with UBS, each of the Plaintiffs executed a Financial Advisor Compensation Plan (the "FA Compensation Plan"). The FA Compensation Plan states in relevant part that:

[Y]ou and UBS agree that any disputes between you and UBS including claims concerning compensation, benefits or other terms or conditions of employment ... or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act ... or any e or local employment ... laws, rules or regulations, including wage and hour laws, will be determined by arbitration ... By agreeing to the terms of this Compensation Plan ..., you waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment with UBS ... [FN2]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

> FN2. The FA Compensation Plans for 2007, 2008, 2009, and 2010 each contain identical arbitration agreements and class and collective action waivers. See Decl. of Catherine Reyna ("Reyna Decl."), Exs. 1–4.

(Decl. of Catherine Reyna ("Reyna Decl."), Ex. 1 at p. 26.)

In addition to the FA Compensation Plan, which was executed by all of the Plaintiffs, the Plaintiffs each also entered into additional agreements which contained the same or substantially similar language. Although the specific agreements signed by each Plaintiff differ, the relevant agreements include: Employee Forgivable Loan and Promissory Notes; Financial Advisor Account Reassignment Agreements; FA/PW Partnering Agreements; and Account Reassignment Agreements. See (Reyna Decl., Exs. 11–19.)

STANDARD OF REVIEW

In deciding whether to grant a motion to compel arbitration pursuant to the FAA, courts apply a summary judgment standard. Lavoice v. UBS Fin. Servs., Inc., No. 11 Civ. 2308, 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (citing Sutherland v. Ernst & Young LLP, 768 F.Supp.2d 547, 549 (S.D.N.Y.2011)). "A motion to compel arbitration may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. (internal citations omitted). The burden of proving that the claims at issue are unsuitable for arbitration falls on the party opposing the motion. Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). To the extent that "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92.

*2 "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Lavoice, 2012 WL 124590, at *2 (citing Nunez v. Citibank, N.A ., No. 08 Cv. 5398, 2009 WL 256107 at *2 (S.D.N.Y. Feb.3, 2009)).

DISCUSSION

Relying on this Court's decision in the related Lavoice [FN3] action, UBS argues that the agreements previously signed by Plaintiffs compel them to pursue their claims in an arbitral forum. In support of this argument, UBS argues that: (1) Plaintiffs agreed to arbitration in the arbitration agreements; (2) Plaintiffs claims are covered by the arbitration agreements; (3) Courts routinely enforce agreements to arbitrate FLSA and state labor law claims; and (4) Plaintiffs' arbitration agreements are enforceable even though they prohibit Plaintiffs from pursuing class or collective action claims. [FN4] UBS also argues that, in the event that the Court chooses not to enforce the arbitration agreements, the Court should find that: (1) Cohen's FLSA claims are time barred; (2) Plaintiffs' claims pursuant to the California Labor Code Private Attorneys General Act ("PAGA") are time barred; and (3) Plaintiffs lack standing to bring claims for injunctive relief.

> FN3. Plaintiffs in the instant action were employed in the same position at UBS as the Plaintiff in the Lavoice action, and Plaintiffs bring substantially similar claims in both actions. The parties in the instant action are also represented by the same counsel as those in Lavoice.

> FN4. "As a general matter, when a party bound by an arbitration agreement raises a claim founded on statutory rights, a district court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable." Lavoice, 2012 WL 124590, at *2 (internal citations omitted).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

In their opposition to UBS' motion, Plaintiffs do not dispute that: (1) they agreed to arbitrate in the relevant agreements; (2) their claims are covered by the arbitration agreements; and (3) FLSA and state labor law claims can be arbitrable. Plaintiffs instead argue that the agreements at issue are unenforceable because: (1) their terms violate the arbitration rules of the Financial Industry Regulatory Authority ("FINRA"); (2) they would prevent Plaintiffs from vindicating their federal statutory rights; and (3) through its conduct in this litigation, UBS has waived its right to seek relief under the FAA.

I. Impact of FINRA Rules

Plaintiffs argue in the first instance that the agreements at issue are unenforceable because they violate the FINRA rules which govern arbitration for financial advisors such as Plaintiffs. To support their position, Plaintiffs rely on the Supreme Court's decision in Credit Suisse Secs. (USA) LLC v. Billing, 551 U.S. 264, 285, 127 S.Ct. 2383, 168 L.Ed.2d 145 (2007). In Billing, buyers of newly issued securities filed an antitrust lawsuit against the underwriting firms that marketed and distributed those securities. The underwriter defendants moved to dismiss on the grounds that the federal securities laws impliedly precluded the application of antitrust laws to the conduct in question. Finding that "the securities laws are clearly incompatible with the application of the antitrust laws in this context," the Supreme Court held that such antitrust lawsuits were precluded by SEC regulations. Id. at 285. Likening their position to that of the Defendants in Billing, Plaintiffs argue that the arbitration agreements between the parties are unenforceable because they conflict with FINRA's own arbitration rules. Plaintiffs cite Rules 13204(a) and 13204(b) of the FINRA Code of Arbitration Procedure for Industry Disputes (the "Code"), which respectively state that "class action claims may not be arbitrated under the Code" and that "[a]ny claim that is based upon the same facts and law, and involves the same defendants as in a ... putative class action ... shall not be arbitrated under the Code ." Referring to these two provisions, Plaintiffs argue essentially that, since the Code expressly prohibits the arbitration of claims which could be brought collectively or by a class, FINRA rules preclude the enforcement of the arbitration agreements pursuant to the FAA.

*3 Having reviewed the Code, the Court disagrees with Plaintiffs' reading and finds that enforcement of the arbitration agreements would not be inconsistent with FINRA's rules. Although Rule 13204 appears to prohibit arbitration of class or collective claims, the rule also expressly states that its subparagraphs "do not otherwise affect the enforceability of any rights under the Code or any other agreement." (emphasis added). The rule therefore: (1) recognizes that parties may choose to enter into additional agreements beyond the scope of the Code; and (2) provides that the Code does not affect the enforceability of these additional agreements. That the arbitration agreements here would preclude Plaintiffs from pursuing a class or collective action does not change the Court's view. Indeed, Rule 13204(a) specifically speaks to the possibility that a "member of the certified or putative class elects not to participate in the class." Furthermore, the Court's reading of the Code is consistent with numerous decisions which have acknowledged that parties may contract beyond the default arbitration rules of the securities industry. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 113 (2d Cir.1990) ("[T]he rules of a securities exchange are contractual in nature ... [w]here, as here, the parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls."); Credit Suisse First Boston Corp. v. Pitofsky, 4 N.Y.3d 149, 155, 791 N.Y.S.2d 489, 824 N.E.2d 929 (2005) ("CSFB and its registered representatives were free to negotiate the terms by which they would arbitrate employment—related disputes ... Accordingly, the parties were free to supplant or modify the Form U–4 arbitration agreement...."); and Chanchani v. Salomon/Smith Barney, Inc., No. 99 Civ 9219, 2001 WL 204214, at *5 (S.D.N.Y. Mar.1, 2001) ( [T]he terms of the U–4s and the NYSE rules in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees.")

To the extent that Plaintiffs argue that the Supreme Court's decision in Billing compels a different result,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

their argument misconstrues both the Code and that case. As an initial matter, as has already been discussed, Plaintiffs' selective reading of the Code as absolutely prohibiting class and collective waiver is incorrect. In addition, Billing dealt with the specific impact of the federal securities regulations on antitrust laws, and its holding cannot be broadly construed as advocated for by Plaintiffs. The Court accordingly finds that there is nothing within the FINRA rules which would preclude enforcement of the arbitration agreements between the parties.

II. Statutory Rights Analysis

Plaintiffs' next argument as to why the arbitration agreements are unenforceable mirrors that previously advanced by the plaintiff in the related Lavoice action. Relying primarily on the Second Circuit's decisions in its Amex line of cases, Plaintiffs argue that the arbitration agreements at issue cannot be enforced because they would prevent Plaintiffs from vindicating their federal statutory rights under the FLSA. See In re American Express Merch. Litig. (Amex III ), 667 F.3d 204 (2d Cir.2011), aff'g on reh'g Amex II, 634 F.3d 187 (2d Cir.2011), reh'g en banc denied by 681 F.3d 139 (2d Cir.2012), cert. granted, American Exp. Co. v. Italian Colors Restaurant, No. 12–133, 2012 WL 3096737, at *1 (U.S. Nov.9, 2012).

*4 To the extent that Plaintiffs rely on Ranier v. Citigroup Inc., 827 F.Supp.2d 294 (S.D.N.Y.2011), and D.R. Horton, Inc. and Michael Cuda, N.L.R.B. 12–CA–25764, 2012 WL 36274, *1 (Jan. 3, 2012), for the proposition that "a waiver of the right to proceed collectively under the FLSA is unenforceable as a matter of law," Ranier, 827 F.Supp.2d at 314, this Court, as it did in Lavoice, declines to follow these decisions. The Supreme Court held in AT & T Mobility LLC v. Concepcion, that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." —— U.S. ——, ——, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011). The Court therefore finds that it would be inconsistent with the FAA for the Court to find as a matter of law that class waivers are per se unenforceable in this context.

The Court turns next to Plaintiffs' argument that, although class waivers like the ones at issue are not per se unenforceable, the waivers here cannot be enforced because they preclude Plaintiffs from vindicating their statutory rights. In support of this argument, Plaintiffs rely on the Second Circuit's decision in Amex III which was issued subsequent to this Court's opinion in Lavoice.

In Amex III, the Second Circuit revisited its decision in Amex II [FN5] in light of the Supreme Court's decision in Concepcion. The Second Circuit held in Amex III that, although "Concepcion plainly offers a path for analyzing whether state contract law is preempted by the FAA," 667 F.3d at 213, "as the class action waiver in this case precludes plaintiffs from enforcing their [federal] statutory rights, we find the arbitration provision unenforceable." Id. at 218. In reaching its decision, the Second Circuit relied "on the need for plaintiffs to have the opportunity to vindicate their statutory rights," id. at 219, and gave weight to the fact that "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws." Id. at 217. Following the Second Circuit's guidance in Amex II and III, courts in this district have held that arbitration agreements are unenforceable when they would effectively prevent plaintiffs from vindicating their statutory rights. See Chen–Oster v. Goldman, Sachs & Co., 785 F.Supp.2d 394 (S.D.N.Y.2011), reconsideration denied by No. 10 Civ. 6950, 2011 WL 2671813, *1 (S.D.N.Y. July 7, 2011), and Sutherland v. Ernst & Young LLP, 847 F.Supp.2d 528 (S.D.N.Y.2012).

FN5. For a more detailed discussion of the Second Circuit's decisions in Amex I and Amex II, and the Supreme Court's decision in Concepcion, the Court refers to its decision granting the motion to compel arbitration in Lavoice. 2012 WL 124590.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

In its motion to compel, although it also argues that the Supreme Court's holding in Concepcion abrogates the Second Circuit's decision in Amex III, [FN6] UBS primarily rests on an argument that Plaintiffs have failed to meet their burden of demonstrating that they could not vindicate their statutory rights through arbitration. In determining whether a class action waiver is unenforceable, "each waiver must be considered on its own merits, based on its own record, and governed with a healthy regard for the fact that the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements." Amex III, 667 F.2d at 219 (internal citation omitted). Having reviewed the parties' submissions, the Court agrees with UBS and finds that enforcement of the class and collective action waivers in this case would not preclude Plaintiffs from vindicating their statutory rights under Amex III.

> FN6. The Court notes that there is a circuit split on the issue of whether waivers which preclude the effective vindication of statutory rights can be enforced. Compare Amex III, 667 F.3d 204 and Coneff v. AT & T Corp., 673 F.3d 1155, 1159 (9th Cir.2012). The Supreme Court has granted certiorari to hear this issue. See American Express Co. v. Italian Colors Restaurant, No. 12–133, 2012 WL 3096737 (U.S. Nov.9, 2012).

A. Plaintiff Cohen

*5 With respect to Cohen, since he has only asserted state law claims, [FN7] the Supreme Court's decision in Concepcion precludes the Court from engaging in a vindication of rights analysis as to this plaintiff. See Orman v. Citigroup, Inc., No. 11 Civ. 7086, 2012 U.S. Dist. LEXIS 131532, at *8–9, 2012 WL 4039850 (S.D.N.Y. Sep.12, 2012) ("The Court cannot identify any cases in which a vindication of statutory rights analysis under the FAA has been applied to state statutory claims. Indeed, applying a vindication analysis to state statutory claims would appear to be incompatible with the Supreme Court's analysis in Concepcion.") The Court accordingly finds that "the vindication of statutory rights doctrine does not apply to bar arbitration" of Cohen's claims. Id . at *9–10.

> FN7. See (Pls.' Surreply Mem. of Law. in Opp'n to Defs.' Mot. to Compel Arbitration and Stay this Action 4, n. 12.) ("Mr. Cohen ... has only a California state claim and not an FLSA claim.")

B. Plaintiffs Ricasata, Sklenar, Hale, and Shoemaker

In support of their argument that the costs of arbitration would so exceed the possible benefits that they would be practically precluded from vindicating their statutory rights, the remaining plaintiffs, Ricasata, Sklenar, Hale, and Shoemaker, have submitted to the Court: (1) their prospective FINRA filing fees; (2) the low probability that they would prevail in FINRA arbitration; and (3) an estimate of their potential damages. The Court has considered Plaintiffs' arguments and finds that, like the plaintiff in Lavoice, Plaintiffs have failed to meet their burden of demonstrating that they would be unable to vindicate their statutory rights in the arbitral forum.

Although Plaintiffs initially submitted that the damages for Sklenar, Ricasata, Shoemaker and Hale were in the $2,777.78 to $22,379.68 range, (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration and Stay this Action 16, n. 29), in their Surreply, Plaintiffs amended these calculations such that their claimed damages for these individuals now range from $49,021.33 to $178,580.22, (Pls.' Surreply Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration and Stay this Action 5). These substantial damages, taken with the fact that Plaintiffs would be able to recover an award of attorney's fees in arbitration, lead the Court to find that these plaintiffs would be able to vindicate their statutory rights under the FLSA in arbitration. While Plaintiffs make the additional argument that their damages figure should be reduced to account for their low probability of prevailing, they have provided the Court with nothing to support their self-serving estimates as to the likelihood of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

success. The Court accordingly gives no weight to this dubious argument.

The relative position of these plaintiffs is easily distinguished from those of the plaintiffs in Chen–Oster, 785 F.Supp.2d 394, and Sutherland, 847 F.Supp.2d 528.[FN8] In Chen–Oster, the plaintiff sought to bring a pattern and practice claim under Title VII, a type of claim which can only be pursued by a class. 847 F.Supp.2d at 408. Sutherland involved a plaintiff seeking to recover an overtime loss of a mere $1,867.02. 847 F.Supp.2d at 531. Given that they may pursue their FLSA claims individually, and their estimated damages all exceed $45,000, the Court finds it clear that Ricasata, Sklenar, Hale, and Shoemaker are each differently situated than either of these two plaintiffs who they have attempted to liken themselves.

> FN8. The Court notes that Plaintiffs' damages are comparable to that of the plaintiffs in Ranier. As previously noted, however, the court in Ranier did not find the class waiver unenforceable because the plaintiffs would be precluded from enforcing their statutory rights due to cost. 827 F.Supp.2d at 314. Instead, in Ranier, Judge Sweet held that "a waiver of the right to proceed collectively under the FLSA is unenforceable as a matter of law." 827 F.Supp.2d at 314.

*6 For all of these reasons, the Court finds that Cohen, Ricasata, Sklenar, Hale, and Shoemaker have each failed to demonstrate that enforcement of the arbitration agreements at issue would preclude them from vindicating their rights under the FLSA.

III. Waiver

In addition to their arguments that the arbitration agreements are unenforceable, Plaintiffs also argue that, by its conduct in this litigation, UBS has waived its right to compel arbitration. Plaintiffs' argument primarily hinges on their assertions that: (1) UBS waived its right to pursue a motion to compel arbitration when it chose to transfer the action rather than pursue such a motion in the Central District of California; and (2) UBS has chosen to transfer the case to a district court that lacks the power to compel the parties to arbitrate in California.

With respect to Plaintiffs' argument that UBS has waived, the Court notes that in this Circuit, "[a] party is deemed to have waived its right to arbitration if it engages in protracted litigation that results in prejudice to the opposing party." S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 83 (2d Cir.1998) (internal citations omitted). Furthermore, "[g]iven th[e] presumption of arbitrability, waiver of arbitration is not to be lightly inferred." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995). In the instant action, the Court finds that there is no evidence that Defendants have engaged in the type of dilatory tactics that would warrant a finding of waiver.

The Court finds similarly unavailing Plaintiffs' argument that this Court cannot grant UBS' motion because: (1) the parties' agreement identifies California as the location of arbitration; and (2) this Court lacks authority to compel arbitration beyond this district. Although several courts have held that, when an arbitration agreement contains a forum selection clause, only a district court in that forum can compel arbitration,[FN9] these decisions are inapposite because the arbitration agreements in the instant action do not contain forum selection clauses. While Plaintiffs argue that the agreements at issue effectively contain a forum selection clause through their incorporation of FINRA Rule 13213(a)(1), this rule merely states that "[t]he Director will decide which of FINRA's hearing locations will be the hearing location for the arbitration" and "the Director will generally select the hearing location closest to where the associated person was employed...." Since here, the Director of FINRA Dispute Resolution has yet to select a forum for arbitration outside of this district, the Court finds that the instant action does not present "a situation analogous to that caused by arbitration agreements containing forum selec-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)
(Cite as: 2012 WL 6041634 (S.D.N.Y.))

tion clauses." J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp., 712 F.Supp.2d 70, 81 (S.D.N.Y.2010). There is accordingly nothing that would prevent the Court from compelling arbitration in this case. FN10

> FN9. See J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp., 712 F.Supp.2d 70, 82–83 (S.D.N.Y.2010) (citing Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1010 (6th Cir.2003); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 326–31 (7 th Cir.1995); and Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1218–20 (10th Cir.2005))

> FN10. The Court also notes that UBS states in its Reply brief that it will not object to Plaintiffs making a request to the Director of FINRA Dispute Resolution for the arbitration to proceed in California.

CONCLUSION

*7 The Court GRANTS Defendants' motion to compel arbitration and stay this action in its entirety.

The Clerk of the Court is directed to terminate motion # 61 on the ECF docket and to stay the case.

SO ORDERED:

S.D.N.Y.,2012.
Cohen v. UBS Financial Services, Inc.
Not Reported in F.Supp.2d, 2012 WL 6041634 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Westlaw.

Page 1

Not Reported in F.Supp.2d, 1999 WL 595632 (S.D.N.Y.)
(Cite as: 1999 WL 595632 (S.D.N.Y.))

▶

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Juan A. GONZALEZ, Plaintiff,
v.
TOSCORP INC. and Soreke Peters, Defendants.

No. 97 Civ. 8158(LAP).
Aug. 5, 1999.

MEMORANDUM and ORDER

PRESKA, J.

*1 Plaintiff, Juan A. Gonzalez ("Gonzalez") brings this action against defendants Toscorp Inc. ("Toscorp") and Soreke Peters ("Peters") alleging employment discrimination. Defendants Toscorp and Peters move for (1) an order dismissing the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"); (2) compelling arbitration under the Federal Arbitration Act (the "FAA"); and (3) for such other and further relief as this Court may deem just, proper, and equitable. For the reasons that follow, the motions to dismiss the complaint and to compel arbitration are granted. FN1

> FN1. The following submissions have been considered in resolving this motion: Verified Complaint ("Compl."); Memorandum of Law in Support of the Motion by Defendants to Dismiss the Complaint ("Defs.Mem."); Affidavit of Jennifer Roth in Support of Defendants Motion to Dismiss ("Roth Aff."); Affidavit of Juan Gonzalez in Opposition to Defendants Motion to Dismiss ("Gonzalez Aff."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint and Compel Arbitration ("Pltff.Mem."); Defendants' Reply Memorandum of Law in Support of its Motion to Dismiss the Complaint ("Reply Mem.").

I. BACKGROUND

On January 20, 1997 Gonzalez, was hired to work as a sous chef at the Coco Pazzo restaurant in New York City. (Gonzalez Aff. ¶ 2). The restaurant is owned and operated by Toscorp, Inc., a New York corporation. (Compl.¶ 3). Gonzalez reported to Peters, the Executive Chef and Supervisor, at Coco Pazzo. (Compl.¶ 4).

Beginning in May 1997, Toscorp adopted an Alternative Dispute Policy (the "Policy") by which all employees and Toscorp were bound to arbitrate, among other things, employment disputes. (Roth Aff. ¶ 4). The Policy states that:

[t]he claims covered by this Policy include, but are not limited to, claims for (i) wages or other compensation due; (ii) breach of contract or covenant; (iii) torts; (iv) alleged discrimination including, but not limited to race, color, sex, religion, national origin, sexual violation, marital status or age; (v) denial of benefits, (vi) violation of any Federal, state or other governmental law, statute, regulation or ordinance; and (vii) any common law claims.

Id. at Ex. C.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 595632 (S.D.N.Y.)
(Cite as: 1999 WL 595632 (S.D.N.Y.))

A complete copy of the Policy was distributed to all employees along with a copy of the Toscorp Team Member Handbook (the "Handbook") on April 18, 1997. (Roth Aff. ¶ 7). In addition, an acknowledgment of receipt, requiring the signature of each employee accompanied each document, neither of which Gonzalez signed. (Gonzalez Aff. ¶ 3).

The "Acceptance" section of the Policy states:

[a]ll Team members who continue employment after May 1, 1997 will be deemed to have accepted this Policy as the exclusive method to resolve claims not resolved through normal human resource channels and thereafter neither Toscorp nor the team member may litigate the claims against the other in court or in a judicial type proceedings before administrative agencies. Any individual hired after May 1, 1997 shall be deemed to have accepted this Policy as a term and condition of employment.

(Roth Aff. Ex. C).

On September 14, 1997, Gonzalez's employment was terminated. (Roth Aff. ¶ 3). In response Gonzalez filed this action in which he asserts claims of discrimination based on his race (Hispanic) and national origin (Mexican) pursuant to Title VII of the Civil Rights Act of 1964, in addition to other New York common law claims. As noted above, Toscorp and Peters now seek to dismiss the complaint and to compel Gonzalez to arbitrate his claims.

## II. DISCUSSION

*2 The Federal Arbitration Act (the "Act") establishes a federal policy favoring arbitration. See Shearson/ American Express, Inc. v. McMahon, 482 U.S. 220, 225–6, 107 S.Ct. 2332, 96 L.E.2d 185 (1991).

The Act accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

To determine whether to compel arbitration, a court must decide (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) whether Congress intended Title VII claims to be arbitrated.FN2 Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987); DeGaetano v. Smith Barney, Inc., 95 Civ. 1613, 1996 WL 44226 at *3 (S.D.N.Y. Feb. 5, 1996).

FN2. Genesco also identifies a fourth issue, that is, whether to stay the balance of the case pending arbitration if the Court were to find that not all of the claims are arbitrable. I find that all of plaintiff's claims are arbitrable and therefore need not reach this fourth issue.

## A. Agreement to Arbitrate

In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. Genesco, 815 F.2d at 845. In this action, Gonzalez contends that the Policy does not apply to him because he did not sign the acknowledgment and, therefore, did not agree to arbitrate. (Pltff. Mem. at 6). Toscorp and Peters contend that the arbitration agreement between the parties became binding upon Gonzalez's voluntary and continuous employment after May 1, 1997. Gonzalez concedes that he received a copy of Toscorp's Team Member Handbook and the Alternative Dispute Policy but states he never signed the acknowledgments of receipt for either. (Gonzalez Aff. ¶ 3).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 595632 (S.D.N.Y.)
(Cite as: 1999 WL 595632 (S.D.N.Y.))

The FAA requires only that the arbitration agreement be set in writing; it does not require that the writing be signed by the parties. See 9 U.S.C. § 3. Parties may be bound to unsigned, written arbitration agreements as long as the "ordinary principles of contract and agency" are satisfied. Thomson–CSF S.A. v. American Arbitration Association, 64 F.3d 773, 776–77 (2d Cir.1995); Genesco, 815 F.2d at 846 (party may be bound to an agreement to arbitrate even absent a signature) (citing Medical Development Corp. v. Industrial Modeling Corp., 479 F.2d 345, 348 (10th Cir.1973)); Fisser v. International Bank, 282 F.2d.231,233 (2d. Cir.1960) (FAA does not impose obligation to arbitrate only to one who has personally signed the written arbitration provision); Creative Securities Corp. v. Bear Stearns & Co., 671 F.Supp 961, 965 (S.D.N.Y.1987), 847 F.2d 834 (2d Cir.1988) (FAA only requires written agreement to arbitrate, not signature of the party to be charged).

A non-signatory to an arbitration agreement may be bound by the principle of assumption. Thomson, 64 F.3d 773 at 776–77. Assumption arises where a party's "subsequent conduct indicates that it is assuming the obligation to arbitrate." Thomson, 64 F .3d at 777 (citing cases). In the instant case, Gonzalez concedes receipt of the Policy and the Handbook and chose to continue his employment with Toscorp past the May 1, 1997 effective date. In doing so, he assumed the obligation to arbitrate future employment claims.

*3 Unless Gonzalez can demonstrate special, mitigating circumstances, such as duress or coercion, he is bound by the terms of the arbitration Policy. Gilmer, 500 U.S. at 33. Under New York law, the following elements of economic duress or coercion must be shown:

(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.

DeGaetano, 1996 WL 44226, at *5 (citing Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir.1989)).

Gonzalez alleges no threat or wrongful act, he simply argues that Toscorp's Policy amounts to "compulsory arbitration" in that Gonzalez is compelled, as a condition of employment, to waive his right to litigate future employment disputes in a judicial forum. (Pltff. Mem. at 1). However, a mandatory arbitration clause is a reasonable means by which an employer can seek to protect itself from protracted litigation. See Sablosky v. Gordon Inc., 73 N.Y.2d 133, 138, 538 N.YS2d. 513, 517, 535 N.E.2d 643, 647 (1989) (arbitration clause in an employment agreement was not unconscionable simply because the employer drafted it)). In addition, the "[m]ere inequality of bargaining power" that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable. See Gilmer, 500 U.S. at 33, 111 S.Ct. at 1655–56. Absent wrongdoing by Toscorp and Peters to coerce Gonzalez to accept the arbitration Policy, I find the parties have a valid agreement to arbitrate.

B. Scope of the Agreement

A court must broadly construe an arbitration agreement and resolve any doubts concerning its scope in favor of arbitration. Hoffman v. Kamhi, 927 F.Supp. 640, 644 (S.D.N.Y.1996) (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–5, 103 S.Ct. 927, 941–2(1983). The Court of Appeals has instructed that "arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." McMahan Securities Co. v. Forum Capital Markets L.P., 35 F.3d 82, 88 (2d Cir.1984) (quoting S.A. Mineracao Da Trinidade–Samitri v. Utah Int'l Inc., 745 F.2d 130, 194 (2d Cir.1984)).

The scope of Toscorp's ADR policy is very specific. As noted above, the Policy states that claims covered include breach of contract and discrimination, including but not limited to race and national origin, as well as

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 595632 (S.D.N.Y.)
(Cite as: 1999 WL 595632 (S.D.N.Y.))

"violation of any federal, state or other governmental law, statute, regulation or ordinance," and "any common law claims." (Roth Aff. Ex. C). While the policy does not specifically refer to Title VII of the Civil Rights Act of 1964, the policy does state that it covers alleged discrimination including "race" and "national origin", and "any common law claims." In construing Toscorp's policy, I find that the language of the arbitration policy is clear and unambiguous and specifically makes reference to Gonzalez's contract, discrimination and New York common law claims. Accordingly, I find Gonzalez's present claims are within the scope of the Policy to arbitrate.

C. Congress' Intent to Arbitrate Title VII Claims

*4 The crux of plaintiff's argument pertains to the third prong of the Genesco test, that is, whether it was Congress' intent to arbitrate Title VII claims. In his opposition papers, Plaintiff argues that under the Civil Rights Act of 1991 Toscorp may not compel plaintiff to waive his Title VII right to a judicial forum. (Pltff. Mem. at 2). In support of his position, Gonzalez relies principally on the decision by the Ninth Circuit in Duffield v. Robertson Stephens & Co., 144 F.3d 1182 (9th Cir.1998) (holding that Civil Rights Act of 1991 precludes compulsory arbitration of civil rights claims).

As a preliminary matter, a decision of the Ninth Circuit is not binding on this court. Moreover, the Supreme Court has held that federal statutory claims, including discrimination claims, are arbitrable under the FAA. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647 (1991) (age discrimination claims are arbitrable). Courts in the Second Circuit have also held that Title VII claims are arbitrable. E.g., DeGaetano v. Smith Barney Inc., No. 95 Civ. 1613, 1996 WL 44226 *5–6 (S.D.N.Y Feb 5, 1996) (sexual harassment claim under Title VII is arbitrable); Maye v. Smith Barney, 897 F.Supp. 100, 109 (S.D.N.Y.1995) (sexual and racial harassment Title VII claims are arbitrable); Gateson v. ASLK–Bank, N.V./CGER–Banque S.A., No. 94 Civ. 5849, 1995 WL 38720 (S.D.N.Y. June 29, 1995) (Title VII claims based on sex, age, and national origin are arbitrable); Hall v. MetLife Resources, No. 94 Civ. 0358, 1995 WL 258061, at *3 (S.D.N.Y. May 2, 1995) (Title VII claims based on gender or race are arbitrable). This District has adopted the Gilmer ruling and has applied it to Title VII claims of the Civil Rights Act of 1964. Desiderio v. NASD, 2 F.Supp.2d 516, 520 (S.D.N.Y.1998). It is clear from the case law that Title VII claims are arbitrable, and Gonzalez has failed to provide any basis to justify this Court's departure from well-settled precedent.

Conclusion

Defendant's motion to compel arbitration is granted. The complaint is dismissed without prejudice to reinstatement in the event post-arbitral proceedings becomes necessary.

The Clerk of Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

S.D.N.Y.,1999.
Gonzalez v. Toscorp Inc.
Not Reported in F.Supp.2d, 1999 WL 595632 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

H

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Larry LaVOICE, on behalf of himself and all others similarly situated, Plaintiff,
v.
UBS FINANCIAL SERVICES, INC., UBS AG, Defendants.

No. 11 Civ. 2308(BSJ)(JLC).
Jan. 13, 2012.

Memorandum and Order

BARBARA S. JONES, District Judge.

*1 Plaintiff Larry LaVoice ("LaVoice") was employed as a Financial Advisor for Defendant UBS Financial Services Inc. ("UBS") [FN1] from August 2002 to July 2010. LaVoice brings the instant action asserting class and collective action claims for UBS Financial Services, Inc. and UBS AG's (collectively "Defendants") alleged violations of the Fair Labor Standards Act ("FLSA"), the New York State Labor Department's Codes, Rules and Regulations ("NYCRR"), and the New York Labor Law ("NYLL"). In response to LaVoice's Amended Complaint, Defendants have filed the present Motion to Compel Arbitration and to Stay the Action pending the Completion of Arbitration. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., Defendants move on the grounds that, in arbitration agreements signed by LaVoice during the course of his UBS employment, LaVoice agreed to individually arbitrate the claims made in his Amended Complaint. For the reasons discussed, the Court GRANTS Defendants' motion.

> FN1. In his Amended Complaint, LaVoice identifies UBS Financial Services, Inc. and UBS AG as Defendants in this action. In their Memorandum of Law in Support of their Motion to Compel Arbitration and Stay this Action, Defendants allege that UBS Financial Services, Inc. was LaVoice's sole UBS employer. Mem. of Law in Support of Mot. to Compel Arbitration at FN1. Defendants therefore argue that UBS Financial Services, Inc. is the only proper defendant in the instant action. Id. LaVoice does not contest this assertion by Defendants, and his Opposition to Defendant's Motion to Compel Arbitration refers only to "Defendant UBS" and "UBS." Opp'n to Def.'s Mot. to Compel Arbitration. Since neither LaVoice nor Defendants have provided any further information regarding Defendant UBS AG, the Court assumes that Defendants arguments are made on behalf of both named Defendants.

FACTUAL BACKGROUND

To support their argument that LaVoice agreed to limit his claims to arbitration. Defendants rely on several documents. The relevant documents are: (1) UBS' Financial Advisor Compensation Plan ("FA Compensation Plan") for the years 2007 through 2010; (2) an Employee Forgivable Loan Agreement dated August 26, 2002; (3) a Strategic Advance dated April 8, 2009; (4) a 2009 Promissory Note dated April 8, 2009; (5) a GrowthPlus Agreement dated April 30, 2010; and (6) a 2010 Promissory Note dated May 14, 2010.

With respect to the FA Compensation Plans, all of the plans contain the following individual arbitration agreement:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

> [Y]ou and UBS agree that ... any disputes between you and UBS including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment ... or any other claims whether they arise by statute or otherwise, including but not limited to claims arising under the Fair Labor Standards Act ... or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration ... By agreeing to the terms of this Compensation Plan ..., you waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment with UBS ...

Decl. of Matthew Levitan, Exh. 1 at p. 19.[FN2] The 2007 FA Compensation Plan states that the arbitration "will be determined by arbitration as authorized and governed by the arbitration law of the state of New York." Id., Exh. 4 at p. 26. The 2008, 2009, and 2010 plans are instead governed by the "arbitration law of the state of New Jersey." Id., Exh. 1, 4, 5, and 6. The 2007 and 2009 plans include LaVoice's signature, but the 2008 and 2010 plans provided to the Court are without signature. Id., Exh. 1, 4, 5, and 6.

> FN2. The language quoted is taken from the FA Compensation Plan for 2008, but the FA Compensation Plans for 2007, 2009, and 2010 each contain identical language.

*2 The Loan Agreement, Strategic Advance, Promissory Notes, and GrowthPlus Agreement (collectively the "UBS Loan Agreements") all contain arbitration clauses. Although the exact terms of each clause differ slightly, each clause states that the parties will arbitrate "any disputes ... including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment," as well as, claims arising under "any [ ] federal state or legal employment or discrimination laws, rules or regulations." Id., Exh. 7, 8, 9, 10, and 11. In addition, the four most recent UBS Loan Agreements (those dated in 2009 and 2010) also include a class and collective action waiver which states that "Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment ..." Id., Exh. 8, 9, 10, and 11. The 2002 Employee Forgivable Loan Agreement states that any ensuing arbitration will be governed by "the arbitration laws of the state of New York," whereas the later UBS Loan Agreements are governed by New Jersey's arbitration laws. Although the 2002 Employee Forgivable Loan Agreement is unsigned, the remaining UBS Loan Agreements are all signed by LaVoice.

STANDARD OF REVIEW

"Courts apply a summary judgment standard when evaluating whether to compel arbitration pursuant to the FAA." Sutherland v. Ernst & Young LLP, 768 F.Supp.2d 547, 549 (S.D.N.Y.2011) (internal citations omitted). A motion to compel arbitration may be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. (citing Fed.R.Civ.P. 56(c)). "A party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Financial Corp. .-Alabama v. Randolph, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (internal citations ommitted). "[W]here [ ] a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92.

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Nunez v. Citibank, N.A., No. 08 Cv. 5396, 2009 WL 256107 at *2 (S.D.N.Y. Feb.3, 2009) (internal citations omitted).

DISCUSSION

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

In the instant action, LaVoice asserts causes of action grounded in the FLSA and New York state statutes. As a general matter, when a party bound by an arbitration agreement raises a claim founded on statutory rights, a district court must determine: "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; [and] (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable." Id. at *3.

*3 With respect to the first prong of the analysis, whether the parties intended to arbitrate, LaVoice has only challenged the existence of an agreement to arbitrate for the year 2008. LaVoice bases this argument on the grounds that UBS has not produced any signed agreement for that year. Since LaVoice does not contest that the 2007 FA Compensation Plan contains an applicable arbitration agreement without temporal limitation, and the Second Circuit has held that in the absence of such a limitation "the relevant inquiry is whether [the party's] claims relate to any obligation or claimed obligation under the [arbitration] agreement, not when they arose," Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Intern., Inc., 198 F.3d 88, 99 (2d Cir.1999), the Court finds LaVoice's arguments regarding his 2008 claims unavailing.

Turning to the second prong of the analysis, the scope of the agreements themselves, LaVoice argues that the agreements governed by New Jersey law [FN3] cannot be enforced because they are ambiguous. In support of this argument, LaVOice asserts that the class waiver provisions of the relevant agreements contradict the New Jersey Arbitration Act, which encourages class arbitration. The Court disagrees with LaVoice's reading of the agreements and the law of New Jersey.[FN4] Even if the Court accepts LaVoice's argument that the New Jersey Arbitration Act encourages class arbitration, it does not follow that the Act prohibits arbitration agreements which waive the right to collective relief. The agreements and class waiver provisions at issue are clear on their face. The Court therefore finds that LaVoice has provided insufficient grounds to find that the arbitration agreements between LaVoice and UBS are unenforceable.[FN5]

> FN3. The 2009 FA Compensation Plan and the 2009 and 2010 UBS Loan Agreements state that they will be governed by the "arbitration law of the state of New Jersey."
>
> FN4. In a letter brief to the Court, LaVoice cites Dreyfuss v. eTelecar Global Solutions–U.S., Inc., 2008 U.S. Dist. LEXIS 96945 at *3,2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008), in further support of his argument that the agreement is unenforceable as ambiguous. The Court finds Dreyfuss inapposite to the present case because that case involved an arbitration agreement which was missing several pages, including pages alleged to contain essential terms. LaVoice has also referred the Court to JetBlue Airways Corp. v. Stephenson, 88 A.D.3d 567, 931 N.Y.S.2d 284 (N.Y.App.Div.2011) and NAACP of Camden County East v. Foulke Management Corp., 421 N.J.Super. 404 (N.J.Super.Ct.App.Div.2011). The Court does not read either JetBlue Airways or NAACP of Camden County East as supporting LaVoice's arguments. Both cases involved arbitration agreements which differ significantly from the present case, JetBlue involved an agreement without a class waiver provision and the NAACP case involved an agreement with "multiple, conflicting, and unclear clauses spanning three different documents. NAACP of Camden County East v. Foulke Management Corp., 421 N.J.Super. At 437. In addition, the JetBlue case involved a motion to stay arbitration, whereas the current motion is one to compel arbitration. Given the inapposite facts presented, the Court finds both of these cases unpersuasive for LaVoice's argument.
>
> FN5. The Court's position would remain unchanged even if LaVoice were to make the argument that the class waiver provisions were unenforceable as a matter of New Jersey Law. The Third Circuit recently held that such arbitration agreements are enforceable in New Jersey even in the face of New Jer-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

sey Supreme Court precedent that the class waivers contained therein are unconscionable as a matter of law. See Litman v. Cellco P'ship, 655 F.3d 225 (3d Cir.2011).

Beyond his arguments regarding 2008 and the application of New Jersey law, LaVoice does not otherwise appear to contest that: (1) LaVoice and UBS agreed to arbitrate in the FA Compensation Plans and the UBS Loan Agreements; and (2) the scope of the arbitration agreements captures the FLSA and New York employment claims made in the Amended Complaint. Nor does LaVoice appear to claim that Congress intended for FLSA and state labor law claims to be nonarbitrable.

LaVoice does, however, challenge the essential arbitrability of his claims. Under Section 2 of the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). Relying on this provision, LaVoice's Opposition to the Motion to Compel Arbitration primarily rests on a general argument that, as a result of Section 2's "sav[ing]" clause for agreements unenforceable "upon such grounds as exist at law," his claims are unarbitrable under the FAA. Id. Relying on his reading of the Second Circuit's opinion in In re American Express Merchants' Litigation, 554 F.3d 300 (2d Cir.2009) ("Amex I") as reaffirmed in In re American Express Merchants' Litigation, 634 F.3d 187 (2d Cir.2011) ("Amex II"), LaVoice specifically argues that the class waiver provisions contained in the arbitration agreements between LaVoice and UBS are unenforceable. LaVoice therefore argues that, since enforcement of the class waiver provisions would be contrary to the law of this Circuit, his claims are unarbitrable.

*4 In order to commence its analysis, the Court now turns to Amex I and II, as well as, to the recent Supreme Court decision in AT & T Mobility, LLC v. Concepcion, ––– U.S. ––––, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011).

Amex I and II

In Amex I, the Second Circuit considered the enforcement of a mandatory arbitration clause which forbid the parties to the contract from pursuing anything other than individual claims in the arbitral forum. Amex I, 554 F.3d at 302.

Plaintiffs in Amex I were merchants who had accepted the Defendant, American Express', charge cards and were forced to agree to accept American Express credit and debit cards. Id. at 305. Plaintiffs alleged that American Express had used an illegal "tying arrangement" to compel merchants to accept American Express' revolving credit card products at a rate which vastly exceeded the rate for comparable competitor products. Id. at 308. Responding to American Express' motion to compel arbitration, plaintiffs argued that enforcement of the class action waiver incorporated in the arbitration agreement between the parties would effectively strip them of their ability to assert claims. Id. In support of this argument, plaintiffs asserted that the discovery costs associated with pursuing an individual claim would amount to hundreds of thousands of dollars, whereas the average damages sought by each plaintiff was only $5000. Id.

Deciding the motion to compel, the district court held that "the enforceability of the collective action waivers is a claim for the arbitrator to resolve" and concluded that all of the plaintiffs' substantive antitrust claims were subject to arbitration. Id. at 309.

Reversing the decision of the district court, the Second Circuit Court of Appeals first held that the district court erred in holding that the question of the class action waiver's enforceability was a matter for the arbitrator. Id. at 310–11. The Second Circuit then proceeded to consider the enforceability of the class action waiver con-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

tained in the arbitration agreement between the parties. Id. After finding that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, the party bears the burden of showing the likelihood of incurring such costs." Id. at 315 (citing Randolph, 531 U.S. at 92), the Second Circuit went on to hold that "plaintiffs here have [ ] demonstrated that their antitrust claims against Amex can, for all intents and purposes, only be pursued through the aggregation of individual claims, either in class action litigation or in class arbitration." Id. at 317. The Second Circuit therefore ultimately held that "the class action waiver in the Card Acceptance Agreement [arbitration agreement between the parties] cannot be enforced in this case because to do so would grant Amex de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery." Id. at 320.

*5 Subsequent to the Second Circuit's decision in Amex I, the Supreme Court decided Stolt–Nielsen S.A. et al., v. Animal Feeds International Corp., ——U.S. ——, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). In Stolt–Nielsen, the Supreme Court vacated a Second Circuit decision and held that a panel of arbitrators could not compel class arbitration when the arbitration agreement was silent on the issue and the parties had stipulated that there was no agreement on this question. Id. at 1776. Weighing into the Supreme Court's decision was its view that "the arbitration panel [had] imposed its own policy choice and thus exceeded its powers." Id. at 1770. Following its decision in Stolt–Nielsen, the Supreme Court granted Defendant American Express' writ for certiorari, vacating and remanding to the Second Circuit for reconsideration in light of its recent decision.

Once the Amex I case returned to it from the Supreme Court, the Second Circuit again considered in Amex II the question that had been presented for its consideration in Amex I: "whether the mandatory class action waiver in the Card Acceptance Agreement is enforceable even if the plaintiffs are able to demonstrate that the practical effect of enforcement of the waiver would be to preclude their bringing Sherman Act claims against Amex in either an individual or collective capacity." Amex II, 634 F.3d at 196. Disagreeing with the Defendant that Stolt–Nielsen compelled a different result, the Second Circuit reaffirmed its earlier decision in Amex I and held in Amex II that the arbitration agreement was unenforceable because "the class action waiver in this case precludes plaintiffs from enforcing their statutory rights." Id. at 199.

AT & T Mobility

Since the Second Circuit issued its opinion in Amex II, and prior to Defendants filing their present Motion to Compel Arbitration, the Supreme Court re-examined the question of class action waivers in an arbitration context in the case AT & T Mobility LLC v. Concepcion, —— U.S. ——, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ( "AT & T Mobility" ). Plaintiffs in AT & T Mobility were individual cell phone customers who argued that, because the class waiver provision contained in their arbitration agreement was unconscionable under California law, their claims were unarbitrable under Section 2 of the FAA. Id. at 1746.[FN6] The Ninth Circuit had affirmed the district court's denial of the motion to compel arbitration on the grounds that the class waiver provision was unconscionable under California law as announced in the California Supreme Court's decision in Discover Bank v. Superior Court. Laster v. AT & T Mobility LLC, 584 F.3d 849, 853–55 (9th Cir.2009) (internal citations omitted).

> FN6. As a result of the California Supreme Court's decision in Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), California applies the following framework to class action waivers in arbitration agreements. "[W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

money, then ... the waiver becomes in practice the exemption of the party from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced." Id. at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100.

Writing the majority opinion for the court. Justice Scalia noted that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT & T Mobility, 131 S.Ct. at 1747. Justice Scalia observed, however, that AT & T Mobility presented a case where "the inquiry becomes more complex" because it involves "a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, [that] is alleged to have been applied in a fashion that disfavors arbitration." Id.

*6 Analyzing the goals of the statute, the Supreme Court first determined that "[a]lthough § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Id. at 1746. The Supreme Court further defined the principal objective of the FAA as "ensur[ing] that private arbitration agreements are enforced according to their terms." Id. With this view of the FAA in mind, the Supreme Court therefore overturned the Ninth Circuit's decision to deny the motion to compel and held that "[b]ecause it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, California's Discover Bank rule is preempted by the FAA." Id. at 1753. In reaching its decision, the Supreme Court held both that "[r]equiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 1748, and that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753.

Analysis

Turning now to the present action, the Court finds that LaVoice has provided insufficient evidence to support a finding that his claims are unarbitrable under the FAA. Although Defendants argue in the first instance that the Second Circuit's Amex I and II decisions do not survive the Supreme Court's decision in AT & T Mobility, the Court need not reach the question of whether the Second Circuit's Amex holding has been overturned by AT & T Mobility because it finds that LaVoice's claims are arbitrable under both decisions. FN7

> FN7. The Court notes that an interlocutory appeal to the Second Circuit has been certified in D'Antuono, et al. v. Serv. Rd. Corp, et al., No. 3:11cv33, 2011 U.S. Dist. LEXIS 60721 (D. Conn. June 7, 2011). The appeal seeks for the Circuit to respond precisely to the question of whether Amex II remains good law in light of the Supreme Court's decision in AT & T Mobility.

Absolute Rights to Collective Action under the FAA

In his opposition, LaVoice makes the argument that the "FLSA cannot be gutted by the FAA." Pl. Mem. of Law in Opp'n to Def.'s Mot. to Compel Arbitration at 22. This argument effectively suggests that the FLSA "guarantees the right to-collective action" which cannot be "lawfully waived in a non-negotiated arbitration agreement, or at all," Id. The Court finds this argument, which assumes that a collective action requirement can be consistent with the FAA, precluded in light of the Supreme Court's decision in AT & T Mobility. Given that the Supreme Court held in AT & T Mobility that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA," this Court must read AT & T Mobility as standing against any argument that an absolute right to collective action is consistent with the FAA's "overarching purpose" of "ensur[ing] the enforcement of arbitration agreements according to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

their terms so as to facilitate streamlined proceedings." AT & T Mobility, 131 S.Ct. at 1748. To the extent that LaVoice relies on the decision in Raniere, et al. v. Citigroup, Inc., —— F.Supp —— (S.D.N.Y.2011) or the recent decision of the National Labor Relations Board ("NLRB") in D.R. Horton, Inc. and Michael Cuda, 2012 WL 36274, Case 12–CA–25764, January 3, 2012, as authority to support a conflicting reading of AT & T Mobility, this Court declines to follow these decisions.

Preclusion of Statutory Rights

*7 In addition to arguing that the FLSA creates an unwaiveable right to collective action, LaVoice also argues that the arbitration agreements between him and UBS are unenforceable because they would preclude him from exercising his statutory rights. To support this position, LaVoice likens the class waivers in the instant case with those that were found unenforceable in the Amex line of cases. LaVoice also draws comparison between his circumstances and those of the plaintiff in Sutherland v. Ernst & Young LLP, 768 F.Supp.2d 547 (S.D.N.Y.2011).

The enforceability of a class action waiver in an arbitration agreement must be considered on a case-by-case basis "on its own merits, governed with a healthy regard for the fact that the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements." Amex II, 634 F.3d at 199. Turning to the class waiver at issue and LaVoice's specific circumstances, this Court finds that the "practical effect of enforcement of the waiver" in the instant case would not "preclude" LaVoice from exercising his rights under the statutes. Id. at 196. The Court comes to its finding that LaVoice's statutory rights will not be precluded by enforcement of the class waiver after reviewing his submissions regarding: his estimated damages claim, his estimated attorneys' fees, his estimated expert fees, his disinclination to pursue his claims individually, his counsel's disinclination to pursue the claims individually, and his likelihood of success at arbitration.

Although LaVoice and Defendants contest the value of LaVoice's overtime claim, in reaching its decision, the Court accepts the figure cited in LaVoice's own opposition papers of overtime claims between $127,000 to $132,000. Aff. Jeffrey G. Smith in Supp. of Opp'n. to Mot. to Compel Arbitration at ¶ 5. Assuming this self-reported value of claims, the Court finds that LaVoice's circumstances differ drastically on their face from those of the plaintiffs in either the Amex line of cases or Sutherland. Plaintiffs in those cases could each only claim de minimus damages of less than $6000.[FN8]

> FN8. Plaintiffs in Amex I and II claimed median damages of $5,252 with treble damages. Amex I, 554 F.3d at 317. Plaintiff in Sutherland claimed damages of $3,734.04 with liquidated damges. Sutherland, 768 F.Supp.2d at 551.

With respect to the estimated attorneys' fees, the Court finds that, unlike the arbitration agreement at issue in Sutherland, the arbitration agreements at issue in the instant case would permit LaVoice to recover an award of attorneys' fees. Since the agreements authorize the arbitrator(s) to "award whatever remedies would be available to the parties in a court of law" and awards of attorneys' fees are mandatory for the prevailing party under the FLSA, the agreements themselves crate no impediment to LaVoice's recovery of fees. See Ex. 6 to Decl. of Matthew Levitan at 20; Ex. 10 to Decl. of Matthew Levitan at 3; and 29 U.S.C. § 216(b) ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") The instant case is therefore distinguishable from Sutherland and its consideration of attorneys' fees in determining whether plaintiff's claims were unarbitrable. See also Banus v. Citigroup Global Mkts., Inc., No. 09–7128, 2010 WL 1643780, at *10 n. 61 (S.D.N.Y. Apr.23, 2010) (enforcing class action waiver in arbitration agreement where plaintiff's estimated recovery was $45,675.36 and attorney's fees would be "at least $100,000.")

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

*8 Turning to LaVoice's estimated expert costs, the Court finds that these estimated costs are "too speculative to justify the invalidation of an arbitration agreement." Randolph, 531 U.S. at 91. Two factors figure prominently in the Court's finding that the proposed costs are speculative: (1) LaVoice concedes that he cannot be certain that he will utilize an expert witness, Pl's Mem. of Law in Opp'n. to Def.'s Mot. to Compel Arbitration at 5; and (2) whether LaVoice's expert's testimony would even be admissible remains unclear to the Court.

With respect to the second factor, LaVoice states that his expert's testimony will be used to rebut the affirmative defense that LaVoice is exempt from the FLSA and New York state law under the "administrative" and "professional" exemptions of both laws. In support, LaVoice's expert states that he has been asked by counsel to "clarify the difference between financial or investment advisors ... from stock or investment brokers." Aff. Of James L. Bicksler in Supp. of Opp. to Mot. to Compel Arbitration at ¶ 7. LaVoice has provided no guidance to the Court, however, for how this testimony relates to determining whether either the "administrative" or "professional" FLSA exemption applies. FN9 This lack of clarity, coupled with LaVoice's uncertainty as to whether he would even seek to introduce the expert's testimony, leads the Court to find that the estimated expert costs are insufficient to support a finding that the arbitration agreements are unenforceable.

> FN9. In order to determine whether an exemption to the FLSA applies, the Court looks first to the activities of the employee, and then to whether those activities exempt the employee from FLSA requirements. See Mota v. Imperial Parking Sys., No. 08–Civ–9526, 2010 WL 3377497, at *2–3 (S.D.N.Y. Aug.24, 2010). The first question as to activities of the employee is "a question of fact," while the second, question of whether his particular activities excluded him from the benefits of the FLSA "is a question of law." Id. at *3.

On the issue of both LaVoice and his counsel's professed disinclination to pursue LaVoice's claims individually, the Court finds no legal basis for giving weight to these statements. LaVoice has cited to no authority to support any argument that the Court should give consideration to his and counsel's unwillingness to pursue his claims in the absence of a class, and particularly given the real damages at issue, the Court cannot help but find LaVoice and counsel's statements to be self-serving and irrelevant.

Finally, in an apparent attempt to minimize the Court's valuation of his claims, LaVoice argues that the Court should take into account his probability of success and reduce any estimate of his maximum damages by as much as 90%. Pl. Sur. Mem. of Law in Opp'n. to Defs. Mot. to Compel Arbitration at 5. In support of this argument, LaVoice relies upon dicta from Amex I which states that "[e]ven with respect to reasonable attorney's fees ... the plaintiffs must include the risk of losing, and thereby not recovering any fees, in their evaluation of their suit's potential costs." 554 F.3d at 316. The Court finds LaVoice's arguments entirely unpersuasive. As an initial matter, the Amex decisions themselves did not adopt the type of probability offset proposed by LaVoice, and LaVoice has cited to no other authority which would support such an approach, Secondly, even if the Court were to accept LaVoice's argument that Amex I requires courts to consider "risk of losing" as a factor in evaluating the enforceability of an arbitration agreement's terms, LaVoice has provided no support for why his proposed 10% probability of success is anything more than pure speculation.

*9 In light of the foregoing, the Court finds that LaVoice has not met his "burden of showing the likelihood of incurring" such "prohibitively expensive" costs such that the class waiver provisions in the instant action would preclude him from bringing his claims against Defendants in an individual or collective capacity. Amex II, 634 F.3d at 197 (citing Randolph, 531 U.S. at 92.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)
(Cite as: 2012 WL 124590 (S.D.N.Y.))

CONCLUSION

For the reasons discussed, the Court GRANTS Defendants' Motion to Compel Arbitration and Stay the Action pending the completion of arbitration.

The Clerk of the Court is directed to terminate motion # 10 from the ECF docket.

SO ORDERED.

S.D.N.Y.,2012.
LaVoice v. UBS Financial Services, Inc.
Not Reported in F.Supp.2d, 2012 WL 124590 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jeffrey LLOYD, et al., Plaintiffs,
v.
J.P. MORGAN CHASE & CO., et al., Defendants.
Kenneth Ciullo, Plaintiff,
v.
J.P Morgan Chase & Co., et al., Defendants.

Nos. 11 Civ. 9305(LTS), 12 Civ. 2197(LTS).
Sept. 9, 2013.

MEMORANDUM ORDER

LAURA TAYLOR SWAIN, District Judge.

*1 Plaintiffs, who were formerly employed as Financial Advisors or Financial Advisor Associates in New York and New Jersey by J.P. Morgan Chase & Co. ("J.P.Morgan") and Chase Investment Services Corp. ("CISC") (collectively "Chase" or "Defendants"), bring these putative class and collective actions against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA), the New York Labor Law ("NYLL"), and the New Jersey Wage and Hour Law ("NJWHL"). Before the Court are three motions: 1) Plaintiffs' motion for conditional collective action certification in connection with their FLSA claims; 2) Defendants' motion to compel arbitration and dismiss or, alternatively, stay the claims asserted by Opt-in Plaintiffs Robert M. Johnson, Jennifer Zaat–Hetelle, Scott Vanhoogstraat, Peter Piccoli and Graeme H. Patey; and 3) Defendants' motion to compel arbitration and dismiss or, alternatively, stay the claims asserted by Plaintiff Lawrence Kaufmann and Opt-in Plaintiffs Susan Hyman, Alan Krichman and Jeffrey Lammert. The Court has considered carefully all of the parties' submissions. For the following reasons, Plaintiffs' motion for conditional certification is granted; Defendants' motion to compel arbitration as to Plaintiffs Johnson, Zaat–Hetelle, Vanhoogstraat, Piccoli and Patey is granted; and Defendants' motion to compel arbitration as to Plaintiffs Kaufmann, Hyman, Krichman and Lammert is denied.

BACKGROUND

The following facts are taken from the allegations in the Amended Complaint ("Compl.") and affidavits,FN1 and are assumed to be true for purposes of the instant motion practice. On December 19, 2011, Plaintiffs Jeffrey Lloyd and Ellen Szymkiewicz commenced the instant action against CISC and J.P. Morgan Chase & Co., alleging that they and all other current and former Financial Advisors and Financial Advisor Associates were misclassified as "exempt" and thus were denied overtime compensation to which they were entitled. Plaintiffs filed an Amended Class Action Complaint ("Am.Compl.") on April 19, 2012.FN2 Plaintiffs bring claims on behalf of a purported nationwide collective under the FLSA, a New York class under New York law, and a New Jersey class under New Jersey law.FN3

> FN1. For purposes of this motion practice, the Court takes as true affidavits that proffered by Plaintiffs or that are offered by Defendants and uncontroverted.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

> FN2. The Amended Complaint replaced named Plaintiff Szymkiewicz with Lawrence Kaufmann. (ECF No. 31.) On November 27, 2012, the Court so-ordered a stipulation dismissing Szymkiewicz's claims with prejudice.
>
> FN3. On March 23, 2012, Plaintiff Kenneth Ciullo filed a separate action, Ciullo v. J.P. Morgan Chase & Co., No. 12 Civ. 2197, asserting similar claims. The Court accepted Ciullo as a related case on June 6, 2012. Plaintiffs' instant motion practice does not seek certification of their putative state law class action claims pursuant to Federal Rule of Civil Procedure 23.

All Financial Advisors and Financial Advisor Associates (together, "Financial Advisors" or "FAs") have the same primary job duty, which is selling Chase's financial products to individuals in Chase branches. (See, e.g., Lloyd Decl. at 4–5, Exh. G to Bien Aff. in Support of Motion to Certify Class, ECF No. 64 (hereinafter "Bien Class Cert. Aff.").) The typical day-to-day duties of a Financial Advisor involve:

1) Making calls to individuals to tell them about Chase products for sale and to attempt to sign those individuals up as customers;

2) Meeting individuals at Chase branches to attempt to sign them up for Chase products;

3) Soliciting "walk-in" individuals in Chase branches and attempting to sign them up for Chase products; and

*2 4) Interacting with Chase bankers in the branches in order to obtain customer referrals for purposes of selling Chase financial products.

(See, e.g., Kaufmann Decl. at 8, Exh. H to Bien Class Cert. Aff.) Chase's training manual for Financial Advisors describes them as "Sales Specialists" and instructs them as to the "art of selling." (Training Workbook at 8, 23–24, Exh. B to Bien Class Cert. Aff.) Chase's job description for Financial Advisors is uniform across the country (see Exh. E to Bien Class Cert. Aff.), and all Financial Advisors are subject to the same system of compensation. (Exh. C to Bien Class Cert. Aff.) Chase classifies all Financial Advisors as "exempt" employees for FLSA purposes and does not pay them overtime compensation.

Opt-in Plaintiffs Johnson, Zaat–Hetelle, Vanhoogstraat, Piccoli and Patey

Upon being hired by Chase, each of these Plaintiffs entered into a written Binding Arbitration Agreement (the "BAA"), which provides that:

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

1. SCOPE: Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase ... shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

2. COVERED CLAIMS: "Covered Claims" include all legally protected employment-related claims that I have or in the future may have against JPMorgan Chase ... which arise out of or relate to my employment or separation from employment with JPMorgan Chase ... including, but not limited to, ... [violations of] the Fair Labor Standards Act of 1938....

4. CLASS ACTION/COLLECTIVE ACTION WAIVER: All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis. Covered parties

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

expressly wave any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court ...

(Heather Emmert Decl., Exhs. A–J; Plaintiffs' Binding Arbitration Agreements at 1, 2, and 4 (attached as Exh. 1 to Linhorst Decl., ECF No. 69).)

Plaintiff Kaufmann, and Opt-in Plaintiffs Hyman, Krichman and Lammert

In May and June of 2009, each of these Plaintiffs executed an arbitration agreement (the "Agreement") with Defendants, which provides in pertinent part as follows:

12. Arbitration of Controversies

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA (including the FINRA Arbitration Disclosure Rule and Procedures for Employment Arbitration Disclosure Statement), and in accordance with applicable law.... [N]o claims shall be arbitrated on a class or collective action or collective or class-wide basis.

*3 (Heather Emmert Decl., Exhs. A–D; Agreements at 12 (attached as Exh. 1 to Linhorst Decl., ECF No. 70).)

DISCUSSION

Conditional Certification

Plaintiffs seek conditional certification of a collective action pursuant to section 16(b) of the FLSA, which authorizes private parties to bring overtime claims "[o]n behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiffs argue that Chase FAs were misclassified as exempt employees and so were improperly denied overtime wages. Defendants' principal merits defense to Plaintiffs' claims is that FAs are subject to the FLSA's administrative exemption.[FN4] See 29 C.F .R. §§ 541.200; 541.203(b).

> FN4. Defendants also argue that Plaintiffs could potentially be subject to the professional exemption, the executive exemption, the highly compensated exemption, and the outside sales exemption. See 29 C.F.R. §§ 541.301;541.100; 541.601; 541.500.

In determining whether to certify an FLSA collective action to facilitate notice to other potential plaintiffs, the court makes an initial assessment as to whether there are potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to the claim asserted under the FLSA. See Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir.2010). Plaintiffs need make only a " 'modest factual showing' " that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id. "In an FLSA exemption case, plaintiffs accomplish this by making some showing that there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Id. While the "modest factual showing" may not be satisfied by unsupported assertions, it is a low standard of proof, as the "purpose of [the] first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Id. (emphasis in original); see also Morales v. Plantworks, Inc., No. 05 Civ. 2349,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006) (courts apply a lenient standard for conditional certification of a collective action). "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." Pippins v. KPMG LLP, No. 11 Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan 3, 2012). "Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying' employees as exempt." Id. (internal quotations omitted).

Plaintiffs have submitted declarations from thirteen individuals who worked as Financial Advisors in ten different states. These individuals testify that they all performed the same primary job duty and day-to-day tasks, were subject to the same compensation policies, and regularly worked overtime at Chase. (Exhs. G–S to Bien Class Cert. Aff.) Plaintiffs also point to Chase's job description of the Financial Advisor position, which is identical for various locations in the United States. (See Exh. E to Bien Class Cert. Aff.)

*4 Defendants argue, in opposition, that FAs are correctly classified as exempt from the FLSA's overtime regulations and that there are significant variations in the duties of FAs, such that they cannot be considered "similarly situated." At this stage of the certification inquiry, neither of Defendants' arguments is availing.[FN5]

> FN5. The Court also notes that Defendants' two arguments contradict each other to at least some extent. On the one hand, Defendants contend that all FAs are so similarly situated that they are properly classified as exempt under the administrative exemption. On the other hand, Defendants contend that FAs vary so drastically in job responsibilities that, as a class, they are not similarly situated for purposes of challenging the classification.

Defendants' argument that conditional certification should be denied because FAs are correctly classified as exempt is not appropriately considered at this conditional stage of the certification inquiry. Exemptions "are affirmative defenses to overtime pay claims, and [an employer] bears the burden of proving that a plaintiff has been properly classified as an exempt employee." Pippins, 2012 WL 19379, at *3. Accordingly, whether or not Plaintiffs are properly subject to an exemption from the FLSA's overtime provisions is a merits issue; the law is clear that courts should not weigh the merits at this point in the litigation. Id. at *6.[FN6] Defendants' reliance on Bachrach v. Chase Investment Services Corp., et al., No. 06–2785, 2007 WL 3244186 (D.N.J. Nov. 1, 2007) is misplaced. In Bachrach, Plaintiffs had moved under Federal Rule of Civil Procedure 23 for certification of a class of FAs employed by Chase in an overtime case asserting state law claims. The Bachrach court denied the motion, noting that the proposed class members likely qualified as "administrative employees" and thus would not have a viable claim to overtime pay under the relevant state provisions. 2007 WL 3244186, at *1. The Bachrach Court applied the more demanding Rule 23 class certification standard, and denied Rule 23 class certification for reasons that are not relevant to the instant FLSA inquiry.

> FN6. This Court declines to follow Amendola v. Bristol–Myers Squib, 558 F.Supp.2d 459 (S.D.N.Y.2008), which, citing the standard established by the Second Circuit for Rule 23 class certification decisions, conducted an analysis of the parties' likelihood of success on the merits in denying conditional FLSA certification. The Second Circuit's subsequent decision in Myers v. Hertz Corp., 624 F.3d 537 (2d Cir.2010), clarified the continued vitality of the lower, "some showing" standard for initial FLSA notice determinations. See, e.g., Cunningham v. Electronic Data Systems Corp., 754 F.Supp.2d 638, 645–46 (S.D.N.Y.2010) (declining to follow Amendola ); Stevens v. HMSHost Corp., No. 10 Civ. 3571, 2012 WL 4801784, at *2 n. 5 (E.D.N .Y. Oct. 10, 2012) ("Amendola has been soundly rejected within this circuit").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

Defendants next contend that Plaintiffs and other FAs are not similarly situated with respect to their job duties and possible exempt status. In support of this argument, Defendants have submitted numerous declarations in which other Chase FAs testify that their duties varied widely. As an initial matter, Plaintiffs argue that the Court should not consider the declarations submitted by Chase, because Chase did not previously disclose the identities of the declarants. See Federal Rule of Civil Procedure 26(a) (1)(A)(i) (requiring a party to disclose the identity of individuals likely to have discoverable information that the party may use to support its claims or defenses); Brown v. Wal–Mart Stores, Inc., No. 09 Civ. 3339, 2012 WL 3672957, at *2–3 (N.D. Cal. Aug 24, 2012) (declining to consider declarations submitted by defendant in opposition to motion for class certification when defendant did not disclose identities of declarants pursuant to Rule 26.) The Court need not address the issue of Defendants' Rule 26(a) (1) compliance because even if Defendants' proffers are considered, Plaintiffs' evidence is sufficient to satisfy Plaintiffs' burden of showing that other FAs are, potentially, similarly situated. See Pippins, 2012 WL 19379, at *12 ("To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid").

*5 The declarations that Plaintiffs have submitted, along with Chase's own description of the Financial Advisor position are sufficient to demonstrate that "there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions ... who are classified as exempt pursuant to a common policy or scheme." See Myers v. Hertz Corp., 624 F.3d at 555; see also Pippins, 2012 WL 19379, at *9 (granting conditional certification where plaintiffs "submitted pleadings, affidavits, and other evidence ... that they [were] similarly situated with respect to their job duties and requirements" and employer's job description for the position of Audit Associate was identical across offices). Plaintiffs' declarations further assert that FAs were compensated in the same manner, and regularly worked overtime. There is no dispute that Chase classified all FAs as exempt from the FLSA's overtime provisions.

The cases upon which Defendants rely are readily distinguishable. See, e.g., Guillen v. Marshalls of MA, Inc., 841 F.Supp.2d 797, 800–01 (S.D.N.Y.2012) (denying conditional certification of nationwide class when plaintiff only presented evidence of duties performed by two employees who both worked in New York); Khan v. Airport Mgmt. Servs., LLC, 10 Civ. 7735, 2011 WL 5597371, at *4–5 (S.D.N.Y. Nov. 16, 2011) (denying conditional certification where, inter alia, employees plaintiff identified as similarly situated submitted declarations rejecting plaintiff's claims). Finally, Defendants' argument that exemption defenses preclude a collective action because they require fact-intensive inquiries of the tasks that FAs performed is unavailing. Courts have repeatedly rejected such arguments. See, e.g., Cohen v. Lehrman Grp., 686 F.Supp.2d 317, 329–30 (S.D.N.Y.2010) (court declined "to wade into a thicket of competing factual assertions at this preliminary stage" and noted that "to hold to the contrary would preclude certification of a collective action in any FLSA case where the defendant was asserting an ... exemption defense").

Accordingly, the Court finds that Plaintiffs have made the "modest factual showing" necessary to support conditional certification.

To enable "similarly situated" potential plaintiffs to opt in to this action, the court has discretion to authorize notice to such individuals. In re Penthouse Exec. Club. Compensation, No. 10 Civ. 1145, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010). The Court also has discretion regarding the form and content of the notice. Id., at *5. Plaintiffs have submitted a proposed notice (Exh. F to Bien Class Cert. Aff.), to which Defendants have raised numerous objections. The parties are directed to confer regarding the content of the notice, and are to submit a joint proposal to the Court for approval within fourteen days of the entry of this Memorandum Order. If

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

the parties are unable to agree on particular provisions, the disagreements and the reasons for each party's preference shall be specified. See In re Penthouse, 2010 WL 4340255, at *5.

*6 The Court will authorize delivery of the notice by first class mail, in addition to work and personal email. See Pippins, 2012 WL 19379, at *14 ("[G]iven the reality of communications today ... the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"). The Court declines to toll the statute of limitations and, accordingly, notice will be limited to individuals who were Financial Advisors within three years from the date the Court issues an order approving the proposed notice. See In re Penthouse, 2010 WL 4340255, at *5 n. 4 ("[I]t is appropriate at this stage for the plaintiffs to provide notice to all dancers who worked at the Penthouse Executive Club within three years of the sending of the notice to conform as closely to 29 U.S.C. § 256 as possible"); see also Gordon v. Kaleida Health, No. 08–CV–3785, 2009 WL 3334784, at *12–13 (S.D.N.Y. Oct. 14, 2009) ("In this Circuit, 'equitable tolling is only appropriate in [ ] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights' ") (quoting Zerilli–Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir.2003)).

Motion to Compel Arbitation and Dismiss Or, Alternatively, Stay Claims by Opt-in Plaintiffs Robert M. Johnson, Jennifer Zaat–Hetelle, Scott Vanhoogstraat, Peter Piccoli and Graeme H. Patey

Defendants move to compel certain opt-in Plaintiffs to arbitrate their claims and dismiss or stay the claims they assert in this action. As explained above, these Plaintiffs agreed to arbitrate Covered Claims (including FLSA overtime claims) in accordance with the terms and conditions of a Binding Arbitration Agreement ("BAA"). Plaintiffs do not dispute that the BAA encompasses their claims. Rather, Plaintiffs argue that the BAA is not enforceable because 1) the right to proceed collectively under the FLSA cannot be waived; and 2) Plaintiffs will not be able to vindicate their statutory rights in individual arbitration. Neither of Plaintiffs' arguments has merit.

"It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary Congressional intent ... The burden of showing such legislative intent lies with the party opposing arbitration." Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75–76 (2d Cir.1998). The Second Circuit has squarely held that an employee's right to proceed collectively under the FLSA may be waived pursuant to an arbitration agreement. See Sutherland v. Ernst & Young LLP, No. 12–304–cv, 2013 WL 4033844, at *4–5 (2d Cir., Aug. 9, 2013) ("Supreme Court precedents inexorably lead to the conclusion that the waiver of collective action claims is permissible in the FLSA context"). Accordingly, the Court finds that a waiver of the right to proceed collectively under the FLSA is not per se unenforceable.[FN7]

> FN7. To the extent that Plaintiffs rely on In re D.R. Horton, Inc., 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012), for the proposition that a waiver of the right to proceed collectively under the FLSA is unenforceable as a violation of the NLRA, this Court declines to follow that decision. In addition to the possibility that D.R. Horton was decided without a proper quorum, see, e.g ., NLRB v. New Vista Nursing & Rehabilitation, 2013 WL 2099742 (3d Cir. May 16, 2013); Canning v. NLRB, 705 F.3d 490 (D.C.Cir.2013), this Court owes no deference to decisions by the NLRB, insofar as they interpret or attempt to reconcile the FAA with the NLRA. See Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 144 (2002).

Plaintiffs next argue that, even if the class waiver at issue in the BAA is not per se unenforceable, it still cannot be enforced because it would preclude Plaintiffs from vindicating their statutory rights. Plaintiffs' argument is premised on a decision by the Second Circuit, finding that class action waivers should be evaluated on a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

case-by-case basis, considering "the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, [and] the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claims." In re Am. Express Merch. Litig., 554 F.3d 300, 321 (2d Cir.2009) (internal quotations omitted). The Supreme Court reversed that decision in Am. Express Co., v. Italian Colors Restaurant, 133 S.Ct. 2304, 2310–12 (2013), holding that waivers of class arbitration should be enforced, notwithstanding any allegations that pursuing an individual claim in arbitration would be cost prohibitive. Accordingly, the Court finds that the BAA is enforceable and Defendants' motion to compel arbitration as to Opt-in Plaintiffs Johnson, Zaat–Hetelle, Vanhoogstraat, Piccoli and Patey is granted. Those Plaintiffs' claims are dismissed without prejudice to arbitration.

Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Claims by Plaintiff Lawrence Kaufmann and Opt–In Plaintiffs Susan Hyman, Alan Krichman and Jeffrey Lammert

*7 Defendants also move to compel named Plaintiff Kaufmann and Opt-in Plaintiffs Susan Hyman, Alan Krichman, and Jeffrey Lammert to arbitrate their claims and dismiss or stay the claims they assert in this action. As explained above, each of these Plaintiffs executed an arbitration agreement (the "Agreement") with Defendants, agreeing to arbitrate his or her claims on an individual basis.

There are two sets of class or collective claims at issue in this case. First, named Plaintiff Kaufmann brings a Rule 23 putative class claim under New York law. Second, all four of these plaintiffs bring putative collective claims pursuant to the FLSA. The Agreement provides in pertinent part that:

Any claim or controversy concerning you arising out of or in connection with the business activities of JPMC, your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA ....

(Heather Emmert Decl., Exhs. A–D; Agreements at 12 (attached as Exh. 1 to Linhorst Decl., ECF No. 70) (emphasis added).) FINRA Rule 13204(a), which was in effect at the time the four plaintiffs entered into their Agreements with Chase, provides that an arbitration agreement may not be enforced against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until one of four conditions occurs: 1) the class certification is denied; 2) the class is decertified; 3) the member of the certified or putative class is excluded from the class by the court; or 4) the member of the certified or putative class elects not to participate in the class or withdraws from the class. FINRA Rule 13204(a).

FINRA Rule 13204(b), which became effective in July 2012, extends these principles to collective actions, providing that "[a] member ... may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified." FINRA Rule 13204(b)(4).[FN8] The arbitration provision of Chase's Agreement with these four Plaintiffs clearly requires individual arbitration only to the extent such arbitration is "required ... by the FINRA Rules." Because the FINRA Rules, as currently in effect, clearly do not require, and indeed preclude at this juncture, arbitration of the class and collective action claims raised in this litigation, Defendants' motion to compel arbitration of the claims of Plaintiffs Kaufman, Hyman, Krichman and Lammert must be denied. Cf. Alakozai v. Chase Investment Services Corp., No. CV 11–09178, 2012 WL 748584, at *3 (C.D.Cal. Mar. 1, 2012) (denying motion to compel arbitration under same Agreement of putative Rule 23 class claim).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

Slip Copy, 2013 WL 4828588 (S.D.N.Y.)
(Cite as: 2013 WL 4828588 (S.D.N.Y.))

FN8. See FINRA Regulatory Notice 12–29, available at http:// www.finra.org/web/gro ups/industry/@ip/@reg/ @notice/documents/notices/p126870.pdf. Defendants' argument that the Court should ignore the 2012 amendment to Rule 13204 is unpersuasive—the Agreement incorporates the arbitration parameters defined by the FINRA Rules, without any specific temporal reference. It is consistent with the language of the agreement, and with FINRA's own effective date statement, to apply the current provisions of the rules. To read the Agreement to require arbitration of putative collective claims that FINRA clearly does not require to be arbitrated would render the arbitration provision of the Agreement self-contradictory. The plain and logical import of the language of the Agreement is that arbitration is not required when FINRA does not require it.

CONCLUSION

*8 For the foregoing reasons, Plaintiffs' motion for conditional certification is granted. Defendants motion to compel arbitration as to opt-in plaintiffs Johnson, Zaat–Hetelle, Vanhoogstraat, Piccoli and Patey is granted, and the claims of those plaintiffs are dismissed without prejudice to arbitration. Defendants' motion to compel arbitration as to named plaintiff Kaufmann and Opt-in plaintiffs Hyman, Krichman and Lammert is denied. This Memorandum Order resolves docket entry nos. 62, 65 and 67.

The parties are directed to confer regarding the content of the notice to be disseminated to potential opt-in plaintiffs, and must submit a joint proposal to the Court for approval within 14 (fourteen) days of the entry of this Memorandum Order.

SO ORDERED.

S.D.N.Y.,2013.
Lloyd v. J.P. Morgan Chase & Co.
Slip Copy, 2013 WL 4828588 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2009 WL 256107 (S.D.N.Y.), 105 Fair Empl.Prac.Cas. (BNA) 1419
(Cite as: 2009 WL 256107 (S.D.N.Y.))

United States District Court,
S.D. New York.
Steven NUNEZ, Plaintiff,
v.
CITIBANK, N.A., Defendant.

No. 08 Cv. 5398(BSJ).
Feb. 3, 2009.

West KeySummaryAlternative Dispute Resolution 25T ⚷146

25T Alternative Dispute Resolution
   25TII Arbitration
      25TII(B) Agreements to Arbitrate
         25Tk142 Disputes and Matters Arbitrable Under Agreement
            25Tk146 k. Employment Disputes. Most Cited Cases

Employer's motion to compel arbitration of employee's race and religion discrimination and retaliation claims was granted. Employee expressly agreed, on four separate occasions, to arbitrate any employment-related claims against employer. Employee's claims fell squarely within the scope of the arbitration policy, which explicitly encompassed claims regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation. ; 42 U.S.C.A. § 1981.

Order

BARBARA S. JONES, District Judge.

*1 Plaintiff Steven Nunez ("Nunez") brought this action alleging that Defendant Citibank N.A. ("Citibank") discriminated and retaliated against him, on the basis of his race and religion and in violation of city, state and federal law. Pursuant to the Federal Arbitration Act ("FAA") and Federal Rules 12(b)(1) and 12(b)(6), Citibank moves to compel arbitration and dismiss or stay this action. Nunez has not opposed or addressed Citibank's motion, and for the reasons that follow, it is GRANTED.

BACKGROUND

This action arises out of Nunez's employment with Citibank, which spanned from April 25, 2005 until his termination on July 19, 2007. (Complaint ¶ 6). In March of 2005, Nunez completed and signed an employment application that declared Citibank's "mandatory employment arbitration policy" (the "Arbitration Policy"), which made employment "contingent upon execution of ... an agreement to submit employment related disputes to binding arbitration." (Certification of Ruth A. Pollock ("Pollock Cert."), Ex. 1). On April 25, 2005, Citibank hired Nunez as a Personal Banker, in a branch located in Uniondale, New York. (Complaint ¶¶ 6, 14). Upon the commencement of his employment, Nunez signed two documents indicating his agreement to the Arbitration Policy. The first, entitled "Principles of Employment," states,

"You agree to follow our dispute resolution/arbitration procedures for employment disputes ... These include without limitation all claims, demands or actions under Title VII ... and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions of employment or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2009 WL 256107 (S.D.N.Y.), 105 Fair Empl.Prac.Cas. (BNA) 1419
(Cite as: 2009 WL 256107 (S.D.N.Y.))

termination of employment."

(Pollock Cert. ¶ 7, Ex. 2). This document outlines those procedures, provides that, with respect to any dispute that is not resolved internally, "you and the Company agree to submit the dispute ... to binding arbitration with the American Arbitration Association ("AAA")," and makes clear that "it is your responsibility to read and understand the dispute resolution/arbitration procedures." (Pollock Cert. Ex. 2) (emphasis supplied).

Nunez also signed a "Receipt Form," dated April 26, 2005, which acknowledged his agreement to arbitrate employment-related disputes and his receipt of a copy of the U.S. Consumer Group 2004 Employee Handbook containing the Arbitration Policy. (Pollock Cert. ¶¶ 8–9, Ex. 3). The "Receipt Form" states,

I understand that this Handbook contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 35). I have read that policy carefully. I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

(Pollock Cert. Ex. 3). The first page of the 2004 Employee Handbook states, in bold type:
*2 Important: This Handbook contains a policy that requires you to submit employment-related disputes to a binding arbitration (see page 35). Please read that policy carefully. No provision in this Handbook or elsewhere is intended to constitute a waiver, or be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

(Pollock Cert. Ex. 3) (emphasis supplied). The 2004 Employee Handbook also provides that the Arbitration Policy applies to all persons employed by U.S. Consumer Group on or after September 1, 2001. The Arbitration Policy
makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and U.S. Consumer Group ... including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964 ... and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

On March 2, 2006, Nunez signed another "Receipt Form" acknowledging his receipt of a copy of the U.S. Consumer Group 2006 Employee Handbook, which included the Arbitration Policy. In so doing, Nunez reaffirmed his agreement to and understanding of the mandatory Arbitration Policy. (Pollock Cert. Ex. 5). The first page of the 2006 Handbook, like the 2004 Handbook, emphasized that the Arbitration Policy "requires you to submit employment-related disputes to binding Arbitration." (Pollock Cert. ¶ 13, Ex. 6, p. 1) (emphasis supplied). The 2004 and 2006 Handbooks contain substantively identical Arbitration Policies. (See Pollock Cert. Ex. 5, 6).

Nunez's employment continued until his termination on July 19, 2007. (Complaint ¶ 6). He commenced this action on June 13, 2008, alleging that, in the course of his employment at Citibank, Citibank discriminated and retaliated against him, in violation of Title VII, New York State and City Human Rights Laws, 42 U.S.C. §§ 1981a, 1983, and 1985, and the First and Fourteenth Amendments to the U.S. Constitution. (Complaint ¶¶ 1, 44, 49, 50, 54). Citibank filed the instant motion on August 20, 2008.

DISCUSSION

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 256107 (S.D.N.Y.), 105 Fair Empl.Prac.Cas. (BNA) 1419
(Cite as: 2009 WL 256107 (S.D.N.Y.))

### 1. Mandatory Arbitration

Because Nunez has agreed to arbitrate his claims against Citibank, he cannot pursue those claims in this Court. The FAA governs Citibank's Arbitration Policy. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (holding that FAA governs arbitration clauses in employment contracts other than those for transportation workers). The FAA establishes "a strong federal policy favoring arbitration as an alternative means of dispute resolution," JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 171 (2d Cir.2004), and requires federal courts to enforce "privately made agreements to arbitrate" as they would any other contract. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987) (citing Dean Witter, 470 U.S. at 218). Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate. Cronas v. Willis Group Holdings Ltd., No. 06 Civ. 15295(GEL), 2007 U.S. Dist. LEXIS 68797, at *9, 2007 WL 2739769 (S.D.N.Y.2007) (citing Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 45 (2d Cir.1993)).

*3 The Court's "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). To decide a motion to compel arbitration of claims based on statutory rights, a district court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable. Genesco, 815 F.2d at 844. Here, the Court resolves each of these issues in Citibank's favor.

### a. The Parties Agreed to Arbitrate

It is clear that the parties entered into an agreement to arbitrate. As set forth above, Nunez expressly agreed, on four separate occasions, to arbitrate any employment-related claims against Citibank. The parties' "undisputed execution of [multiple] agreements demonstrates that [they] freely agreed to arbitrate." White v. Cantor Fitzgerald, L.P., No. 07 Civ. 8006(DAB), 2008 U.S. Dist. LEXIS 106456, at *12, 2008 WL 5429648 (S.D.N.Y. Dec. 23, 2008) (dismissing claims subject to mandatory arbitration); see also Tarulli v. Circuit City Stores, Inc., 333 F.Supp.2d 151, 158 (S.D.N.Y.2004) (compelling arbitration where plaintiff "voluntarily signed the Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

### b. Nunez's Claims Fall Within the Scope of the Arbitration Policy

In determining the proper scope of an arbitration agreement, courts "should generally apply state-law principles that govern the formation of contracts," Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 48 (2d Cir.2000), and discerns whether a party's claim actually falls within the scope of an arbitration agreement as written. JLM Industries, Inc., 387 F.3d at 169. It is well established under New York law that one "who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them ...." Metzger v. Aetna Ins. Co ., 227 N.Y. 411, 125 N.E. 814 (1920).

The FAA establishes a strong presumption of arbitrability. See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 29–30 (2d Cir.2001). Generally, the Court broadly construes an agreement to arbitrate; "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Arbitra-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 256107 (S.D.N.Y.), 105 Fair Empl.Prac.Cas. (BNA) 1419
(Cite as: 2009 WL 256107 (S.D.N.Y.))

tion is properly compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir.1993).

That may not be said here: Nunez's discrimination and retaliation claims fall squarely within the scope of the Arbitration Policy, which explicitly encompasses "claims, demands or actions under ... any ... federal, state or local statute, regulation or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation." (Pollack Cert. Ex. 4, 6). See, e.g., White, 2008 U.S. Dist. LEXIS at *16, 2008 WL 5429648 (compelling arbitration and finding employment discrimination claims arbitrable where agreement specifically referred such claims to mandatory arbitration); Cronas, 2007 U.S. Dist. LEXIS at *9, 2007 WL 2739769 (collecting cases doing same).

c. Nunez's Claims are Arbitrable

*4 The federal statutory claims that Nunez asserts are arbitrable. See, e.g., Circuit City Stores, Inc., 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law [.]"); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (concluding that the federal policy in favor of arbitration extends to claims under federal statutes); White, 2008 U.S. Dist. LEXIS, at *16, 2008 WL 5429648 ("[T]here is no question that federal employment discrimination claims brought under Title VII have been found to be arbitrable."); Doctor's Assocs. v. Agrawal, No. 05 Civ. 250, 2006 U.S. Dist. LEXIS 30122, 2006 WL 1028908 (D.Conn. Apr. 13, 2006) (finding arbitrable discrimination claim brought pursuant to 42 U.S.C. § 1981).

2. Dismissal

Because all of Nunez's claims must be submitted to arbitration, "no useful purpose will be served by granting a stay of these proceedings." White, 2008 U.S. Dist. LEXIS, at *18, 2008 WL 5429648 (citations omitted). As a result, the Court dismisses those claims in favor of arbitration. See, e.g., Rubin v. Sona Int'l Corp., 457 F.Supp.2d 191, 198 (S.D.N.Y.2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.").

CONCLUSION

For the foregoing reasons, Citibank's motion to compel arbitration and dismiss or stay these proceedings is GRANTED. The Court dismisses this action in favor of arbitration and directs the Clerk of Court to close this case.

SO ORDERED:

S.D.N.Y.,2009.
Nunez v. Citibank, N.A.
Not Reported in F.Supp.2d, 2009 WL 256107 (S.D.N.Y.), 105 Fair Empl.Prac.Cas. (BNA) 1419

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2014 WL 3583195 (S.D.N.Y.)
(Cite as: 2014 WL 3583195 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Benjamin SALZANO, individually and on behalf of all other persons similarly situated, Plaintiff,
v.
LACE ENTERTAINMENT INC., et al., Defendants.

No. 13 Civ. 5600(LGS).
Signed July 18, 2014.

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge.

*1 Plaintiff Benjamin Salzano brings this case against Defendants Lace Entertainment Inc. ("LEI") and Glen Orecchio for unpaid wages, liquidated damages, and attorneys' fees and costs, claiming violations of the Federal Labor and Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Defendants moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Alternatively, Defendants seek an order to compel arbitration and a stay of this action, pursuant to an agreement to arbitrate between Plaintiff and Defendant LEI. For the following reasons, the motion to dismiss is denied, and the motion to compel arbitration and stay this action is granted.

BACKGROUND

The facts below are taken from the Complaint and the "Non–Exclusive Lease of Dee Jay Equipment & Entertainment Facilities." From 2008 to 2012, Plaintiff Salzano worked as a disc jockey at Lace Gentlemen's Club, which Defendants own. Defendant Orecchio "exercised substantial control over the functions of the employees of [LEI], including the plaintiff ..." and was Plaintiff's co-employer, along with Defendant LEI. Defendants allegedly did not compensate Plaintiff for his work at Lace Gentlemen's Club from 2008 until around July 2012, after which Defendants compensated Plaintiff at the rate of $30.00 per shift, which lasted about eight to ten hours.

In each of the years 2010, 2011 and 2012, Plaintiff signed a one-year contract with LEI. The contract was in substance the same each year, and is referred to below, individually or collectively, as the "Contract." The Contract discusses the terms of a purported lease, the Plaintiff's obligations and compensation, LEI's obligations and the relationship of the parties.

The Contract contains an arbitration clause that provides in bold and all capital letters: "All disputes arising from this lease shall be exclusively decided by binding arbitration in accordance with rules of the American Arbitration Association and as may be modified by any state arbitration act. All fees shall be paid by non-prevailing party." The Contract also provides in bold and all capital letters:

Disc Jockey agrees that all claims between he/she and club will be litigated individually and that they will not consolidate or seek class treatment for any claim. Disc Jockey further agrees not to commence any action, suit or arbitration proceedings relating in any manner whatsoever to this lease or to his/her performing at the premises of club more than six months after he/she last performed at the premises and further agrees to waive

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 3583195 (S.D.N.Y.)
(Cite as: 2014 WL 3583195 (S.D.N.Y.))

any statute of limitations to the contrary....

On December 17, 2013, Defendants spoke to Plaintiff by telephone and waived the both the statute of limitations and fee-shifting provisions in the Contract.

STANDARD OF REVIEW

Defendants have moved to dismiss the case for lack of subject matter jurisdiction or, in the alternative, compel Plaintiff to arbitrate the claims pursuant to Section 3 of the Federal Arbitration Act and stay the case. No "case in this Circuit has held that mandatory arbitration clauses of the type at issue here deprive courts of subject matter jurisdiction of claims sounding in federal law." Acevedo v. Tishman Speyer Props. L.P., 12 Civ. 1624, 2013 WL 1234953, at *2 (S.D.N.Y. Mar.26, 2013) (citing 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009)). Accordingly, the Court treats the pending motion as a motion to compel arbitration and stay the case pending outcome of the arbitration.

DISCUSSION

*2 The Court compels Plaintiff to arbitrate his FLSA and NYLL claims because he agreed to arbitrate, the arbitration clause covers Plaintiff's claims, and FLSA and NYLL claims were not intended by the respective legislatures to be nonarbitrable. See JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir.2004) (compelling arbitration when the parties agreed to an arbitration clause that covered the statutory claims, which were not intended by the respective legislatures to be nonarbitrable). Moreover, the Contract is not unconscionable because Defendants have waived the provisions that otherwise would have made the agreement substantively unconscionable. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 124 (2d Cir.2010) (compelling arbitration after the defendants waived substantively unconscionable provisions). Furthermore, Defendant Orecchio may compel arbitration because, even though he is not a signatory to the arbitration agreement, he has a close relationship to Plaintiff, the signatory, and the issues Orecchio seeks to resolve are factually intertwined with the agreement between Plaintiff and LEI. See id. at 127–28 (holding that a non-signatory can compel arbitration under such circumstances). Therefore, Plaintiff is compelled to arbitrate his FLSA and NYLL claims against both Defendants.

In order to determine whether to compel arbitration, a court must decide: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration clause; and (3) where statutory claims are asserted, whether the relevant legislature intended those claims to be nonarbitrable. Stolt–Nielsen SA, 387 F.3d at 169. "[A]ny doubts concerning the scope of arbitrable issues [should be resolved] in favor of arbitration, [even if] the problem at hand is the construction of the contract language itself ...." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 393 (2d Cir.2011) (emphasis added) (internal quotation marks and citation omitted). Where an arbitration clause is broad, there is a presumption of arbitrability that may only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." Anderson v. Am. Express Co. (In re Am. Exp. Fin. Advisors Sec. Litig.), 672 F.3d 113, 128 (2d Cir.2011) (internal quotation marks and citation omitted).

In this case, the parties signed an agreement that contained an arbitration clause and agreed to arbitrate any dispute arising from that agreement. The clause was a " 'clear, explicit and unequivocal agreement to arbitrate.' " Dixon v. NBC Universal Media, 947 F.Supp.2d 390, 399 (S.D.N.Y.2013) (quoting Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 863 N.Y.S.2d 391, 893 N.E.2d 807, 809 (N.Y.2008)). Furthermore, the arbitration clause here is broad because it specifies that "all disputes arising from this lease shall be ... decided by ... arbitration...." See McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co., 858 F.2d 825, 832 (2d Cir.1988) ("[A] broad clause

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 3583195 (S.D.N.Y.)
(Cite as: 2014 WL 3583195 (S.D.N.Y.))

[is one] in which parties agree to submit to arbitration disputes of any nature or character, or simply any and all disputes." (internal quotation marks and citation omitted)).

*3 Because the arbitration clause here is broad, it covers all claims, including FLSA and NYLL claims. "When we deal with a broad arbitration clause ... it is clear that we have not limited arbitration claims to those that constitute a breach of the terms of the contract at issue." Stolt–Nielsen SA, 387 F.3d at 176. (citation omitted). If the arbitration clause is broad, claims concerning a collateral matter or matters covered by the parties' contracts are presumed to be arbitrable. Id. at 172; see Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 625 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[I]nsofar as the allegations underlying the statutory claims touch matters covered by the [contract], the Court of Appeals properly resolved any doubts in favor of arbitrability."). In this case, Plaintiff's Contract with LEI discusses employment terms, wage rates, fees and tips, and his status as an employee, all matters touched upon by his FLSA and NYLL claims and their underlying factual allegation-that he did not receive compensation for his work as an employee. See Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 77 (2d Cir.1998) (reasoning that the plaintiff's claim touched matters covered by the contract because a significant part of the contract discussed the subject of the claim); Ouedraogo v. A–1 Int'l Courier Serv., Inc., 12 Civ. 5651, 2014 WL 1172581, at *3 (S.D.N.Y. Mar.21, 2014) (reasoning that the plaintiff's FLSA and NYLL claims touched matters covered by the employment contract because the contract expressly discussed compensation). Accordingly, Plaintiff's FLSA and NYLL claims are within the scope of the arbitration clause and, therefore, arbitrable.

No legislative proscription bars arbitrating NYLL and FLSA claims. Where a party is asserting a statutory claim that is subject to an arbitration agreement, that claim must be arbitrated unless the respective legislatures intended to "preclude a waiver of judicial remedies for the statutory rights at issue." Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir.2008) (citation omitted); accord Mitsubishi, 473 U.S. at 626. Plaintiff, as the party opposing arbitration, has the burden to show that the legislatures intended to preclude arbitration for NYLL and FLSA claims. Oldroyd, 134 F.3d at 78. Courts have held that NYLL and FLSA claims are arbitrable and that the legislatures have not expressed or clearly implied an intention to preclude those claims from arbitration. See, e.g., Sutherland v. Ernst & Young LLP, 726 F.3d 290, 292 n. 1 (2d Cir.2013) (compelling arbitration of Plaintiff's FLSA and NYLL claims without specifying that the legislatures did not intend to preclude such arbitration); Arrigo v. Blue Fish Commodities, Inc., 704 F.Supp.2d 299, 304 (S.D.N.Y.2010), aff'd, 408 F. App'x 480 (2d Cir.2011) (holding that Congress did not intend FLSA claims to be non-arbitrable). In this case, Plaintiff has not produced any evidence that Congress intended to preclude arbitration in FLSA cases, nor that the New York legislature intended to preclude arbitration in NYLL cases. Therefore, the NYLL and FLSA claims are arbitrable.

*4 Plaintiff argues that the arbitration clause does not apply to him because the Contract has expired. This argument is unavailing because the agreement does not provide that claims brought after the expiration of the agreement cannot be arbitrated. Parties to an expired contract are still subject to its arbitration clause unless the parties clearly intended to limit the provision to disputes or claims that arise during the duration of the contract. Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 253–255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) ( "[I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract."). Here, the arbitration clause does not expressly provide for any time limitations. Therefore, the arbitration clause covers the FLSA and NYLL claims even though Plaintiff asserted them after the Contract expired. See Butchers, Food Handlers & Allied Workers Union, Local 174 v. Hebrew Nat. Kosher Foods, Inc., 818 F.2d 283, 287 (2d Cir.1987) ("If the contract does not state that the duty to arbitrate ends with the termination of the contract, the strong policies favoring arbitration should ordinarily lead the court to conclude that the obligation to arbitrate-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 3583195 (S.D.N.Y.)
(Cite as: 2014 WL 3583195 (S.D.N.Y.))

especially as to claims that accrued during the term of the contract-survives the expiration of the contract.”).

Plaintiff also argues that provision 6E, which provides that “paragraph 6E survives termination of the lease[,]” indicates that the parties intended for the remaining provisions, specifically the arbitration clause, not to survive the termination of the lease. As stated above, however, the strong federal policy favoring arbitration dictates that courts should resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. Accordingly, the arbitration clause here covers claims brought after the expiration of the Contract.

Plaintiff also argues that the terms of the Contract are unconscionable. This argument fails because Defendants waived the unconscionable terms. The Court must decide whether the arbitration clause itself, as opposed to the entire contract, is unconscionable. Ragone, 595 F.3d at 121. “Because unconscionability is an equitable defense to the enforcement of harsh or unreasonable contract terms, ... a party cannot complain when the defendant through its waiver declines to enforce any potentially unconscionable term.” Id. at 124 (internal citation omitted). Here, Defendants waived the only provisions in the arbitration agreement that might otherwise have made the arbitration provision unconscionable—the contractually created six-months limitations period and the fee-shifting provision. Furthermore, the Contract contains a severability clause that allows the arbitrator to strike “any part of [the] contract [that] is unenforceable.” See Ouedraogo, 2014 WL 1172581, at *4. Therefore, the arbitration clause is enforceable.

*5 Finally, Plaintiff argues that Defendant Orecchio cannot compel arbitration because he is not a party to the arbitration agreement. However, Orecchio may compel arbitration because Plaintiff's claim against Orecchio is factually intertwined with the agreement, and Orecchio has a sufficiently close relationship to Plaintiff. Equitable estoppel may allow a non-signatory to enforce an arbitration clause against a signatory to the agreement. Ragone, 595 F.3d at 126. Where (1) the issues the non-signatory seeks to resolve in arbitration are factually intertwined with the agreement that the signatories have signed, and (2) the non-signatory seeking arbitration and the signatory opposing arbitration have a sufficiently close relationship, then the signatory resisting arbitration is estopped from doing so. Id. at 127; In re A2P SMS Antitrust Litig., 972 F.Supp.2d 465, 476 (S.D.N.Y.2013). In this case, Plaintiff makes the same factual allegations against Orecchio, as he does against LEI—that Orecchio did not pay him for his work at Lace Gentlemen's Club. Thus, the issues that Orecchio seeks to resolve through arbitration are factually intertwined with the agreement between the signatories. See Ragone, 595 F.3d at 128. Also, Plaintiff considered Orecchio to be his employer, and Orecchio “exercised substantial control over the functions of the ... plaintiff;” consequently, Orecchio has a sufficiently close relationship with Plaintiff. See id. (reasoning that a close relationship existed because the signatory knew that she would be working with and be supervised by the non-signatory). Orecchio may compel Plaintiff to arbitrate his claims against Orecchio together with the identical claims against LEI.

CONCLUSION

For the reasons stated above, the Court DENIES Defendants' motion to dismiss, and GRANTS Defendants' motion to compel arbitration and stay this action pending outcome of the arbitration, which is the Second Circuit's preferred mechanism for dealing with motions such as this one. See Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90, 92–93 (2d Cir.2002).

The Clerk of the Court is directed to close the motion at Docket Number 18 and to stay the case.

SO ORDERED.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 3583195 (S.D.N.Y.)
(Cite as: 2014 WL 3583195 (S.D.N.Y.))


S.D.N.Y.,2014.
Salzano v. Lace Entertainment Inc.
Slip Copy, 2014 WL 3583195 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 1

Slip Copy, 2014 WL 1311937 (N.D.N.Y.)
(Cite as: 2014 WL 1311937 (N.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jeremy SCHAPP; and James Coe, on behalf of Themselves and on Behalf of All Others Similarly Situated,
Plaintiffs,
v.
MASTEC SERVICES COMPANY, INC.; and Halsted Communications, Ltd., Defendants.

No. 6:12–CV–0841 (LEK/DEP).
Signed March 31, 2014.

Gabriel A. Assaad, Galvin B. Kennedy, Kennedy, Hodges Law Firm, Houston, TX, Ross P. Andrews, Satter, Andrews Law Firm, Syracuse, NY, for Plaintiffs.

Christopher J. Belter, Daniel B. Moar, Goldberg, Segalla Law Firm, Buffalo, NY, David E. Leach, Goldberg, Segalla Law Firm, Syracuse, NY, for Defendants.

DECISION and ORDER
LAWRENCE E. KAHN, District Judge.
I. INTRODUCTION
*1 On March 28, 2013, the Court stayed this wage and hour action pending the Second Circuit's decision on the appeal of Raniere v. Citigroup Inc., 827 F.Supp.2d 294 (S.D.N.Y.2011), and the United States Supreme Court's decision on the appeal of In re American Express Merchants' Litigation, 667 F.3d 204 (2d Cir.2012), cert granted sub nom. American Express Co. v. Italian Colors Restaurant, ––– U.S. ––––, 133 S.Ct. 594, 184 L.Ed.2d 390 (2012) (No. 12–133). See Dkt. No. 27 ("March Order"). Both decisions have issued. See Am. Express Co. v. Italian Colors Rest. ( Italian Colors), –––U.S. ––––, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); Raniere v. Citigroup Inc. (Raniere), No. 11–5213, 2013 WL 4046278 (2d Cir. Aug.12, 2013). Currently before the Court is Defendants MasTec Services Company, Inc. ("MSC") and Halsted Communications, Ltd.'s ("Halsted") Motion to dismiss the Complaint and compel arbitration. Dkt. No. 16 ("Motion"); see also Dkt. No. 1 ("Complaint"). For the following reasons, the Motion is granted.

II. BACKGROUND
The March Order laid out the facts of this case. See Mar. Order at 2–5. In short, Plaintiffs Jeremy Schapp and James Coe (collectively, "Plaintiffs") filed the Complaint alleging that Defendants failed to pay them overtime as required by the Fair Labor Standards Act ("FLSA") and New York State labor and employment laws. Id. at 3. Defendants then filed the Motion seeking to dismiss the Complaint and compel arbitration based on a dispute-resolution policy to which Plaintiffs agreed by signing an employee-acknowledgment page at the end of an employee handbook. Id.; see also Dkt. Nos. 17–5 ("Policy"); 17–1 ("Schapp Acknowledgment"); 17–2 ("Coe Acknowledgment," together with the Schapp Acknowledgment, "the Acknowledgments"); 34–1 ("Handbook"). Plaintiffs opposed the Motion and enforcement of the Policy on a number of grounds. See id. at 4–5.

In the wake of Raniere and Italian Colors, Defendants seek to have the stay lifted and the Motion granted.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1311937 (N.D.N.Y.)
(Cite as: 2014 WL 1311937 (N.D.N.Y.))

See Dkt. Nos. 28–29; 31–32. Plaintiffs have narrowed their opposition to the Motion to a single ground: the Policy's putative non-coverage of their claims against Halsted. See Dkt. No. 34–1 ("Opposition") at 2–7.[FN1]

> FN1. Plaintiffs filed their Opposition after the expiration of the period the Court provided for doing so. See Dkt. No. 33; Opp. They have filed a Motion for a retroactive extension. Dkt. No. 34 ("Extension Motion"). Although Defendants vociferously object, see Dkt. No. 36 at 3–5, the Court grants the Motion.

III. LEGAL STANDARD

"In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir.2003) (citation omitted); see also Lismore v. Societe Generale Energy Corp., No. 11 Civ. 6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) ("In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion ... and some discovery may be allowable or necessary." (citing DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir.2009))); Santos v. GE Capital, 397 F.Supp.2d 350, 353 (D.Conn.2005). "Accordingly, a court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." Ryan v. JPMorgan Chase & Co., No. 12 CV 4844, 2013 WL 646388, at *2 (S.D.N .Y. Feb. 21, 2013) (citing FED. R. CIV. P. 56(c) and Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

*2 A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment." Id. A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. See id. A court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.2010).

"The question of whether parties agreed to arbitrate is to be decided by the court; however, if an issue of fact exists with regard to the whether the parties made such an agreement, a trial on that issue is necessary." Envtl. Energy Servs., Inc. v. Cylenchar, Ltd., No. 11–CV–0039, 2011 WL 4829851, at *2 (D.Conn. Oct. 12, 2011) (citing Bensadoun, 316 F.3d at 175). However, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of [its] claim in order to precipitate the trial contemplated by 9 U .S.C. § 4." Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir.1987). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir.1995).

"Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." Nunez v. Citibank, N.A., No. 08 Civ. 5398, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir.1987) ( "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1311937 (N.D.N.Y.)
(Cite as: 2014 WL 1311937 (N.D.N.Y.))

IV. DISCUSSION

Plaintiffs acknowledge that the Policy applies to their claims against MSC but assert that it does not apply to their claims against Halsted. See Opp. at 1. The Policy mandates arbitration of "any dispute arising out of or related to Employee's employment with the Company." Policy at 1.[FN2] The "Company" is defined by the Handbook as "MasTec, Inc., its divisions and affiliates." Handbook at 7.[FN3] Plaintiffs argue that the Policy is inapplicable to their claims against Halsted because: (1) at the time Plaintiffs signed the Acknowledgments and thereby agreed to be bound by the Policy, Halsted was a non-extant predecessor, not an extant affiliate, of MasTec, Inc. ("MasTec")[FN4]; and (2) even if claims arising out of Halsted employment were covered by the Policy, the Policy is not retroactive. See generally Opp.

> FN2. The pagination corresponds to the page numbers assigned by ECF.
>
> FN3. The pagination corresponds to the page numbers assigned by ECF.
>
> FN4. Defendant MSC is a subsidiary of MasTec. Dkt. No. 16–1 ("Paglieri Affidavit") ¶ 3. As noted supra, Plaintiffs acknowledge that the Policy applies to their claims against MSC.

A. Applicability to Halsted

1. Halsted is a Subsidiary of MasTec

*3 Plaintiffs offer no evidence in support of their assertion that Halsted was a non-extant predecessor of MasTec at the time Plaintiffs signed the Acknowledgments. See Opp. The only evidence before the Court indicates that MasTec acquired Halsted before Plaintiffs signed the Acknowledgments in 2011, see Compl. ¶ 4; Acknowledgments; Dkt. No. 16–1 ("Paglieri Affidavit") ¶ 3; Dkt. No. 35–2, and that since its acquisition Halsted has continued to exist as a subsidiary of MasTec, Inc. (and therefore was an extant subsidiary when the Acknowledgments were signed). Defendants provide an affidavit from a MasTec associate general counsel who affirms that Halsted is a wholly owned subsidiary of MasTec North America, Inc., which is in turn a wholly owned subsidiary of MasTec. See Paglieri Aff. ¶ 3. Defendants also present database information from the New York Department of State indicating that Halsted is an active business corporation. See Dkt. No. 35–2. Finally, Defendants present a BusinessWeek listing indicating that Halsted Communications, Ltd. continues to be a subsidiary of MasTec North America Inc.[FN5] Dkt. No. 35–3. The Court therefore finds that Halsted was a MasTec subsidiary, not a non-extant predecessor, at the time Plaintiffs agreed to the Policy.

> FN5. Plaintiffs, despite being granted the opportunity to reply to Defendants' submissions, chose not to do so. See Dkt. No. 33; see generally Docket.

2. A MasTec Subsidiary is an Affiliate of MasTec

Halted's status as a MasTec subsidiary renders it a MasTec affiliate under the Policy. In a section entitled "Confidential Information," the Handbook broadly defines the term affiliate as any "companies controlling, controlled by or under common control with the Company." Handbook at 53–54. Even if the definition were interpreted to apply exclusively to this Handbook section and not to the Policy, the term "affiliate" is generally defined likewise. Black's Law Dictionary defines affiliate as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." BLACK'S LAW DICTIONARY (9th ed.2009) (emphasis added). Courts have relied on this definition in finding that the term "affiliate" includes subsidiaries. See Crewe v. Rich Dad Educ., LLC, 884 F.Supp.2d 60, 75 (S.D.N.Y.2012); Citibank, N.A. v. Franco, No. 11 Civ. 2925, 2011 WL 6961404, at *4 n. 2 (S.D.N.Y. Dec. 29, 2011). Particularly in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1311937 (N.D.N.Y.)
(Cite as: 2014 WL 1311937 (N.D.N.Y.))

light of the Court's duty to construe agreements in favor of arbitrability and Plaintiffs' failure to argue that a MasTec subsidiary does not constitute a MasTec affiliate under the Policy, see generally Mem., the Court finds that Halsted constitutes a MasTec affiliate under the Policy. The Policy therefore requires arbitration of disputes arising out of Halsted employment.

B. Retroactivity

Plaintiffs also argue that, because their claims arise out of Halsted employment pre-dating their agreement to be bound by the Policy, those claims are not subject to the Policy. See Opp. at 5. But the Second Circuit has held that, in the absence of language explicitly limiting an otherwise broad arbitration agreement to post-agreement disputes, the agreement should be deemed retroactive. See Coenen v. R.W. Pressprich & Co., 453 F.2d 1209 (2d Cir.1979); see also Ryan, Beck & Co. v. Fakih, 268 F.Supp.2d 210, 224 n. 28 (E.D.N.Y.2003) ("[W]here, as here, the arbitration clause did not contain any temporal limitation, the Second Circuit has compelled arbitration despite the fact that the challenged conduct predated the signing of the parties' agreement." (quotation marks omitted)). Here, the Policy applies broadly to "any dispute arising out of or relating to [Plaintiffs'] employment" and contains no temporally limiting language. Policy at 1. The Court therefore finds that the Policy applies retroactively to Plaintiffs' claims against Halsted.

V. CONCLUSION

*4 Accordingly, it is hereby:

ORDERED, that Plaintiffs' Motion (Dkt. No. 34) for a retroactive extension is GRANTED; and it is further

ORDERED, that Defendants' Motion (Dkt. No. 16) to dismiss and compel arbitration is GRANTED; and it is further

ORDERED, that the Complaint (Dkt. No. 11) is DISMISSED; and it is further ORDERED, that the parties proceed to arbitration; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on all parties.

IT IS SO ORDERED.

N.D.N.Y.,2014.
Schapp v. Mastec Services Co., Inc.
Slip Copy, 2014 WL 1311937 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.