# EXHIBIT

# A

# JASINSKI

A PROFESSIONAL CORPORATION  |  COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

> *Re:    The Beverage Works NY, Inc.*
> *Darnell Brunston*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Darnell Brunston, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI
### A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> Re:   *The Beverage Works NY, Inc.*
>       *Jonathan E. Hill*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Jonathan E. Hill, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

> *Re:    The Beverage Works NY, Inc.*
> *Samuel Hernandez*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees.  The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure.  You serve as a member of the arbitration panel member to resolve disputes.  A dispute has arisen between the Employer and Samuel Hernandez, a Union member, alleging violations of the CBA.  We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure.  We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> Re:    *The Beverage Works NY, Inc.*
>        *Nicholas Vincent Jones*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Nicholas Vincent Jones, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

> Re:   *The Beverage Works NY, Inc.*
>       *Edwin Pacheco*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees.  The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure.  You serve as a member of the arbitration panel member to resolve disputes.  A dispute has arisen between the Employer and Edwin Pacheco, a Union member, alleging violations of the CBA.  We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure.  We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

JASINSKI                    A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

                                                        www.jplawfirm.com
                            December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ  07751

          Re:    *The Beverage Works NY, Inc.*
                 *Lenny Reyes*

Dear Arbitrator Davis:

        The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are
parties to a collective bargaining agreement covering sales representatives and warehouse and
delivery employees.  The collective bargaining agreement ("CBA") provides any dispute shall be
resolved through the Grievance and Arbitration Procedure.  You serve as a member of the
arbitration panel member to resolve disputes.  A dispute has arisen between the Employer and
Lenny Reyes, a Union member, alleging violations of the CBA.  We will waive any time
limitations and agree to resolve this matter through the Grievance and Arbitration Procedure.  We
respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct
a plenary hearing.

                                Sincerely,

                                JASINSKI, P.C.

                                DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

60 Park Place, 8th Floor                      8025 Black Horse Pike, Suite 470
Newark, NJ 07102                              West Atlantic City, NJ 08232
ph 973-824-9700 | fax 973-824-6061            ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> Re:   *The Beverage Works NY, Inc.*
>        *Efrain F. Rodriguez*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Efrain F. Rodriguez, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C.

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York  11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York  10509

---

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

> Re:    *The Beverage Works NY, Inc.*
> *Whitley Tavaris, Jr.*

Dear Arbitrator Davis:

The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Whitley Tavaris, Jr., a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

Sincerely,

JASINSKI, P.C

DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# JASINSKI

A PROFESSIONAL CORPORATION | COUNSELORS-AT-LAW

www.jplawfirm.com

December 2, 2014

**Via Electronic and Regular Mail**
Wellington Davis
Arbitrator
Wellington Davis, Inc.
19 Freneau Drive
Morganville, NJ 07751

      · *Re:*    *The Beverage Works NY, Inc.*
                   *Samuel Torres-Soto*

Dear Arbitrator Davis:

      The Beverage Works NY, Inc. (the "Employer") and Local 713, I.B.O.T.U., IUJAT are parties to a collective bargaining agreement covering sales representatives and warehouse and delivery employees. The collective bargaining agreement ("CBA") provides any dispute shall be resolved through the Grievance and Arbitration Procedure. You serve as a member of the arbitration panel member to resolve disputes. A dispute has arisen between the Employer and Samuel Torres-Soto, a Union member, alleging violations of the CBA. We will waive any time limitations and agree to resolve this matter through the Grievance and Arbitration Procedure. We respectfully request the scheduling of an arbitration hearing in this matter for all sides to conduct a plenary hearing.

                          Sincerely,

                          JASINSKI, P.C.

                          DAVID F. JASINSKI

On Notice:

Local 713, I.B.O.T.U., IUJAT
100 Garden City Plaza, Suite 100A
Garden City, New York 11530

Bryan C. McCarthy and Associates, P.C.
1454 Route 22, Suite B101
Brewster, New York 10509

60 Park Place, 8th Floor
Newark, NJ 07102
ph 973-824-9700 | fax 973-824-6061

8025 Black Horse Pike, Suite 470
West Atlantic City, NJ 08232
ph 609-677-9800 | fax 609-677-9811

# EXHIBIT

# B

In the Matter of Arbitration Between:

        Before:
        Panel Arbitrator Wellington Davis

-------------------------------------------------------------X

Edwin Pacheco, Darnell Brunsten, Johnathan Hill, Lenny Reyes, Jr., Efrain Rodriguez, and Samuel Torres-Soto,

        Grievants,

    And

The Beverage Works NY, Inc., and Ricardo Valentine,

        Employer.

-------------------------------------------------------------X

## GRIEVANTS' POST ARBITRATION BRIEF

Jeffrey R. Maguire, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
BORRELLI & ASSOCIATES, P.L.L.C
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550
(516) 248-6027

*Attorneys for Grievants*

## PRELIMINARY STATMENT

The Grievants, Edwin Pacheco, Jonathan Hill, Samuel Soto, Efrain Rodriguez, Lenny Reyes and Darnell Brunston ("Grievants"), by and through their attorneys, submit this legal brief as a closing statement in support of their arguments made during arbitration concerning violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Grievants, former delivery drivers belonging to Local 713, IBOTU, IUJAT Union ("Union"), bring this action against Beverage Works, Inc. ("the Beverage Works" or "the Company"), alleging that the Company failed to pay its delivery drivers statutorily-required overtime pay for all hours worked exceeding forty in a given workweek.

During the course of the two-day arbitration, the Grievants each provided independent testimony that they worked as delivery drivers for some length of time during the applicable six year limitations period preceding the filing of the instant action.[1] Although their duration of employment varied, their testimony showed that essentially every other detail of their employment with the Beverage Works was nearly identical. As delivery drivers, each Grievant worked five days per week for approximately twelve hours a day, totaling approximately sixty to sixty-five hours per week. Their daily routines each consisted of arriving at the Company's warehouse before 6:00 a.m., receiving a manifest that listed the location and address of each stop that they needed to make that day, carrying out the delivery of Red Bull to each vendor, and then returning to the warehouse upon completion of their routes.

Grievants supported their testimony with documents reflecting that they indeed returned to the Company's warehouse at the end of their routes anywhere from around 5:00 p.m. until 6:30 p.m. The Grievants' testimony about the commencement time of their work day was supported by the Beverage Works's documents that showed warnings issued for failure to be at the warehouse by 6:00 a.m. Grievants further testified and produced documentary evidence that the Company paid

---

[1] The Beverage Works argues that some Grievants are "barred by the two year Statute of Limitations under the FLSA." This is not true. Under the FLSA, the applicable Statute of Limitations is three years "if the employer knew that there was an appreciable possibility that it was covered by the Act and failed to take steps reasonably calculated to resolve the doubt." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 136 (1988). Further, the Statute of Limitations for Grievants' NYLL claims is six years. *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 682 (S.D.N.Y. 2011).

them the same amount every week, which the Company calculated based on the Grievants' hourly rates multiplied by forty hours in a given week. Indeed, the evidence produced by the Grievants made it clear that the Beverage Works never paid any delivery drivers overtime hours for the entirety of their employment with the Company.

The Beverage Works does not dispute this. Instead, the Beverage Works bases its <u>entire</u> argument of denying Grievants their overtime pay on the Collective Bargaining Agreement ("CBA"). This argument that the Grievants contracted out of their FLSA protections is inherently flawed, as this dispute is not brought by the Grievants alleging violations of the CBA, but rather whether the Company's pay practices violated the FLSA. Indeed, the law is clear that wage violation disputes may be determined by arbitration, but the law is equally well-settled, long-held law that "FLSA rights cannot be abridged by contract or otherwise waived because it would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotations omitted); *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 707 (1945).

Equally resolved is that an employer may not set a policy to prevent unauthorized overtime hours and then intentionally refuse to pay overtime rates in reliance on that policy. Rather, when an employer knows or has reason to know that overtime hours are being worked, it cannot stand idly by and then refuse to pay its employees the statutorily-required rates. *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Rather, it must take all measures available to prevent the unwanted overtime work. *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008). The testimony by all parties and the documentary evidence produced shows that the Beverage Workers either knew, or reasonably should have known that the delivery drivers' routes were taking longer than eight hours in a day.

In efforts to minimize its liability, the Beverage Works attempts to fall back on the argument that Grievants never in fact worked any overtime hours. Grievants, however, meet their burden to draw a reasonable inference that they worked more than forty hours in a given week. Indeed, it is well-settled law that Grievants' estimates of their work hours based on their recollection **alone** is enough to shift the burden to the Company to show that it did in fact pay the Grievants for all hours

worked at applicable rates. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (collecting cases). As previously stated and further explained below, Grievants produced evidence to support their testimony that the Company gave them manifests with well over forty stops and produced "recap receipts" that show that they worked well past 6:00 p.m.

Accordingly, the burden clearly shifts to the Beverage Works, which has done absolutely nothing to rebut the Grievants' proof. Indeed, the Beverage Works glaringly failed to produce **ANY** documents whatsoever to support its supervisors' testimony that the delivery drivers "rarely" worked more than eight hours in a day. Undoubtedly, if these documents corroborated the testimony of the Beverage Works's supervisors, the Grievants' testimony would have been completely debunked. Obviously, the Beverage Works decided not to produce these documents because they supported the Grievants' testimony. The fact that the Beverage Works chose not to address this glaring hole in its argument both at arbitration and in its closing brief speaks volumes. Hiding its head in the sand does not make this evidentiary problem disappear.

Therefore, the Grievants should succeed in their arbitration dispute.

**ARGUMENT**

I.    **THE BEVERAGE WORKS WILLFULLY FAILED TO PAY GREIVANTS OVERTIME RATES FOR ALL OVERTIME HOURS WORKS IN VIOLATION OF FEDERAL AND STATE WAGE LAWS.**

    A.    **The Law is Well-Established that Employers Cannot Contract Workers Out of Overtime Pay.**

The Beverage Works's argument that the Grievants were denied overtime on the basis that they were part of a CBA that designated them as salaried workers fails on account of well-settled federal case law. Indeed, the Supreme Court's decisions "interpreting the FLSA have frequently emphasized the <u>nonwaivable</u> nature of an individual employee's right to a minimum wage and to overtime pay under the [FLSA]." *Barrentine*, 450 U.S. at 740 (emphasis added). Courts have interpreted the NYLL the same way. *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010). Furthermore, it is well-settled that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative

3

polices it was designed to effectuate." *Barrentine*, 450 U.S. at 740 (collecting cases). Significantly, the Supreme Court also has held that "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740-41 (collecting cases).

Yet, notwithstanding that the law is clear on its face; the Beverage Works bases its entire argument in support of compensating Grievants as salaried workers on the Union's CBA. Indeed, the Beverage Works produced the Union's collective bargaining agreement that detailed the Beverage Works's description of delivery drivers as salaried workers, and asked each Grievant to verify whether they did in fact sign the Beverage Work's handbook and whether they were a member of the Union. But regardless of whether they did, again, the law is clear on this issue, as the Supreme Court has repeatedly held that employers cannot contract employees out of statutorily-required overtime pay because it would nullify the entire purpose of law. Therefore, the CBA has no bearing as to whether the Beverage Works properly compensated the Grievants in this matter.

## II.    THE BEVERAGE WORKS KNOWLEDGE OF THE GRIEVANTS OVERTIME HOURS REQUIRES IT TO PAY OVERTIME COMPENSATION REGARDLESS OF ANY POLICY TO THE CONTRARY.

An employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work. *Chao*, 514 F.3d at 287. Crucially, "[a]n employer who has knowledge that an employee is working, and who does not desire the work be to done, has a duty to make every effort to prevent its performance. *Id*; *see Forrester*, 646 F.2d at 414 ("An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation . . ."). Moreover, "[t]his duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours. *Chao*, 514 F.3d at 288.

Significantly, "[t]*he mere promulgation of a rule against [overtime] work is not enough.*" *Id.* (emphasis in original). Indeed, "[i]t has long been established that the purpose of the [FLSA] cannot be frustrated by an employer's instructions or even a contract not to work overtime." *Id.* (citing *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966)). The Supreme Court has explicitly rejected

4

the argument that an employer may avoid its obligations under the FLSA upon "proof that its employees voluntarily engage in inadequately compensated work." *Id.* (citing *Tony & Susan Alamo Found.*, 471 U.S. 290, 302 (1985); *see Reich v. Dep't of Conservation & Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994) ("[t]he reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted."). Furthermore, the law requires the employer "to adopt all possible measures to [prevent unwanted overtime work]." *Chao*, 514 F.3d at 291 (citing 28 C.F.R. § 785.13).

In the present matter, the Beverage Works points to the CBA in an attempt to justify its non-compliance with the wage laws. Specifically, the Beverage Works argues that the language in the CBA requires the delivery drivers to contact their supervisors when their routes were expected to run longer than eight hours in a day. The Beverage Works endeavors to use this language as a shield to insulate itself from liability. But this ignores the duty it has to prevent its employees from working overtime hours should it not want to pay overtime rates.

At the hearing, it was made abundantly clear that the Beverage Works either knew or had reason to know that its delivery drivers were working more than eight hours each day, and therefore more than forty hours in a workweek. First, the Grievants provided payment recaps that showed their arrival time to the warehouse post-route was well after 6:00 p.m., evidence that Beverage Works failed to refute with documentary evidence of its own. As explained in more detail below, the fact that the Beverage Works testified that it still maintained the same procedure and could produce payment recaps for each driver, but then declined to produce such evidence, makes the reason for this failure all too obvious.

Second, the Grievants independently provided testimony of their attempts to call supervisors when their routes were clearly going well beyond their anticipated schedule, only to receive encouragement to finish the shifts, or not being able to get through to a supervisor at all. Both the Grievants and the Beverage Works's witnesses even testified to a whole procedure of "pushing" stops and occasionally using "swing drivers" when routes were taking too long. The testimony also showed that Grievants faced discipline if they "pushed" too often. Therefore, the Beverage Works undoubtedly knew that its drivers' routes were taking longer than eight hours to complete; yet, it

ostensibly had no policy in place to prevent the delivery drivers from working more than forty hours in a workweek.

Lastly, the Beverage Works attempts to hang its hat on its CBA language that states that it is the delivery driver's "responsibility to request **in writing** to his supervisor that his stops be adjusted" if the driver finds his stop load is too heavy or light. Essentially, the Beverage Works creates an extra obstacle for workers to be lawfully compensated for their overtime work and also acknowledges that shifts might in fact take longer than eight hours. Indeed, the Beverage Works continues to rely on contract principles to excuse itself from the law. There could not be a better example of an employer attempting to minimize its labor costs in an effort to maximize its profits than language such as this. Unequivocally, this is the very practice that the federal and state wage laws have long held impermissible and contrary to the legislative intent.

## III. GREIVANTS CLEARLY ESTABLISHED THAT THEY WORKED WELL IN EXCESS OF FORTY HOURS ON A WEEKLY BASIS.

### A. Grievants Supported Their Testimony with Documentary Evidence Corroborating Their Work Hours.

In order to be compensated for unpaid overtime under the FLSA, an employee must "present sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362. Significantly, "an employee's burden in this regard is not high." *Id.* Indeed, "it is well-settled among the district courts of [the Second] Circuit, and [the Second Circuit] agree[s], that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Id.* (collecting cases). To meet their burden the employees must only provide "at least some credible evidence that plaintiff performed overtime work." *Daniels v. 1710 Realty LLC*, 497 Fed. Appx. 137, 139 (2d Cir. 2012).

At the hearing, the Grievants did much more than this, providing corroborating independent testimony that they worked from approximately 6:00 a.m. until anywhere from 5:30 p.m. until 6:30 p.m. on a routine basis. The Grievants provided manifests that detailed their daily stops throughout a particular New York City borough, one comprising of sixty-two stops, more than double the average of the number of stops that the Beverage Works supervisors testified constitutes an average

manifest. In order to complete their routes, the Grievants either had to use their phones for GPS or had to complete their routes based on familiarity with the entire borough, as the Company's trucks were not equipped with GPS navigation. At each of these stops, the Grievant was required to complete the transaction by unloading and carrying the product into each location. Indeed, sometimes the vendor would tell the delivery driver that the location was not ready for the delivery, at which point the delivery driver would have to return at a later time.

Not only did the Grievants provide their testimony about their estimated workday based upon their consistent recollections, but they were able to provide documentary evidence that supported the veracity of their testimony. Specifically, the Grievants provided recap receipts from Beverage Works's handheld devices that showed their arrival times to the warehouse upon completion of their routes. These recap receipts showed arrival times ranging from approximately 5:00 p.m. until 6:30 p.m., supported by testimony that these recap receipts were timestamped to show their arrival to the warehouse post-route, preceding approximately thirty minutes of warehouse duties before the delivery drivers finished their work for the day.

Moreover, the Beverage Works's own documentation supports the Grievants' allegations that they started their work day at approximately 6:00 a.m. every morning from Monday through Friday. Indeed, the Beverage Works produced a disciplinary warning issued to Grievant Darnell Brunston for failure to arrive to work by 6:00 a.m. This supports the Grievants' testimony that they started their day by 6:00 a.m., as the Beverage Works policy clearly establishes that such Beverage Work's policy existed.

Additionally, the Beverage Works witnesses *conceded* that the Grievants produced credible evidence that showed that they all worked well in excess of the eight hour work days that the Beverage Works's routes were designed for. Indeed, Mr. Valentin, the Beverage Works supervisor, studied the recap receipts produced by the Grievants, explained what they were, testified that they used the same method to this day, acknowledged the timestamp that showed an arrival time to the warehouse post-route to be 6:28 p.m., and simply stated that such a long work day was "rare." But the Beverage Works could have easily shown that such long work days were in fact rare by producing the payment recaps in their possession. Regardless, what cannot be argued is that

7

Grievants have produced credible evidence that they worked overtime hours for which they were not compensated.

Grievants' testimony, supported by the documentary evidence, undoubtedly meets their lenient evidentiary burden required by the FLSA to create a "just and reasonable inference" that they worked more than forty hours in a given week, and routinely worked approximately sixty to sixty-five hours each week.

B.    **The Beverage Works's Failure to Support Its Testimony with Any Documentary Evidence Clearly Exposes Its Lack of Credibility.**

The Beverages Works failed to meet its burden to negate the reasonable inference that the Grievants did in fact work more than forty hours on a weekly basis. When an employee has met its burden as explained above, "[t]he burden then shifts to the employer to come forward with evidence of the **precise** amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Kuebel*, 643 F.3d at 361 (emphasis added). Moreover, "where the employer's records are inaccurate or inadequate . . . the solution is not to penalize the employee by denying him recovery on that ground that he is unable to prove the precise extent of uncompensated work." *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997). Critically, "[s]uch a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty." *Id.*

Under the NYLL, there is an even more demanding standard than the FLSA. NYLL § 196-a provides that where an employer fails "to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." NYLL § 196-a; *see Kalloo v. Unlimited Mechanical Co. of NY, Inc.*, 977 F. Supp. 2d 187, 200 (E.D.N.Y. 2013).

Here, it is undisputed that the Beverage Works failed to record the delivery drivers' hours by any means appropriate under the federal and state law. Although the Beverage Works supervisors testified they never "observed" their delivery drivers routinely work more than forty hours in a given week, this is not a "reliable system to accurately track all overtime hours worked by plaintiffs." *Kalloo*, 977 F. Supp. 2d at 206. Indeed, this does not come close to the mark set by the law

8

requiring the employer to produce the precise amount of work performed or provide evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

Without question, the Beverage Works could have supported its supervisors' testimony that the delivery drivers routinely ended their routes anywhere from 1:00 p.m. through 2:00 p.m. on a given work day and put this dispute to rest. Indeed, the Beverage Works's supervisors testified that they followed the same procedure for the six-year period preceding this lawsuit, which constitutes the relevant time applicable for purposes of this dispute. Each delivery driver produces a payment receipt that is timestamped with their arrival time to the Beverage Works warehouse post-route. It seems all too obvious that if the supervisors' testimony was to be believed, the Company could easily produce many, many recap receipts corroborating the return times that the supervisors claimed were the actual return times. They produced none of them.

Mysteriously, the Beverage Works was able to produce many irrelevant documents pertaining to the six delivery drivers that are part of this arbitration procedure. Indeed, the Beverage Works was quick to produce multiple disciplinary action notices issued to Mr. Brunston over his nine year employment period with the Beverage Works, one that warned him for arriving to work later than 6:00 a.m. Why then, did it choose not to produce the only evidence relevant to this matter? Evidence that if produced and consistent with the Company's supervisors' testimony would have completely discredited the Grievants' contentions that they routinely worked until approximately 6:00 p.m. to 6:30 p.m. and completely destroyed their case.

Even more absurd is the notion that Grievants, some employed by Beverage Works more than two years ago, are the only parties able to produce the relevant documents that accurately reflected the time that the delivery drivers returned to the Beverage Works's warehouse. Instead, the Beverage Works produced cookie-cutter, self-serving affidavits from current employees notarized by none other than Vice President of Operations, Jeffrey Brown, himself, all stating the exact same thing: "I always finish my route in 8 hours or less and I am fully aware that I should contact Rick Valentin if I feel my route could not be completed in 8 hours." Give us all a break.

Most importantly, this is the exact type of argument that the law has routinely held to fail to meet the employer's burden. Indeed, the Beverage Works's approach did next to nothing to "negative the

reasonable inference" drawn from the Grievants' evidence that they worked hours well exceeding forty in a given workweek. Furthermore, the Beverage Works made no argument whatsoever that it kept any records, much less *precise* records, of the Grievants' hours worked. Accordingly, although the Beverage Works was tasked with a burden to show that the delivery drivers did not work more than forty hours in a week, its attempt to do so blatantly fell flat.

## IV.    THE GRIEVANTS ARE ENTITLED TO ACTUAL AND LIQUIDATED DAMAGES

The Grievants each submitted damage calculations into evidence to support their allegations. Under the FLSA, a plaintiff is entitled to liquidated damages in the amount of 100% the actual damages owed. 29 U.S.C. § 216(b). Under this provision, "a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008).

Additionally, a plaintiff can recover liquidated damages in the amount of 100% of his/her actual damages for all claims after April 9, 2011. *See* NYLL §§ 198(1-a), 663(1). Furthermore, ever since November 24, 2009, under the NYLL, the employer must pay liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL §§ 198, 663. Significantly, the majority of district courts within the Second Circuit recognize that a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same time period. *See, e.g., Suggs v. Crosslands Transp., Inc.*, 2015 WL 1443221, at *9 (E.D.N.Y. Mar. 27, 2015); *Hernandez v. Prof'l Maint. & Cleaning Contractors Inc.*, 2015 WL 128020, at *6 (E.D.N.Y. Jan. 8, 2015); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593-94 (S.D.N.Y. 2012).

Therefore, in the present matter, the Grievants should recover for their actual damages, liquidated damages under the FLSA, and liquidated damages under the NYLL.

******************THIS SPACE IS LEFT INTENTIONALLY BLANK******************

## CONCLUSION

Thus, because the Grievants have met their burden of producing evidence that they worked overtime hours and it is undisputed that the Beverage Works failed to properly compensate them, it is respectfully requested that the arbitrator enter an award in the Grievants' favor.

Dated:    Great Neck, New York
          July 2, 2015

Respectfully submitted,

Jeffrey R. Maguire
Alexander T. Coleman
Michael J. Borrelli
BORRELLI & ASSOCIATES, P.L.L.C
*Attorneys for Plaintiffs*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550

11

# EXHIBIT

# C

\*   \*   \*   \*   \*   \*   \*   \*

                    \*

In the Matter of the Arbitration   \*

     Between                  \*

Edwin Pacheco,               \*

       Grievant             \*

                    \*

     And                   \*

                    \*

The Beverage Works NY, Inc.,   \*

and Ricardo Valentin,        \*

       Employer,         \*

\*   \*   \*   \*   \*   \*   \*   \*   \*

BEFORE: Wellington J. Davis, Jr. Panel Arbitrator

APPEARANCES:

     For the Company:  Susan Burns, Esq.

                         Ricardo Valentin

                         Amaury Peralta

                         Jeffery C. Brown

                         Christopher Ustich

                         Stephen DiMario

     For the Grievants:  Jeffrey Maguire, Esq.

                         Jonathan Hill

2

Edwin Pacheco

Efrain Rodriquez

Nicholas V. Jones

Ricardo Valentin

Place of Hearing:    Newark, NJ

Dates of Hearing:    May 6, 2015

Date of Award:        July 19, 2015

As the panel arbitrator for the Beverage Works the undersigned was designated by the parties to hear and determine the following issue:

> "Was the overtime allegedly worked by the grievant "suffered or permitted" within the meaning of the collective bargaining agreement or applicable regulations? If so what shall the remedy be?"

A hearing was held on May 6, 2015 in the offices of the New Jersey State Board of Mediation located at Two gateway Center Newark, NJ. At this time the parties were afforded full opportunity to present witnesses, documentary evidence and oral arguments in support of their respective positions. The parties requested to submit closing briefs on the other Grievants and upon receipt of same the hearings were closed on June 26, 2015.

## GRIEVANT'S POSITION

The position of the grievant was expressed in the Post Arbitration Brief dated July 2, 2015:

The Grievants, Edwin Pacheco, Jonathan Hill, Samuel Soto, Efrain Rodriguez, Lenny Reyes and Darnell Brunston ("Grievants"), by and through their attorneys, submit this legal brief as a closing statement in support of their arguments made during arbitration concerning violations of the Fair Labor Standards Act ("FLSA") and the New York Labor

3

Law ("NYLL"). The Grievants, former delivery drivers belonging to Local 713, IBOTU, IUJAT Union ("Union"), bring this action against Beverage Works, Inc. ("the Beverage Works" or "the Company"), alleging that the Company failed to pay its delivery drivers statutorily-required overtime pay for all hours worked exceeding forty in a given workweek.

During the course of the two-day arbitration, the Grievants each provided independent testimony that they worked as delivery drivers for some length of time during the applicable six year limitations period preceding the filing of the instant action.[1] Although their duration of employment varied, their testimony showed that essentially every other detail of their employment with the Beverage Works was nearly identical. As delivery drivers, each Grievant worked five days per week for approximately twelve hours a day, totaling approximately sixty to sixty-five hours per week. Their daily routines each consisted of arriving at the Company's warehouse before 6:00 a.m., receiving a manifest that listed the location and address of each stop that they needed to make that day, carrying out the delivery of Red Bull to each vendor, and then returning to the warehouse upon completion of their routes. Grievants supported their testimony with documents reflecting that they indeed returned to the Company's warehouse at the end of their routes anywhere from around 5:00 p.m. until 6:30 p.m. The Grievants' testimony about the commencement time of their work day was supported by the Beverage Works' documents that showed warnings issued for failure to be at the warehouse by 6:00 a.m. Grievants further testified and produced documentary evidence that the Company paid them the same amount every week, which the Company calculated based on the Grievants' hourly rates multiplied by forty hours in a given week. Indeed, the evidence produced by the Grievants made it clear

---

[1] The Beverage Works argues that some Grievants are "barred by the two year Statute of Limitations under the FLSA." This is not true. Under the FLSA, the applicable Statute of Limitations is three years "if the employer knew that there was an appreciable possibility that it was covered by the Act and failed to take steps reasonably calculated to resolve the doubt." *McLaughlin v. Richland Shoe Co,*.486 U.S. 128, 136 (1988). Further, the Statute of Limitations for Grievants' NYLL claims is six years. *Pineda v. Masonry Const., Inc.,* 831 F. Supp. 2d 666, 682 (S.D.N.Y. 2011)

4

that the Beverage Works never paid any delivery drivers overtime hours for the entirety of their employment with the Company.

The Beverage Works does not dispute this. Instead, the Beverage Works bases its entire argument of denying Grievants their overtime pay on the Collective Bargaining Agreement ("CBA"). This argument that the Grievants contracted out of their FLSA protections is inherently flawed, as this dispute is not brought by the Grievants alleging violations of the CBA, but rather whether the Company's pay practices violated the FLSA. Indeed, the law is clear that wage violation disputes may be determined by arbitration, but the law is equally well-settled, long-held law that "FLSA rights cannot be abridged by contract or otherwise waived because it would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine* v. *Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981) (internal quotations omitted); *Brooklyn Savings Bank v. O'Neill,* 324 U.S. 697,707 (1945).

Equally resolved is that an employer may not set a policy to prevent unauthorized overtime ours and then intentionally refuse to pay overtime rates in reliance on that policy. Rather, when an employer knows or has reason to know that overtime hours are being worked, it cannot stand idly by and then refuse to pay its employees the statutorily-required rates. *Forrester* v. *Roth's 1. G. A. Foodliner, Inc.,* 646 F.2d 413,414 (9th Cir. 1981). Rather, it must take all measures available to prevent the unwanted overtime work. *Chao* v. *Gotham Registry, Inc.,* 514 F.3d 280, 291 (2d Cir. 2008). The testimony by all parties and the documentary evidence produced shows that the Beverage Workers either knew, or reasonably should have known that the delivery Drivers' routes were taking longer than eight hours in a day.

In efforts to minimize its liability, the Beverage Works attempts to fall back on the argument that Grievants never in fact worked any overtime hours. Grievants, however, meet their burden to draw a reasonable inference that they worked more than forty hours in a given week. Indeed, it is well-settled law that Grievants' estimates of their

5

work hours based on their recollection **alone** is enough to shift the burden to the Company to show that it did in fact pay the Grievants for all hours worked at applicable rates. *Kuebel* v. *Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (collecting cases). As previously stated and further explained below, Grievants produced evidence to support their testimony that the Company gave them manifests with well over forty stops and produced "recap receipts" that show that they worked well past 6:00 p.m.

Accordingly, the burden clearly shifts to the Beverage Works, which has done absolutely nothing to rebut the Grievants' proof. Indeed, the Beverage Works glaringly failed to produce **ANY** documents whatsoever to support its supervisors' testimony that the delivery drivers "rarely" worked more than eight hours in a day. Undoubtedly, if these documents corroborated the testimony of the Beverage Works' supervisors, the Grievants' testimony would have been completely debunked. Obviously, the Beverage Works decided not to produce these documents because they supported the Grievants' testimony. The fact that the Beverage Works chose not to address this glaring hole in its argument both at arbitration and in its closing brief speaks volumes. Hiding its head in the sand does not make this evidentiary problem disappear.

Therefore, the Grievants should succeed in their arbitration dispute.

## COMPANY POSITION

The Company's position was expressed in the Post arbitration brief dated June 26, 2013:

### UNDISPUTED FINDINGS OF FACT

1.    Grievants are former employees of Beverage Works.

2.    Grievants were delivery representatives (i.e., drivers).

3.    While employed at Beverage Works, Grievants were members of the Local 713, IBOTU, IUJAT Union ("Union"), which is the exclusive bargaining unit for the

6

Former Employees as well as certain other Beverage Works employees.

4. Grievants' employment was governed by a negotiated agreement between Beverage Works and the Union ("CBA or "Agreement") as well The Beverage Works' Employee Handbook ("Employee Handbook") which is explicitly incorporated into and made a part of the CBA.

5. The CBA was "bargained collectively" and is mutually agreed "upon terms and conditions of employment under which the ... employees shall work."

6. The CBA "recognize[s] the unique position of the sales and delivery representative and its independence in performing its responsibilities." The CBA provides that sales and delivery representatives are salaried employees and that they shall be paid for completing their assigned route, which route is designed to be completed in an eight (8) hour day.

7. The minimum starting salary for a delivery representative is $25,000.00 and drivers also receive a bonus based upon the amount of product they deliver. (CBA and testimony of Jeffrey Brown)

8. The CBA further requires that if a route is taking more or less time to complete, "the employee will notify his supervisor and the supervisor, upon confirming the length of time will adjust the route up or down to ensure the route can be completed in eight (8) hours."

9. In addition, the CBA specifically incorporates the Employee Handbook into the CBA. The Handbook specifically requires drivers to notify Beverage Works **in writing** if his or her route takes more than eight (8) hours a day to complete.

10. Grievants' acknowledged receipt of the Employee Handbook in writing. (Grievants' testimony)

11. None of the Grievants' complained in writing to Beverage Works that their routes were taking more or less than eight (8) hours per day. (Grievants testimony)

12. Each Grievant admitted and that they never grieved the amount of time it took to complete their route or the compensation they received through their Union. (Grievants' testimony)

13. The Union has never brought an action alleging the Grievants were working

7

more than forty hours a week or were not compensated for all hours worked. (Undisputed Testimony of Beverage Works)

14. Chris Ustick, the Vice President of Sales, attended monthly meetings with the Union and the issue of drivers working in excess of eight (8) hours per day was never raised by the Union. (Undisputed testimony of Chris Ustick)

15. Mr. DiMario was initially employed as a driver and always completed his route within eight (8) hours, often completing forty to fifty stops on any given day. (Unrefuted testimony of Mr. DiMario)

16. Beverage Works has a sophisticated computer system which delivery stops are inputted into and a route is formulated. The list of stops appear in the suggested order that the deliveries should be completed as it is the most geographically efficient. However drivers are free to deviate if they believe that there is a more efficient manner of completing the deliveries. (Unrefuted testimony of Ricardo Valentin)

17. Beverage Works receives orders for products from its sales force on a daily basis. Each day after the orders are entered, an individualized route is designed for each driver. Drivers are given deliveries in their assigned area. (Unrefuted testimony of Steve DiMario, Ricardo Valentin and Amaury Peralta)

18. Each route is designed on an individual basis taking into account a variety of considerations such as anticipated traffic conditions, type of entities the deliveries are going to, and is designed to be completed in eight (8) hours. (Unrefuted testimony of Jeffrey Brown, Steve DiMario, Ricardo Valentin and Amaury Peralta)

19. Each and every day the Beverage Works Operations Manager reviews the orders for a specific area and adjust routes up or down to insure that they can be completed in eight (8) hours. (Unrefuted testimony of Steve DiMario, Ricardo Valentin and Amaury Peralta)

20. On heavier days Beverage Works utilizes swing drivers to lighten routes and also assigns some drivers helpers to ensure that everyone works an eight (8) hour day. (Unrefuted testimony of Steve DiMario and Ricardo Valentin)

21. Beverage Works did not dictate the amount of time that Grievants could take for breaks, preclude stops by the Grievants for personal business, or monitor any deviations from completing the work during the course of the day. (Beverage Works representation and Grievants' testimony)

8

22. Each of the drivers that currently perform the routes held by the Grievants have given a sworn Affidavit stating that the route does not take more than eight (8) hours per day and he is aware that if there is a problem with the route, he is to report it to his supervisor. (Affidavits)

23. Grievant Hill complained that his route was too light. (Unrefuted testimony of Steve DiMario and Mr. Hill)

24. The time period in which Beverage Works sought to have Grievants back was approximately 1:00 p.m. (Unrefuted testimony of Steve DiMario)

25. It would be problematic if beverage Works drivers were coming back at 4:00 and 5:00 in the afternoon, because it would negatively impact on the next day. The goal is to have drivers back by 1:00 p.m. to start getting ready for the next day's deliveries. Beverage Works would want to see what deliveries were not completed (pushed) and needed to be re-routed the next day. The Operations Manager would want to begin formulating the routes based upon the current orders and the pushed deliveries. In addition, Beverage Works would want to begin unloading and loading the trucks for the next day. (Unrefuted testimony of Ricardo Valentin and Steve DiMario)

All of the foregoing is undisputed on this record. Here there is no question that Beverage Works NY, Inc., fully complied with the express and negotiated terms of the Collective Bargaining Agreement ("CBA") and has fully compensated each of the Grievants in accordance with the provisions of the Collective Bargaining Agreement and all applicable laws.

DISCUSSION AND AWARD

As the moving party the burden of proof is on the grievant to satisfy the undersigned that Edwin Pacheco is entitled to the $153,427.00[2] in unpaid overtime and liquidated damages as claimed. In the opinion of the undersigned this burden has not been met. His basic contention was that from April 30, 2012 until January 2014 he worked at least 12 hours a day. This testimony was found to be incredible. That an employee working in a union environment who by his own testimony was hired to work at the most 40 hours

---

[2] Statement of Damages Edwin Pacheco

9

a week for a specific amount of money would just accept these ridiculous working hours (67.5) as a given is hard to swallow.

Mr. Pacheco testified that he joined the Company April 30, 2012 as a salaried worker and he was informed he would be working as a delivery person. He produced some manifests (3) containing at the most 43 stops but insisted he was regularly assigned up to 50 stops. He stated that he was told the routes were designed to be completed within eight hours. When asked, "Did shifts ever take 8 hours?" he responded no. When asked, "Did shifts commonly take more than eight hours?" he responded yes.

He claimed that when he called his supervisor to report his route was going to extend past 8 hours, he was ordered to complete his run or in some cases couldn't even reach a supervisor. Needless to say when asked by his counsel "How many times was your itinerary actually adjusted by Beverage Works?" he responded, "Not too much." When his counsel suggested, "Did it never happen?" he replied, "No." When asked, "Did it happen once?" he responded "…it varied." Yet without hesitation he testified that he finished between 6:00 and 7:00 pm every day racking up 60 to 75 hours per week. Clearly this testimony is contradictory and impugns his credibility.

Under cross examination he claimed he complained to the shop steward as well as at the biweekly meetings but to no avail. In other words although hired to work 40 hours per week in a union protected job he claims to have worked up to almost twice the hours for the same weekly salary. It does not make sense and if it doesn't make sense it is not true.

Mr. Pacheco did not contract away his right to overtime but rather accepted a position identified in the cba as salaried. There was no evidence or testimony offered to suggest that salaried employees cannot be covered by a collective bargaining agreement.

The grievant's representative suggests that a Company "cannot stand idly by…"[3] and ", it must take all measures available to prevent the unwanted overtime work."[4] Clearly

---

[3] Grievants' Post Arbitration Brief pg 2

10

the Company did not stand idly by and in fact required employees to put in writing if a route took too long[5] but that was clearly a CYA. As a point of fact through credible testimony of several Company witnesses the process of adjusting routes to be completed within 8 hours was explained with the recognition that it was in the Company's best interest to have the drivers back by 2:00pm and that in many cases they came in as early as 12:30pm. Any adjustments required were effected the next day.

Christopher Ustich, Vice President, testified that the Company did not closely monitor the drivers on their routes to determine how much personal time is taken including breaks and lunch and as a result depended on driver feedback to insure the routes were finished within 8 hours. He indicated that in his position he attended meetings at least bimonthly with the Union and problems with route completion within the allotted time were never raised. He pointed out that the Company has a complaint box and he has an open door policy in addition to attending driver and team meetings on a regular basis any of which could be used to challenge route length. According to him prior to this law suit there had been no unresolved issues with excessive route stops.

Steven DiMario, Operations Director, an eleven year employee of the Company, testified that he formulated the routes on a daily basis from 2011 - 2013. He explained that they were formulated on an individual basis using various factors such as case load, stop amount and driver efficiency. He credibly testified that as issues were raised he would adjust the routes the next day. He described how on occasion he would lighten a route for vacation or personal reasons. He remembers adjusting Mr. Pacheco's route on at least one occasion at the behest of another supervisor. He indicated that the Company employed swing drivers and helpers to assist the regular drivers who were experiencing difficulty.

He mentioned that he had occasion to attend drivers meeting but never encountered any hue and cry over route completion. When issues were raised the routes were tweaked before the next day. He confirmed that the Company did not monitor the

---

[4] Grievant's Post arbitration Brief pg 2
[5] Pg 16 Beverage Works Handbook dated 2011

11

drivers. He added that when he was in Brooklyn he physically observed most drivers were back by 2:00pm and it was not unusual on a Monday that most were back by 12:30pm.

Jeff Brown, V.P. Operations, testified that he has been with the Company for 13 years and started out as a Driver receiving a salary. When asked did he complete his routes in 8 hours he responded, "No.. 6 hours." He rebutted the suggestion of the grievant's attorney that the language in the Employee Handbook[6] regarding overtime applied to the drivers and confirmed that it only applied to hourly employees. He confirmed the responsibility of the driver to report route problems in order to have the routes finished within 8 hours. He indicated that the new UPS program utilized by the Company is extremely efficient in setting up routes.

Amaury Peralta, Sales Manager, and Company employee for 12 years also testified that he had been a Driver/Seller before his current position and always completed his routes in 8 hours or less. He described his familiarity with the routes and added he provided daily feedback to the routers including Steve DiMario in order to tweak routes when required. He indicated that he followed up with whoever brought the issue to his attention. He credibly testified that when contacted by a driver he would review the stops and advise him accordingly. He might indicate which stops to complete and or push for delivery next day. He indicated that the divers for the most part would return between 1 and 2pm.

He recounted occasions during the driver meetings when the issue of route length was raised. He claimed to have met with the driver after to discuss the issue and coordinated with Steve or the individual routing and tweak it immediately. Occasionally a helper would be provided which would allow delivery in difficult parking areas (the truck could keep circling or double park) as well as help unloading cases. He rebutted the Grievants' claim that supervisors including himself were not readily available.

He specifically recalls resolving route problems with Mr. Pacheco. He coordinated with

---

[6] Beverage Works Employee Handbook IX pg 12 pg 12

12

Steve DiMario to tweak the route and followed up to insure it was resolved. He pointed out that Mr. Pacheco covered an important route in the heart of New York City. He testified that because of the importance of the route he would call him on occasion after an adjustment and ask," How you looking today?" Because of the import of the route he would do what was necessary to get it done to include personally pitching on his own. This testimony went unrebutted.

The final witness for the Company was Ricardo Valentin, Operations Manager. He indicated that prior to taking that position had been employed as a driver and completed his rotes in 8 hours or less. He stated the Company now used a sophisticated routing program developed by UPS but this did not result in any major differences in route compilation. The factors used paralleled the other Operations Manager in that he took into consideration traffic, accounts and the driver. He confirmed all previous testimony that route concerns were addressed immediately when possible and no later than the next day if necessary. The Company through this witness offered into evidence affidavits of the current drivers performing the grievant's route. The affidavits were accepted "For what they are worth.", after the Best Evidence objection of the Grievant's counsel.  As a point of fact the undersigned gave little consideration to these documents in that several of the Company's earlier witnesses including Mr. Peralta established that they had completed their routes in 8 hours or less.

After weighing all the evidence and testimony the undersigned finds that the Grievant did not meet the burden of proof that he worked approximately 25 to 30 hours per week for his entire employment at the Company. There was unrebutted testimony that Mr. Pacheco's route was adjusted on at least two occasions. There was also unrebutted testimony that Monday was "light day" and most drivers were in by 12:30pm

It does not make sense that a prudent person working in a union environment paying union dues[7] would agree to work 60 to 70 hours per week for the same amount paid for 40 hours per week. If it doesn't make sense it is not true. The Company had a system in place worked for the Company official that had been drivers. In the instant grievance

---

[7] Gr 3 Union deduction $267.63

13

although claiming to have worked every single day to 6:00 or 7:00pm the Company offered unrebutted testimony that he had his route tweaked at least twice and because it was important received extra attention from the Company. The testimony of the grievant is totally unreliable.

For the above mentioned reasons this grievance is denied in its entirety.

Wellington J. Davis, Jr.

On this 25th day of July 2015,

before me personally appeared Wellington J. Davis, Jr. known to

be the individual described in and who executed the foregoing instrument, and he

acknowledged to me that he/she executed same

STATE OF NEW JERSEY

COUNTY OF MONMOUTH

SIGNATURE OF NOTARY Patricia Davis

PATRICIA DAVIS
ID # 2286732
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires April 18, 2017

MY COMMISION EXPIRES

# EXHIBIT

# D

\*   \*   \*   \*   \*   \*   \*   \*

                       \*

In the Matter of the Arbitration    \*

       Between              \*

Darnell Brunston,            \*

        Grievant          \*

                       \*

     And               \*

                       \*

The Beverage Works NY, Inc.,   \*

and Ricardo Valentin,       \*

       Employer,        \*

\*   \*   \*   \*   \*   \*   \*   \*   \*

BEFORE: Wellington J. Davis, Jr. Panel Arbitrator

APPEARANCES:

    For the Company:  Susan Burns, Esq.

                         Ricardo Valentin

                         Amaury Peralta

                         Jeffery C. Brown

                         Christopher Ustich

                         Stephen DiMario

    For the Grievants:  Jeffrey Maguire, Esq.

                         Jonathan Hill

2

Edwin Pacheco

Efrain Rodriquez

Nicholas V. Jones

Ricardo Valentin

Place of Hearing:   Newark, NJ

Dates of Hearing:   May 7, 2015

Date of Award:      July 23, 2015

As the panel arbitrator for the Beverage Works the undersigned was designated by the parties to hear and determine the following issue:

"Was the overtime allegedly worked by the grievant "suffered or permitted" within the meaning of the collective bargaining agreement or applicable regulations? If so what shall the remedy be?"

A hearing was held on March 7, 2015 in the offices of the New Jersey State Board of Mediation located at Two gateway Center Newark, NJ. At this time the parties were afforded full opportunity to present witnesses, documentary evidence and oral arguments in support of their respective positions. The parties requested to submit closing briefs on the other Grievants and upon receipt of same the hearings were closed on June 26, 2015.

## GRIEVANT'S POSITION

The position of the grievant was expressed in the Post Arbitration Brief dated July 2, 2015:

The Grievants, Edwin Pacheco, Jonathan Hill, Samuel Soto, Efrain Rodriguez, Lenny Reyes and Darnell Brunston ("Grievants"), by and through their attorneys, submit this legal brief as a closing statement in support of their arguments made during arbitration concerning violations of the Fair Labor Standards Act ("FLSA") and the New York Labor

Law ("NYLL"). The Grievants, former delivery drivers belonging to Local 713, IBOTU, IUJAT Union ("Union"), bring this action against Beverage Works, Inc. ("the Beverage Works" or "the Company"), alleging that the Company failed to pay its delivery drivers statutorily-required overtime pay for all hours worked exceeding forty in a given workweek.

During the course of the two-day arbitration, the Grievants each provided independent testimony that they worked as delivery drivers for some length of time during the applicable six year limitations period preceding the filing of the instant action.[1] Although their duration of employment varied, their testimony showed that essentially every other detail of their employment with the Beverage Works was nearly identical. As delivery drivers, each Grievant worked five days per week for approximately twelve hours a day, totaling approximately sixty to sixty-five hours per week. Their daily routines each consisted of arriving at the Company's warehouse before 6:00 a.m., receiving a manifest that listed the location and address of each stop that they needed to make that day, carrying out the delivery of Red Bull to each vendor, and then returning to the warehouse upon completion of their routes. Grievants supported their testimony with documents reflecting that they indeed returned to the Company's warehouse at the end of their routes anywhere from around 5:00 p.m. unti16:30 p.m. The Grievants' testimony about the commencement time of their work day was supported by the Beverage Works' documents that showed warnings issued for failure to be at the warehouse by 6:00 a.m. Grievants further testified and produced documentary evidence that the Company paid them the same amount every week, which the Company calculated based on the Grievants' hourly rates multiplied by forty hours in a given week. Indeed, the evidence produced by the Grievants made it clear

---

[1] The Beverage Works argues that some Grievants are "barred by the two year Statute of Limitations under the FLSA." This is not true. Under the FLSA, the applicable Statute of Limitations is three years "if the employer knew that there was an appreciable possibility that it was covered by the Act and failed to take steps reasonably calculated to resolve the doubt." *McLaughlin v. Richland Shoe Co,.*486 U.S. 128, 136 (1988). Further, the Statute of Limitations for Grievants' NYLL claims is six years. *Pineda v. Masonry Const., Inc., 831* F. Supp. 2d 666, 682 (S.D.N.Y. 2011)

4

that the Beverage Works never paid any delivery drivers overtime hours for the entirety of their employment with the Company.

The Beverage Works does not dispute this. Instead, the Beverage Works bases its _entire_ argument of denying Grievants their overtime pay on the Collective Bargaining Agreement ("CBA"). This argument that the Grievants contracted out of their FLSA protections is inherently flawed, as this dispute is not brought by the Grievants alleging violations of the CBA, but rather whether the Company's pay practices violated the FLSA. Indeed, the law is clear that wage violation disputes may be determined by arbitration, but the law is equally well-settled, long-held law that "FLSA rights cannot be abridged by contract or otherwise waived because it would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." _Barrentine_ v. _Arkansas-Best Freight Sys., Inc.,_ 450 U.S. 728, 740 (1981) (internal quotations omitted); _Brooklyn Savings Bank v. O'Neill,_ 324 U.S. 697,707 (1945).

Equally resolved is that an employer may not set a policy to prevent unauthorized overtime ours and then intentionally refuse to pay overtime rates in reliance on that policy. Rather, when an employer knows or has reason to know that overtime hours are being worked, it cannot stand idly by and then refuse to pay its employees the statutorily-required rates. _Forrester_ v. _Roth's 1. G. A. Foodliner, Inc.,_ 646 F.2d 413,414 (9th Cir. 1981). Rather, it must take all measures available to prevent the unwanted overtime work. _Chao v. Gotham Registry, Inc.,_ 514 F.3d 280, 291 (2d Cir. 2008). The testimony by all parties and the documentary evidence produced shows that the Beverage Workers either knew, or reasonably should have known that the delivery Drivers' routes were taking longer than eight hours in a day.

In efforts to minimize its liability, the Beverage Works attempts to fall back on the argument that Grievants never in fact worked any overtime hours. Grievants, however, meet their burden to draw a reasonable inference that they worked more than forty hours in a given week. Indeed, it is well-settled law that Grievants' estimates of their

5

work hours based on their recollection **alone** is enough to shift the burden to the Company to show that it did in fact pay the Grievants for all hours worked at applicable rates. *Kuebel* v. *Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir. 2011) (collecting cases). As previously stated and further explained below, Grievants produced evidence to support their testimony that the Company gave them manifests with well over forty stops and produced "recap receipts" that show that they worked well past 6:00 p.m.

Accordingly, the burden clearly shifts to the Beverage Works, which has done absolutely nothing to rebut the Grievants' proof. Indeed, the Beverage Works glaringly failed to produce **ANY** documents whatsoever to support its supervisors' testimony that the delivery drivers "rarely" worked more than eight hours in a day. Undoubtedly, if these documents corroborated the testimony of the Beverage Works' supervisors, the Grievants' testimony would have been completely debunked. Obviously, the Beverage Works decided not to produce these documents because they supported the Grievants' testimony. The fact that the Beverage Works chose not to address this glaring hole in its argument both at arbitration and in its closing brief speaks volumes. Hiding its head in the sand does not make this evidentiary problem disappear.

Therefore, the Grievants should succeed in their arbitration dispute.

## COMPANY POSITION

The Company's position was expressed in the Post arbitration brief dated June 26, 2013:

### UNDISPUTED FINDINGS OF FACT

1.    Grievants are former employees of Beverage Works.

2.    Grievants were delivery representatives (i.e., drivers).

3.    While employed at Beverage Works, Grievants were members of the Local 713, IBOTU, IUJAT Union ("Union"), which is the exclusive bargaining unit for the Former Employees as well as certain other Beverage Works employees.

6

4.  Grievants' employment was governed by a negotiated agreement between Beverage Works and the Union ("CBA or "Agreement") as well The Beverage Works' Employee Handbook ("Employee Handbook") which is explicitly incorporated into and made a part of the CBA.

5.  The CBA was "bargained collectively" and is mutually agreed "upon terms and conditions of employment under which the ... employees shall work."

6.  The CBA "recognize[s] the unique position of the sales and delivery representative and its independence in performing its responsibilities." The CBA provides that sales and delivery representatives are salaried employees and that they shall be paid for completing their assigned route, which route is designed to be completed in an eight (8) hour day.

7.  The minimum starting salary for a delivery representative is $25,000.00 and drivers also receive a bonus based upon the amount of product they deliver. (CBA and testimony of Jeffrey Brown)

8.  The CBA further requires that if a route is taking more or less time to complete, "the employee will notify his supervisor and the supervisor, upon confirming the length of time will adjust the route up or down to ensure the route can be completed in eight (8) hours."

9.  In addition, the CBA specifically incorporates the Employee Handbook into the CBA. The Handbook specifically requires drivers to notify Beverage Works **in writing** if his or her route takes more than eight (8) hours a day to complete.

10. Grievants' acknowledged receipt of the Employee Handbook in writing. (Grievants' testimony)

11. None of the Grievants' complained in writing to Beverage Works that their routes were taking more or less than eight (8) hours per day. (Grievants testimony)

12. Each Grievant admitted and that they never grieved the amount of time it took to complete their route or the compensation they received through their Union. (Grievants' testimony)

13. The Union has never brought an action alleging the Grievants were working more than forty hours a week or were not compensated for all hours worked.

7

(Undisputed Testimony of Beverage Works)

14. Chris Ustick, the Vice President of Sales, attended monthly meetings with the Union and the issue of drivers working in excess of eight (8) hours per day was never raised by the Union. (Undisputed testimony of Chris Ustick)

15. Mr. DiMario was initially employed as a driver and always completed his route within eight (8) hours, often completing forty to fifty stops on any given day. (Unrefuted testimony of Mr. DiMario)

16. Beverage Works has a sophisticated computer system which delivery stops are inputted into and a route is formulated. The list of stops appear in the suggested order that the deliveries should be completed as it is the most geographically efficient. However drivers are free to deviate if they believe that there is a more efficient manner of completing the deliveries. (Unrefuted testimony of Ricardo Valentin)

17. Beverage Works receives orders for products from its sales force on a daily basis. Each day after the orders are entered, an individualized route is designed for each driver. Drivers are given deliveries in their assigned area. (Unrefuted testimony of Steve DiMario, Ricardo Valentin and Amaury Peralta)

18. Each route is designed on an individual basis taking into account a variety of considerations such as anticipated traffic conditions, type of entities the deliveries are going to, and is designed to be completed in eight (8) hours. (Unrefuted testimony of Jeffrey Brown, Steve DiMario, Ricardo Valentin and Amaury Peralta)

19. Each and every day the Beverage Works Operations Manager reviews the orders for a specific area and adjust routes up or down to insure that they can be completed in eight (8) hours. (Unrefuted testimony of Steve DiMario, Ricardo Valentin and Amaury Peralta)

20. On heavier days Beverage Works utilizes swing drivers to lighten routes and also assigns some drivers helpers to ensure that everyone works an eight (8) hour day. (Unrefuted testimony of Steve DiMario and Ricardo Valentin)

21. Beverage Works did not dictate the amount of time that Grievants could take for breaks, preclude stops by the Grievants for personal business, or monitor any deviations from completing the work during the course of the day. (Beverage Works representation and Grievants' testimony)

22. Each of the drivers that currently perform the routes held by the Grievants have

8

given a sworn Affidavit stating that the route does not take more than eight (8) hours per day and he is aware that if there is a problem with the route, he is to report it to his supervisor. (Affidavits)

23. Grievant Hill complained that his route was too light. (Unrefuted testimony of Steve DiMario and Mr. Hill)

24. The time period in which Beverage Works sought to have Grievants back was approximately 1:00 p.m. (Unrefuted testimony of Steve DiMario)

25. It would be problematic if beverage Works drivers were coming back at 4:00 and 5:00 in the afternoon, because it would negatively impact on the next day. The goal is to have drivers back by 1:00 p.m. to start getting ready for the next day's deliveries. Beverage Works would want to see what deliveries were not completed (pushed) and needed to be re-routed the next day. The Operations Manager would want to begin formulating the routes based upon the current orders and the pushed deliveries. In addition, Beverage Works would want to begin unloading and loading the trucks for the next day. (Unrefuted testimony of Ricardo Valentin and Steve DiMario)

All of the foregoing, is undisputed on this record. Here there is no question that Beverage Works NY, Inc., fully complied with the express and negotiated terms of the Collective Bargaining Agreement ("CBA") and has fully compensated each of the Grievants in accordance with the provisions of the Collective Bargaining Agreement and all applicable laws.

DISCUSSION AND AWARD

As the moving party the burden of proof is on the grievant to satisfy the undersigned that Darnell Brunston is entitled to the $315,386.00 (Statement of Damages) in unpaid overtime and liquidated damages as claimed. In the opinion of the undersigned this burden has not been met. His basic contention was that from 2010 - 2014 he worked at least 12 hours a day. This testimony was found to be incredible. For an employee working in a union environment who by his own testimony was hired to work at the most 40 hours a week for a specific amount of money would just accept these ridiculous working hours (67.5) as a given is hard to swallow.

9

Mr. Brunston testified that he joined the Company 2006 as a truck driver, became a Salesman in 2008 and ended up as a Delivery man in 2010. He acknowledged that as a Delivery man he was a salaried worker. He indicated that his manifests listed about 40 stops sometimes more. He like his coworkers indicated he always exceeded 8 hours in making the deliveries. The undersigned was disturbed by the cookie cutter response to this answer by each and every grievant. When you take into consideration that during direct he testified that he was assigned to the warehouse up to two times a week it makes his claim impossible.

Like his counterparts he suggested that when he called his supervisor to report his route was going to extend past 8 hours. (Why was this call necessary if not to adjust the rout to meet the 8 hour standard?) He insists that he brought his excessive route to the attention of his supervisors, union shop steward, at the weekly/biweekly meetings and in his case at the monthly union meetings. When asked during cross, did you ever file a grievance on this issue, his response was no. It is extremely difficult for the undersigned to believe that with the knowledge that as a salaried employee with union protection hired to complete routes in 8 hours, he would consistently work 65 to 70 hours per week without filing a grievance. Perhaps if he had filed one, received no satisfaction then and only then might his story have some semblance of veracity but that is not the case.

In any event he claimed he complained to the shop steward as well as at the biweekly meetings but to no avail. In other words although hired to work 40 hours per week in a union protected job he claims to have worked up to almost twice the hours for the same weekly salary. It does not make sense and if it doesn't make sense it is not true.

Also problematic was the length of time cited for recovery. His Statement of Damages claims hours from 2010 to 2014 but during cross examination the Company was able to demonstrate that he was out on Worker's Comp from 9/18/2013 to 5/21/2014[2] and the Grievant testified, "He never returned from Workers Comp."

---

[2] BV4

10

Mr. Brunston did not contract away his right to overtime but rather accepted a position identified in the cba as salaried. There was no evidence or testimony offered to suggest that salaried employees cannot be covered by a collective bargaining agreement.

The grievant's representative suggests that a Company "cannot stand idly by..."[3] and ", it must take all measures available to prevent the unwanted overtime work."[4] Clearly the Company did not stand idly by and in fact required employees to put in writing if a route took too long[5] but that was clearly a CYA. As a point of fact through credible testimony of several Company witnesses the process of adjusting routes to be completed within 8 hours was explained with the recognition that it was in the Company's best interest to have the drivers back by 2:00pm and that in many cases they came in as early as 12:30pm. Any adjustments required were effected the next day.

Christopher Ustich, Vice President, testified that the Company did not closely monitor the drivers on their routes to determine how much personal time is taken including breaks and lunch and as a result depended on driver feedback to insure the routes were finished within 8 hours. He indicated that in his position he attended meetings at least bimonthly with the Union and problems with route completion within the allotted time were never raised. He pointed out that the Company has a complaint box and he has an open door policy in addition to attending driver and team meetings on a regular basis any of which could be used to challenge route length. According to him prior to this law suit there had been no unresolved issues with excessive route stops.

Steven DiMario, Operations Director, an eleven year employee of the Company, testified that he formulated the routes on a daily basis from 2011 - 2013. He explained that they were formulated on an individual basis using various factors such as case load, stop amount and driver efficiency. He credibly testified that as issues were raised he would adjust the routes the next day. He described how on occasion he would lighten a route for vacation or personal reasons. He indicated that the Company

---

[3] Grievants' Post Arbitration Brief pg 2
[4] Grievant's Post arbitration Brief pg 2
[5] Pg 16 Beverage Works Handbook dated 2011

11

employed swing drivers and helpers to assist the regular drivers who were experiencing difficulty.

He mentioned that he had occasion to attend drivers meeting but never encountered any hue and cry over route completion. When issues were raised the routes were tweaked before the next day. He confirmed that the Company did not monitor the drivers. He added that when he was in Brooklyn he physically observed most drivers were back by 2:00pm and it was not unusual on a Monday that most were back by 12:30pm.

Jeff Brown, V.P. Operations, testified that he has been with the Company for 13 years and started out as a Driver receiving a salary. When asked did he complete his routes in 8 hours he responded, "No... 6 hours." He rebutted the suggestion of the grievant's attorney that the language in the Employee Handbook[6] regarding overtime applied to the drivers and confirmed that it only applied to hourly employees. He confirmed the responsibility of the driver to report route problems in order to have the routes finished within 8 hours. He indicated that the new UPS program utilized by the Company is extremely efficient in setting up routes.

Amaury Peralta, Sales Manager, and Company employee for 12 years also testified that he had been a Driver/Seller before his current position and always completed his routes in 8 hours or less. He described his familiarity with the routes and added he provided daily feedback to the routers including Steve DiMario in order to tweak routes when required. He indicated that he followed up with whoever brought the issue to his attention. He credibly testified that when contacted by a driver he would review the stops and advise him accordingly. He might indicate which stops to complete and or push for delivery next day. He indicated that the divers for the most part would return between 1 and 2pm.

He recounted occasions during the driver meetings when the issue of route length was raised. He claimed to have met with the driver after to discuss the issue and

---

[6] Beverage Works Employee Handbook IX pg 12 pg 12

12

coordinated with Steve or the individual routing and tweak it immediately. Occasionally a helper would be provided which would allow delivery in difficult parking areas (the truck could keep circling or double park) as well as help unloading cases. He rebutted the Grievants' claim that supervisors including himself were not readily available.

The final witness for the Company was Ricardo Valentin, Operations Manager. He indicated that prior to taking that position he had been employed as a driver and completed his rotes in 8 hours or less. He stated the Company now used a sophisticated routing program developed by UPS but this did not result in any major differences in route compilation. The factors used paralleled the other Operations Manager in that he took into consideration traffic, accounts and the driver. He confirmed all previous testimony that route concerns were addressed immediately when possible and no later than the next day if necessary. The Company through this witness offered into evidence affidavits of the current drivers performing the grievant's route. The affidavits were accepted "For what they are worth." ,based on the Best Evidence objection of the Grievant's counsel. As appoint of fact the undersigned gave little consideration to these documents in that several of the Company's earlier witnesses including Mr. Peralta established that they had completed their routes in 8 hours or less.

After weighing all the evidence and testimony the undersigned finds that the Grievant did not meet the burden of proof that he worked approximately 25 to 30 hours per week for his entire employment at the Company. There was also unrebutted testimony that Monday was "light day" and most drivers were in by 12:30pm.

It does not make sense that a prudent person working in a union environment would agree to work 60 to 70 hours per week for the same amount paid for 40 hours per week. If it doesn't make sense it is not true. The Company had a system in place that obviously worked for the Company officials that had been drivers. The testimony of the grievant is totally unreliable.

For the above mentioned reasons this grievance is denied in its entirety.

13

Wellington J. Davis, Jr.

On this 25th day of July 2015,

before me personally appeared _Wellington J Davis, Jr_ known to

be the individual described in and who executed the foregoing instrument, and he

acknowledged to me that he/she executed same

STATE OF NEW JERSEY

COUNTY OF MONMOUTH

SIGNATURE OF NOTARY    Patricia Davis

MY COMMISION EXPIRES

PATRICIA DAVIS
ID # 2286732
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires April 18, 2017