**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWIN PACHECO and NICOLAS JONES, on behalf of themselves and all others similarly-situated,<br><br>Plaintiffs,<br><br>              v.<br><br>THE BEVERAGE WORKS NY, INC., and RICARDO VALENTINE, in his individual and professional capacities,<br><br>Defendants. | Civil Action No. 14-5763 (DLI) (MDG) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE THE ARBITRATOR'S AWARD**

---

JASINSKI, P.C.
60 Park Place, 8th Floor
Newark, NJ  07102
(T) 973-824-9700
(F) 973-824-6061
*Attorneys for Defendants*
*The Beverage Works NY, Inc.*
*and Ricardo Valentine*

Of Counsel:
David F. Jasinski, Esq.

On the Brief:
Susan Burns, Esq.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 2

ARGUMENT ............................................................ 8

I.    Standard of review. ......................................... 8

II.   Arbitrator Davis applied the facts adduced at the
      arbitration hearing to find that Plaintiffs failed to prove
      they worked over forty hours, and thus no legal or
      contractual violation exists. ............................. 11

III.  The Awards do not reflect Arbitrator Davis' "personal brand
      of industrial justice"; rather, they reflect credibility
      determinations and assessments of the factual evidence. .. 18

IV.   The Awards are consistent with applicable law and public
      policy. .................................................... 22

CONCLUSION ......................................................... 23

i

## TABLE OF AUTHORITIES

Cases

Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,
  333 F.3d 383 (2d Cir. 2003) ................................ 9, 10

Hodgson v. A.W. Crossley, Inc.,
  365 F. Supp. 1131 (S.D.N.Y. 1973) ........................... 17

Jamaica Buses, Inc. v. Transport Workers' Union,
  No. 02 CV 2533, 2003 WL 1621026 (E.D.N.Y. 2003) ............. 15

Lundy v. Catholic Health Sys. of Long Island Inc.,
  711 F.3d 106 (2d Cir. 2013) ................................. 17

Major League Baseball Players Ass'n v. Garvey,
  532 U.S. 504 (2001) ............................... 9, 11, 12, 13

Trustees of Empire State Carpenters Annuity v. Baywood Concrete
  Corp., No. 13-CV-6403, 2015 WL 5178154 (E.D.N.Y. Sept. 2, 2015)
  ............................................................. 16

Tully Construction Co./A.J. Pegno Construction Co., J.V. v.
  Canam Steel Corp.,
  No. 13 Civ. 3037 (PGG), 2015 WL 906128 (S.D.N.Y. March 2, 2015)
  ............................................................. 16

United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,
  484 U.S. 29 (1987) ........................... 10, 13, 14, 15

Wallace v. Buttar,
  378 F.3d 182 (2d Cir. 2004) ......................... 9, 10, 16

Statutes

12 NYCRR § 142-2.2 ............................... 16, 17, 18
29 U.S.C. § 207(a)(1) ........................... 16, 17, 18
9 U.S.C. § 10(a) ................................. 9, 10

**PRELIMINARY STATEMENT**

Plaintiffs ask this Court to vacate the arbitral awards addressing their grievances on the grounds that they disagree with the factual findings set forth therein. The issue before the Arbitrator was whether Defendants owed Grievants unpaid overtime for hours worked in excess of forty per week. The Arbitrator denied the grievances on the grounds that the Grievants failed to prove they worked more than forty hours in any given week.

Now, Plaintiffs seek to vacate the awards on the grounds that they are in manifest disregard of the law and public policy, which are "against the evils of overwork for underpay." Plaintiffs' motion is misguided. Plaintiff's motion fails because it constitutes a challenge of the credibility determinations and finding of fact made by the Arbitrator which determinations are not subject to review. Contrary to Plaintiff's assertion, the Arbitrator did not ignore the laws that require employers to pay employees overtime for hours worked in excess of forty per week. Instead, he applied the facts presented during a two-day hearing to find that Plaintiffs failed to meet their burden of proving that they were actually entitled to overtime payments. The Arbitrator found that there was not any credible evidence to support the Grievants' claims. The United States Supreme Court has made clear that courts cannot vacate arbitration awards on the grounds that Plaintiffs disagree with the factual findings set

1

forth therein. For these reasons, Plaintiffs' motion must be denied in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 1, 2014, Plaintiffs Edwin Pacheco and Nicholas Jones filed Civil Action No. 14-cv-5763 against Defendants The Beverage Works NY, Inc. and Ricardo Valentine, in his individual and professional capacities, in the United States District Court for the Eastern District of New York. (Burns Cert.[1], ¶3, Ex. A.) The Complaint was pleaded as a Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219, Collective Action and a Rule 23 Class Action for violations of New York Labor Law (NYLL) and Regulations, including 12 NYCRR § 142-2.2. (Burns Cert., ¶3, Ex. A.) Plaintiffs sought to recover unpaid minimum wages, overtime compensation, and liquidated damages on behalf of themselves and other non-managerial employees for alleged legal violations. (Burns Cert., ¶3, Ex. A.) After the complaint was filed, Darnell Brunston, Efrain Rodriguez, Samuel Hernandez, Whitley Tavaris Jr., Samuel Torres-Soto, Jonathan Hill, and Lenny Reyes consented to join the collective action. (Burns Cert., ¶4, Ex. B.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Federal Arbitration Act (FAA), 9 U.S.C. §10a, Defendants filed a motion in lieu of an answer seeking to compel arbitration of

---

[1] "Burns Cert." refers to the Certification of Susan Burns, Esq., dated December 1, 2015.

2

Plaintiff's claims and to stay the matter pending completion of the arbitration pursuant to the arbitration requirements set forth in the collective bargaining agreement (CBA) between the parties' and the Company's Employee Handbook which is incorporated into the CBA. (Burns Cert., ¶5.)

The parties subsequently entered into a stipulation staying the federal court action pending arbitration. (Burns Cert., ¶7, Ex. D.)

By letter dated December 2, 2014, Defendants' counsel requested that Arbitrator Davis schedule an arbitration hearing for the Plaintiffs and opt-in Plaintiffs. (See Maguire Decl.,[2] ¶ 2, Ex. A.) The issue for each Plaintiff was the same: **"Was the overtime allegedly worked by the grievant** 'suffered and permitted' within the meaning of the collective bargaining agreement or applicable regulations? If so what shall the remedy be?" (Maguire Decl., ¶¶ 4-9, Exs. C-H pp. 2 (emphasis added).)

On May 6, 2015 and on May 7, 2015, the parties engaged in arbitration with respect to seven of the nine Plaintiffs – Pacheco, Jones, Brunston, Rodriguez, Hill, Torres-Soto, and Reyes. (Maguire Decl., ¶¶ 4-9, Exs. C-H pp. 2.) A hearing for the remaining two Plaintiffs, Hernandez and Tavaris, has not yet been scheduled.

---

[2] "Maguire Decl." refers to the Declaration of Jeffrey R. Maguire, Esq. dated October 30, 2015, filed in support of Plaintiffs' motion to vacate the Awards.

(Burns Cert. ¶8.) The parties were afforded a full opportunity to present witnesses, documentary evidence and oral argument in support of their respective positions. (Maguire Decl., ¶¶ 4-9, Exs. C-H pp. 2.) The parties submitted post-hearing briefs on June 26, 2015. (Maguire Decl., ¶ 3, Ex. B; Burns Cert., ¶11, Ex. G.)

The Arbitrator issued separate awards for each Plaintiff finding in Defendants' favor (the Awards). (See Maguire Decl., ¶¶ 4-9, Exs. C-H.) Put simply, the Arbitrator reviewed the evidence and found for the Employer. The Arbitrator found that there was no credible evidence to support Plaintiffs' claims. He found the testimony of Defendants' witnesses credible, and found Plaintiffs' testimony to be contradictory and not credible, and ultimately concluded that none of Plaintiffs established that they were suffered or permitted to work more than forty hours per week. (See Maguire Decl., ¶¶ 4-9, Exs. C-H.)

Most of the Plaintiffs did not offer any documentary evidence to support their claims, but offered testimony which the Arbitrator did not find credible. The documentary evidence that was offered did not support their claims. In making his credibility determinations, the Arbitrator opined that Plaintiffs provided "cookie cutter response[s]" about the length of time they worked each day. (Maguire Decl., ¶ 5, Ex. D, p. 9.) Each Grievant testified that they worked twelve hours a day. In addition, he found that each Plaintiff made statements that contradicted his

4

own testimony as well as the testimony of the other Plaintiffs, and that they made statements that were unbelievable. (See generally Maguire Decl., ¶¶ 4-9, Exs. C-H.)

The following represents a few examples.  While Brunston testified that he worked at least twelve hours a day every day from 2010-2014 as a driver, he transversely testified he was assigned to the warehouse up to two times per week. (Maguire Decl., ¶ 5, Ex. D, pp. 8-10, 12.) Additionally, Brunston denied that he took an eight-month leave of absence due to a workers' compensation injury but Defendants proved that he did. (Maguire Decl., ¶ 5, Ex. D, p. 9.)  That testimony, as well as his demand for recovery during a time-period when he did not work, undermined Brunston's credibility. (Maguire Decl., ¶ 5, Ex. D, p. 9.)

Rodriguez's testimony that his routes always exceeded eight hours per day was undermined for similar reasons, as he admitted that for at least three months he finished his route by 1:40 p.m. (Maguire Decl., ¶ 6, Ex. E, pp. 8-9, 12.)

Arbitrator Davis found that Hill's testimony was incredible for a similar reason: he argued that he worked at least twelve hours a day every day from May 6, 2010 until May 9, 2014, but then testified that his deliveries did not always exceed eight hours and that "a handful of times" he got back between 12:00 p.m. to 1:00 p.m. (Maguire Decl., ¶ 7, Ex. E, pp. 8-10, 13.)

Torres-Soto's testimony was also found to be self-

contradictory and not credible, as he testified in one instance that he did not realize routes were not to exceed eight hours a day, and in another that he understood the Company anticipated his routes were to be completed within an eight-hour period. Moreover, he did not rebut the testimony that Monday was a light day (p. 14.) (Maguire Decl., ¶ 8, Ex. G, pp. 8-10, 13.) Moreover, Torres-Soto testified he had availed himself of the Union to assist him with other grievances he had with his Employer. He testified he was terminated for lying and falsifying data and the Union intervened and got his job back with a 90-day probation period. Yet he never raised the alleged issue that he was working 12 hour days with the Union despite successful results in the past for grievances. (Maguire Decl., ¶ 8, Ex. G, p. 10.)

Ultimately, it appeared to the Arbitrator that Grievants were "throwing their testimony and evidence against the wall to see what sticks." (Maguire Decl., ¶ 9, Ex. H, p. 9.) The testimony of the Company's witnesses, on the other hand, was credible in the eyes of the Arbitrator. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12).

In that regard, Beverage Works Vice President Christopher Ustich, Operations Director Steven DiMario, Vice President of Operations Jeff Brown, Sales Manager Amaury Peralta, and Operations Manager Ricardo Valentin all testified on behalf of

Defendants. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.) In doing so, they made the following points, which the Arbitrator found credible:

- The routes typically were created to take eight hours to complete through a sophisticated routing program. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.)

- Plaintiffs typically returned from their routes no later than 2:00 p.m. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.)

- Indeed, the unrefuted testimony established that it was in the Company's best interests to have the Drivers back by 2:00 pm, because if Drivers came back later it would negatively impact on the next day. (Maguire Decl., Ex. C, pp. 9-10, Ex. D, pp. 9-10; Ex. E, pp. 9-10; Ex. F, pp. 9-10; Ex. G, pp-9-10; Ex. H, p. 10.)

- Monday was a "light day" and most drivers were in by 12:30 p.m. (Maguire Decl., ¶ 4, Ex. C, p. 12; ¶ 5, Ex. D, p. 12; ¶ 6, Ex. E, p. 12; ¶ 7, Ex. F, p. 13; ¶ 8, Ex. G, p. 13; ¶ 9, Ex. H, pp. 11.)

- Brown, Peralta, and Valentin, who were previously drivers like Plaintiffs, never worked a route that was longer than eight hours per day in that capacity. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.)

- It is the driver's responsible to report any problems with route completion within eight hours. (Maguire Decl., ¶ 4, Ex. C, p. 11; ¶ 5, Ex. D, p. 11; ¶ 6, Ex. E, p.11; ¶ 7, Ex. F, p. 11; ¶ 8, Ex. G, pp. 11-12; ¶ 9, Ex. H, p. 11.)

- Problems with route completion within the allotted time were never raised with Ustich, despite the Company's

complaint box and regular team meetings. (Maguire Decl., ¶ 4, Ex. C, p. 10; ¶ 5, Ex. D, p. 10; ¶ 6, Ex. E, p. 10; ¶ 7, Ex. F, p. 10; ¶ 8, Ex. G, p. 11; ¶ 9, Ex. H, p. 10.)

- DiMario confirmed he "never encountered any hue and cry over route completion." (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.)

- Credible testimony of several company witnesses established that routes were adjusted to ensure that that they were completed in eight hours. (Maguire Dec., Ex. C, pp. 10-12; Exhibit D, pp. 10-12; Exhibit E, pp. 9-12; Ex. F, pp. 10-12; Ex. G, pp. 10-12; Ex. 11, pp. 10-12.)

- If a driver would raise an issue with his route, DiMario would adjust the route the following day. (Maguire Decl., ¶ 4, Ex. C, pp. 10-12; ¶ 5, Ex. D, pp. 10-12; ¶ 6, Ex. E, pp. 9-12; ¶ 7, Ex. F, pp. 10-13; ¶ 8, Ex. G, pp. 10-12; ¶ 9, Ex. H, pp. 10-12.)

Ultimately, because the Arbitrator found that the evidence did not support the Plaintiffs' claims that they worked more than forty hours per week, the Arbitrator denied the grievances in their entirety. (See generally Maguire Decl., ¶¶ 4-9, Exs. C-H.) Six of the seven Plaintiffs seek to vacate their awards. Plaintiff, Jones, did not seek to vacate his award. (See Maguire Decl., ¶¶ 4-9, Exs. C-H.)

## ARGUMENT

### I.   Standard of review.

A party seeking to vacate an arbitral award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d

Cir. 2003). The FAA permits vacation of an arbitral award in only four specifically enumerated situations, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrator. See 9 U.S.C. § 10(a); accord Duferco, 333 F.3d at 388.

While courts in the Second Circuit will also vacate an arbitral award if "manifest disregard of the law is plainly evident from the arbitration record," Duferco, 333 F.3d at 388, courts may not review the merits of the arbitrator's award or reverse an award due to its disagreement with the arbitrator's credibility determinations, Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509-10, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) (per curium). Although Arbitrator Wellington's findings of fact are completely logical and supported by the record, even if they were not, these awards cannot be vacated. "[T]he arbitrator's improvident, even silly, fact finding does not provide a basis for a reviewing court to refuse to enforce the award. Id. at 509, 121 S. Ct. at 1728 (internal citations and quotation omitted); see also Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004) ("The Second Circuit does not recognize manifest disregard of the evidence as a proper ground for vacating an arbitrator's award." (internal citations and quotation omitted)). Thus, the manifest disregard doctrine is a doctrine of last resort to be used only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent," such as when the

9

arbitrator issues an illegal award or an award that rejects controlling legal precedent. Duferco, 333 F.3d at 388-90; Wallace, 378 F.3d at 190. It is not to be used as a means for courts to conduct an independent review of the facts in order to achieve a different result. Wallace, 378 F.3d at 192.

Furthermore, a party seeking to prove that an arbitrator's award is contrary to public policy must clearly show that the award violates a well-defined and dominant policy. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 42-44, 108 S. Ct. 364, 374, 98 L. Ed. 2d 286 (1987). Yet, in considering such a motion, a court cannot engage in its own fact finding function and must instead rely upon the facts as determined by the arbitrator. Id. at 44-45, 108 S. Ct. at 374.

Although Plaintiffs' couch their motion in terms of an FAA violation, they do not allege corruption, fraud, or some other impropriety on the part of the Arbitrator as required to vacate an award pursuant to 9 U.S.C. § 10(a). Rather, Plaintiffs' motion argues solely that the Awards were issued in manifest disregard of the law and violates public policy. A review of the arbitration awards requires a conclusion that the Arbitrator disregarded neither the law nor public policy in issuing the Awards.

**II.  Arbitrator Davis applied the facts adduced at the arbitration hearing to find that Plaintiffs failed to prove they worked over forty hours, and thus no legal or contractual violation exists.**

While Plaintiffs argue that the Awards reflect a manifest disregard of the *law*, what they are really arguing is that the Awards reflect a manifest disregard of the *evidence*. Essentially, Plaintiff disagrees with the Arbitrator's credibility determinations which is not grounds to vacate the Awards. Arbitrator Davis did not disregard the law.  He simply found that the Grievants failed to establish violations.  Applicable jurisprudence warrants rejection of this claim. The Garvey case is informative.

In Garvey, the Major League Baseball Players Association filed grievances against the Major League Baseball Clubs alleging that the Clubs colluded in the market for free-agent services in violation of the industry's collective bargaining agreement. Garvey, 532 U.S. at 505-06, 121 S. Ct. at 1726. The case settled. Id. at 506, 121 S. Ct. at 1726. Pursuant to the settlement agreement, the Clubs established a $280 million fund to be distributed to injured players when a specific offer of a contract extension was made by a Major League Baseball Club prior to collusion but was subsequently withdrawn when the collusion scheme was initiated. Id., 121 S. Ct. at 1726.

Retired first baseman Steve Garvey filed a grievance alleging that his contract with the San Diego Padres was not extended for two seasons due to collusion. Id., 121 S. Ct. at 1726. To support his claim, during the arbitration hearing Garvey provided witness testimony and presented a letter from the Padres' President and CEO stating that despite their prior offer to extend Garvey's contract, they refused to negotiate with Garvey due to collusion. Id. at 506-07, 121 S. Ct. at 1726-27.

Similar to Arbitrator Davis here, the arbitrator in the Garvey case denied the claim on the grounds that the evidence simply did not support the claim. Id. at 507, 121 S. Ct. at 1727. The arbitrator found that the letter presented by Garvey was incredible because it contradicted other witness testimony. Id., 121 S. Ct. at 1727. The arbitrator further found that Garvey had not met his burden of showing that he received a specific offer to extend his contract, noting the lack of corroboration to support Garvey's claim. Id., 121 S. Ct. at 1727.

Garvey moved to vacate the arbitration award. Id., 121 S. Ct. at 1727. The district court denied his motion, but the Ninth Circuit Court of Appeals reversed. Id., 121 S. Ct. at 1727. Similar to what Plaintiffs assert here, the Ninth Circuit found that the arbitrator "dispensed his own brand of industrial justice" by refusing to credit the letter. Id. at 507-08, 121 S. Ct. at 1727 which is essentially what Grievants argue here. The Ninth Circuit

12

further rejected the arbitrator's reliance on the absence of corroborating evidence to support his decision. Id. at 508, 121 S. Ct. at 1727.

The United States Supreme Court reversed the Ninth Circuit's decision, finding it was improper to reverse the arbitrator's decision on the grounds that the court disagreed with his credibility determinations:

> The substance of the court's discussion reveals that it overturned the arbitrator's decision because it disagreed with the arbitrator's factual findings, particularly those with respect to credibility. The Court of Appeals, it appears, would have credited Smith's 1996 letter, and found the arbitrator's refusal to do so at worse "irrational" and at best "bizarre." But even "serious error" on the arbitrator's par does not justify overturning his decision, where, as here, he is construing a contract and acting within the scope of his authority.

Id. at 510, 121 S. Ct. at 1728-29.

The decision in Garvey is consistent with the Court's ruling over ten years earlier in Misco. There, an employee filed a grievance after he was discharged for having drugs on the company's premises in violation of company rules. 484 U.S. at 33, 108 S. Ct. at 368. As part of his job responsibilities, he operated a hazardous slitter-rewinder machine. Id. at 32, 108 S. Ct. at 368 The employee was arrested after a police officer observed him in the backseat of a car in the company's parking lot with marijuana

13

smoke in the air and a lighted marijuana cigarette in the front seat ashtray. Id. at 33, 108 S. Ct. at 368. The employee told his employer about his arrest, and was discharged after an investigation. Id., 108 S. Ct. at 368. The employee grieved his discharge. Id., 108 S. Ct. at 368.

The arbitrator upheld the grievance and ordered the company to reinstate the employee with back pay and full seniority. Id. at 34, 108 S. Ct. at 368. The arbitrator opined that the company failed to prove that the employee possessed or used marijuana on company property. Id. at 34, 108 S. Ct. at 368-69. The company sought to vacate the award in district court. Id., 108 S. Ct. at 369. The district court set aside the award because it disagreed with the arbitrator's factual findings as to the evidence and the Court of Appeals affirmed. Id. at 34-35, 108 S. Ct. at 369. The Supreme Court reversed, finding that the lower courts exceeded their authority in vacating the award as a result of their disagreement with the arbitrator's factual determinations. Id. at 35-42, 108 S. Ct. at 369-373

Emphasizing the limited role courts play when reviewing an arbitral decision, the Court held that "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact." Id. at 35, 108 S. Ct. at 370. This is exactly what Grievants are asking the Court

14

to do here.   The Court opined that it would undermine federal policy if courts had final say on the merits of cases:

> The reasons insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government. . . . Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.

Id. at 37-38, 108 S. Ct. at 370-71.

Accordingly, the Court found that the lower courts erred when they refused to enforce the arbitrator's award on the grounds that they did not agree with the arbitrator's finding that the employee did not possess or use marijuana on company property. Id. at 39-42, 108 S. Ct. at 371-73. The Court held that "improvident, even silly, fact finding . . . is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." Id. at 39, 108 S. Ct. at 371.

Courts in the Second Circuit routinely follow the Court's precedent. See Jamaica Buses, Inc. v. Transport Workers' Union,

holding that even assuming the arbitrator erred in his factual findings, that the alone is an inappropriate ground to vacate the award. No. 02 CV 2533, 2003 WL 1621026 *4(E.D.N.Y. 2003). See also Wallace, 378 F.3d at 189-96 (holding district courts should not assess evidence of a case in reviewing arbitration award); Trustees of Empire State Carpenters Annuity v. Baywood Concrete Corp., No. 13-CV-6403, 2015 WL 5178154 (E.D.N.Y. Sept. 2, 2015) (rejecting invitation to reconsider arbitrator's factual findings); accord Tully Construction Co./A.J. Pegno Construction Co., J.V. v. Canam Steel Corp., No. 13 Civ. 3037 (PGG) , 2015 WL 906128 (S.D.N.Y. March 2, 2015) (holding vacation of award inappropriate where party disagrees with arbitrator's determination of contested issue of fact and law).

Here, Arbitrator Davis did not reject some controlling legal precedent or otherwise issue an illegal award. Rather, he applied legal principles to hold that Plaintiffs failed to meet their burden of proving their case.

Under the FLSA and NYLL, workers receive overtime compensation only if they work over forty hours per week. 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2. The CBA has the same requirements. (Burns Cert., ¶ 9, Ex. E, Art. VIII.) Although Plaintiffs argue that the Arbitrator disregarded these legal requirements, the Awards clearly reflect that he was aware of, and applied, these legal and contractual mandates at the time he issued his award.

16

(See generally Maguire Decl., ¶¶ 4-9, Exs. C-H.) Indeed, the applicable law was outlined in the parties' post hearing brief.

Simply because the Arbitrator found there was no violation of these provisions does not mean that he disregarded them. Rather, it was the Arbitrator's job, as fact finder, to determine whether Plaintiffs worked over forty hours per week; that is the threshold determination that he was required to make before he could find any legal violation. 29 U.S.C. § 207(a)(1) (allowing overtime only for employees who work more than forty hours); 12 NYCRR § 142-2.2 (same); see also Hodgson v. A.W. Crossley, Inc., 365 F. Supp. 1131, 1133 (S.D.N.Y. 1973) (assessing witness testimony and evidence to find that plaintiff failed to establish by fair preponderance of the evidence that he worked more than forty hours in any given week); accord Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013) (dismissing overtime claims because plaintiffs did not sufficiently allege they worked over forty hours in any given workweek).

Arbitrator Davis engaged in fact finding and Grievants are merely unhappy with the results. Arbitrator Davis considered the testimony and evidence and found that Plaintiffs' failed to meet their burden of proving they worked over forty hours per week such that they were entitled to back pay for overtime. The Arbitrator made evidentiary determinations. He opined that none of the Plaintiffs demonstrated he worked over forty hours a week thereby

17

entitling them to overtime compensation. See Section III, infra. Without proof that Plaintiffs worked over forty hours a week, Plaintiffs' grievance necessarily fails because they are not entitled to overtime compensation under the law. See 29 U.S.C. § 207(a)(1) (allowing employees to be paid overtime only if they work over forty hours a week); 12 NYCRR § 142-2.2 (same).

**III. The Awards do not reflect Arbitrator Davis' "personal brand of industrial justice"; rather, they reflect credibility determinations and assessments of the factual evidence.**

Arbitrator Davis did not ignore the law. He did not find that Plaintiffs were not entitled to overtime if they worked in excess of forty hours per week. He applied it to the facts and evidence presented and concluded that none of the Grievants established that they worked over forty hours per week. Despite Plaintiffs' attempt to couch the Arbitrator as dispensing his "personal brand of industrial justice,"[3] the Awards clearly reflect that they were based upon the Arbitrator's fact finding. As previously noted, the Arbitrator credited the testimony of Defendants' witnesses and discredited the testimony of Plaintiffs' with regard to the amount of hours each Plaintiff worked each week. (See Maguire Decl., ¶¶ 4-9, Exs. C-H.)

Grievants complain that there is repetitive language in each

---

[3] It is worth mentioning that Plaintiffs cite no case law from the Second Circuit addressing when, if at all, vacation of an arbitral award is appropriate if an arbitrator dispenses his own brand of industrial justice.

of the awards.   This is not surprising given the Employer's witnesses provided testimony once addressing all of the issues raised, given each Grievant raised an identical issue. In addition, many of the Grievants offered identical "cookie cutter" testimony. However, each of the Grievants' testimony was discussed in the Grievants' awards as well as the testimony related to that Grievant. To be sure, the Arbitrator found that each Plaintiff made statements that contradicted his own testimony as well as the testimony of the other Plaintiffs. (See generally Maguire Decl., ¶¶ 4-9, Exs. C-H.) By way of one example, while Brunston testimony that he worked at least twelve hours a day every day from 2010-2014, he transversely testified he was assigned to the warehouse up to two times per week and took an eight-month leave of absence due to a workers' compensation injury. (Maguire Decl., ¶ 5, Ex. D, pp. 8-10, 12.)

With regard to the Plaintiffs that submitted documentary evidence, Arbitrator Davis found that it was insufficient to support their claims. For instance, Hill submitted a document known as a "strip slip" to support his claim that he worked as late as 4:46 p.m. (Maguire Decl., ¶ 7, Ex. F, pp. 9-10.) But the evidence submitted was for one day only, did not reflect the time Hill began that day,[4] and did not establish that Hill worked more than forty

---

[4] Plaintiffs seek to use Brunston's disciplinary notice as a means to find that Plaintiffs always started their routes at 6:00 a.m.

hours per week. (Maguire Decl., ¶ 7, Ex. F, pp. 9-10.) Reyes too only relied upon documentation from just two days indicating that he worked past 5:00 p.m. on these days. Once again, these records only establish what time he closed out on those two days. They do not establish how many hours he even worked those two days, as it does not reflect start time, lunch time, or other breaks taken on that day. Moreover, they did not establish the hours worked in those particular weeks. (Maguire Decl., ¶ 9, Ex. H, p. 9; see also ¶¶ 11-12, Exs. J-K.)

None of the other evidence submitted by Plaintiffs help prove their case. Contrary to Plaintiffs' assertion, the paystubs produced reflect that Plaintiffs worked forty hours per week, and were paid for forty hours per week. The manifests Plaintiffs refer to, for instance, showing the routes on certain days, add nothing to the inquiry of whether Plaintiffs worked more than forty hours per week. (Maguire Decl., ¶ 13, Ex. L.) Furthermore, Defendants' witnesses testified, and affiants swore, that Plaintiffs could complete these routes in an eight-hour period. (See Maguire Decl., ¶ 14, Ex. M.)

Plaintiffs' attempt to shift the burden of proof to Defendants by claiming that Defendants should have produced documentation

---

or earlier. Yet, that notice only proves the opposite – that Brunston was disciplined because he did not start his route at 6:00 a.m. (Maguire Decl., ¶ 15, Ex. N.)

20

reflecting that Plaintiffs *did not* work overtime. They state the Employer "refused" to produce documentation which is untrue. Indeed, there was not even a request. (Pls' Memo. of Law at 15.) Regardless, as Plaintiffs' themselves admit in their brief, the burden is with Plaintiffs to prove their case; it is not for Defendants to disprove Plaintiffs' case. (Pls' Memo. of Law at 13.)

Plaintiffs additionally attempt to derogate the Awards by calling into question the employee affidavits produced by Defendants (Maguire Decl., ¶ 14, Ex. M), which Plaintiffs call self-serving. These affidavits, which support defense witness testimony that Plaintiffs did not work more than forty hours per week, were filed by employees who are not parties to Plaintiffs' lawsuit. (See Maguire Decl., ¶ 14, Ex. M.) So these employees have no stake in the outcome of the litigation. The statements by Plaintiffs themselves, however, must be viewed with a closer eye, as Plaintiffs have an economic interest in the outcome of this case.

Moreover, it is not the function of this Court to re-evaluate the evidence. In sum, the Arbitrator did not dispense of his own brand of industrial justice. He made credibility determinations and found the testimony of Defendants' witnesses credible and Plaintiffs' witnesses incredible. These determinations cannot be

challenged.  For the reasons set forth in this Section and Section II, <u>supra</u>, this Court should not reverse that determination.

### IV. **The Awards are consistent with applicable law and public policy.**

Plaintiffs argue that the Awards violate "explicit public policy preventing employers from excluding non-exempt workers from overtime pay." (<u>See</u> Pls' Memo. of Law at 18.) This claim has no merit.  As the Awards recognized that employees who work more than forty hours a week are entitled to overtime pay. (<u>See</u> Maguire Decl., ¶¶ 4-9, Exs. C-H.)  However, the Arbitrator found that Plaintiffs were not entitled to overtime pay because they did not work more than forty hours per week. (<u>See</u> Maguire Decl., ¶¶ 4-9, Exs. C-H.) That finding is wholly consistent with the law and public policy requiring overtime pay *only* when employees work more than forty hours per week. 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2.

Essentially, Plaintiffs ask this Court to review the factual determinations made by the Arbitrator to somehow conclude that the Awards violate public policy. The United States Supreme Court considered and rejected that same argument in <u>Misco</u>. There, the Court found that the Court of Appeals acted "inappropriate[ly]" when it engaged in its own fact finding mission to hold that the arbitrator's award violated public policy. 484 U.S. at 44-45, 108 S. Ct. at 374.

Accordingly, this Court cannot review the Arbitrator's factual findings to reverse the Awards on the grounds that they violate public policy.

### CONCLUSION

For the forgoing reasons, Plaintiffs assert no valid grounds to reverse the arbitration Awards. Defendants respectfully request that this Court deny Plaintiffs' motion to vacate the Awards with prejudice.

Respectfully submitted

JASINSKI, P.C.

By: _____

DAVID F. JASINSKI

DATED:  December 4, 2015

23