UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
EDWIN PACHECO and NICOLAS JONES, on : 
behalf of themselves and all others similarly situated, :
: 
Plaintiffs, :
:     **MEMORANDUM AND ORDER**
-against- :     14-CV-5763 (DLI)(MDG)
:
THE BEVERAGE WORKS NY, INC., :
and RICARDO VALENTINE, in his individual :
and professional capacities, :
:
Defendants. :
-------------------------------------------------------------------- X

**DORA L. IRIZARRY, Chief U.S. District Judge:**

On October 30, 2015, Edwin Pacheco ("Pacheco"), Jonathan Hill ("Hill"), Samuel

Torres-Soto ("Torres-Soto"), Efrain Rodriguez ("Rodriguez"), Lenny Reyes ("Reyes"), and

Darnell Brunston ("Brunston") (collectively "Plaintiffs") moved to vacate the arbitration awards

rendered by Arbitrator Wellington Davis, Jr. (the "Arbitrator") on July 25, 2015. (*See* Pls.'

Mem. of Law in Supp. of Mot. to Vacate the Arbitrator's Awards ("Pls.' Mem."), Dkt. Entry No.

29.) On December 4, 2015, The Beverage Works NY, Inc., and Ricardo Valentine (collectively

"Defendants") filed their opposition. (*See* Defs.' Mem. of Law in Opp'n to Pls.' Motion to

Vacate the Arbitrator's Award ("Defs.' Mem."), Dkt. Entry No. 32.) For the following reasons,

Plaintiffs' motion is denied.

## BACKGROUND

Plaintiffs were former delivery drivers employed by The Beverage Works NY, Inc. and

members of Local 713, International Brotherhood of Trade Unions, International Union of

Journeymen and Allied Traders (the "Union"). (Pls.' Mem. at 1.) Pursuant to the collective

bargaining agreement ("CBA") between The Beverage Works NY, Inc. and the Union, any

disputes "arising out of or under" the agreement were subject to arbitration. (Pls.' Mem. at 4; Defs.' Mem. at 3.) On October 1, 2014, Edwin Pacheco and Nicholas Jones filed the instant action asserting Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") wage violations against Defendants. (*See* Dkt. Entry No. 1.) They alleged that as delivery drivers they completed delivery routes that required them typically to work in excess of forty hours each week, but that Defendants compensated them only for the first forty hours worked per week. (*Id.* ¶¶ 3, 5.) Shortly after commencing the instant action, other individuals filed opt-in forms and joined the suit. (*See* Dkt. Entry Nos. 3-8, 11, 19-20.) After Defendants filed a motion to dismiss the action and to compel arbitration, the parties stipulated to stay the present lawsuit pending arbitration of the dispute. (Dkt. Entry Nos. 21-22.)

On May 6 and May 7, 2015, the parties held arbitration hearings for seven individuals, including the six plaintiffs. (Pls.' Mem. at 4; Defs.' Mem. at 3.) The parties held a single hearing for Plaintiffs, and each plaintiff relied on the same set of documents throughout the hearing. (Pls.' Mem. at 5.) The Plaintiffs each testified that they worked five days per week for approximately twelve hours a day, for a total of between sixty to sixty-five hours per week. (Pls.' Mem. at 5, 14; Defs.' Mem. at 4.) Specifically, Plaintiffs testified that their delivery routes took longer than eight hours to complete and that they generally worked from 6:00 a.m. to around 5:00 p.m. to 6:30 p.m. each day. (*See* Exhibits C-H to Decl. of Jeffrey R. Maguire, dated October 30, 2015 ("October 2015 Maguire Decl."), Dkt. Entry No. 30.) Along with their testimony, Reyes and Hill presented three "recap receipts," which represented paperwork Defendants required the drivers to submit before concluding work each day. (*See* Exhibits J-K to

October 2015 Maguire Decl.)  The recap receipts displayed 4:46 p.m., 5:03 p.m.,[1] and 6:27 p.m. timestamps respectively.  (*Id.*)  Pacheco provided paystubs where the hours worked were either listed as "40.00" or not listed.  (Exhibit I to October 2015 Maguire Decl.)  Finally, Plaintiffs produced three documents known as "manifests," which listed the delivery routes Defendants required them to complete.  (Exhibit L to October 2015 Maguire Decl.)

Defendants provided six affidavits from current employees stating that the affiant "always finish[ed] [his] route in 8 hours or less" and testimony from five company officers and managers.  (Exhibit M to October 2015 Maguire Decl.; Pls.' Mem. at 5.)  Defendants also submitted a disciplinary warning given to Brunston for not arriving to work at 6:00 a.m. (Exhibit N to October 2015 Maguire Decl.)  After the hearing, the parties submitted post-hearing briefs to the Arbitrator.  (Exhibit B to October 2015 Maguire Decl.; Exhibit G to Decl. of Susan B. Burns, dated December 4, 2015 ("December 2015 Burns Decl."), Dkt. Entry No. 33-1.)

On July 25, 2015, the Arbitrator issued separate decisions denying each individual's overtime claims in their entirety (collectively the "arbitration awards").  (*See* Exhibits C-H to October 2015 Maguire Decl.) The Arbitrator found the testimony of each individual "to be incredible" and unreliable because of different inconsistencies in each plaintiff's testimony.  (*See generally*, *Id.*)  The Arbitrator noted that Pacheco's testimony was "contradictory and impugned his credibility" because Pacheco gave conflicting responses to whether his supervisors ever adjusted his delivery routes when he complained that the routes extended past eight hours. (Exhibit C, at 9 to October 2015 Maguire Decl.)  At times, Pacheco testified that his route was not adjusted and other times stated that the amount of adjustments "varied."  (*Id.*)  The Arbitrator stated that Brunston's claim, that he worked twelve hours a day due to the length of his routes,

---

[1] The Court relies on the Arbitrator's factual finding that two of the recap receipts were timestamped 4:46 p.m. and 5:03 p.m., as it is unable to read the grainy photocopied recap receipts filed with Plaintiffs' moving papers. (Exhibit F, at 9 to October 2015 Maguire Decl.)

was "impossible" because he worked two days at the company's warehouse and did not complete routes that day. (Exhibit D, at 9 to October 2015 Maguire Decl.) The Arbitrator also found Rodriguez's testimony "totally unreliable" because he claimed "to have worked every single day to 6:00 or 7:00 p.m. [but]…admitted [that] during his first three months of employment he was back [at the company's warehouse] between 1:00-2:00 p.m." (Exhibit E, at 12 to October 2015 Maguire Decl.)

Similarly, the Arbitrator found Hill's testimony "unreliable" because Hill admitted that "a handful of times" he returned between 12:00 and 1:00 p.m." and stated that his routes exceeded eight hours "maybe of four or [sic] 5 days per week." (Exhibit F, at 9 to October 2015 Maguire Decl.) The Arbitrator stated that Soto-Torres's claim was "frivolous" because during his testimony he adjusted repeatedly the number of stops he made during his routes in order to increase the hours he worked daily. (Exhibit G, at 9 to October 2015 Maguire Decl.) Finally, the Arbitrator did not believe Reyes's claim that he worked over forty hours a week "for his entire employment" because he testified specifically that, for a significant portion of his employment, "he did not work over 40 hours" per week. (Exhibit H, at 9 to October 2015 Maguire Decl.) After Plaintiffs testified, the Arbitrator was "disturbed by the cookie cutter response" each Plaintiff gave when testifying that their workday always exceeded eight hours a day. (Exhibit D, at 9 to October 2015 Maguire Decl.)

The Arbitrator also was not persuaded by Plaintiffs' documentary evidence. The Arbitrator noted that the recap receipt showing a "6:28 p.m. [sic]" timestamp did not establish that Plaintiffs worked overtime because it did not show what time Plaintiffs had started working on that specific date. (Exhibit H, at 9 to October 2015 Maguire Decl.) The Arbitrator was unpersuaded by the recap receipt with a 4:46 p.m. timestamp because Hill had "indicated that he

4

received a [recap receipt] every time he returned [to the company]," but only produced "one out of a possible 1040 which would [have] wipe[d] away any doubt" that he worked overtime daily. (Exhibit F, at 10 to October 2015 Maguire Decl.) Similarly, the Arbitrator found that the manifests did not support Plaintiffs' claims because they contained less stops than Plaintiffs testified they completed daily. (Exhibit C, at 9 to October 2015 Maguire Decl.)

In contrast, the Arbitrator found credible the testimony of Defendant's five witnesses, which collectively established that "it was in the Company's best interest to have the drivers back" within eight hours of leaving for their routes. (Exhibit C, at 10 to October 2015 Maguire Decl.) Significantly, the Arbitrator found credible the testimony of Defendants' Operations Director, Steven DiMario, who formulated the routes for all drivers on a daily basis from 2011-2013. Mr. DiMario testified that, when route issues were raised he would adjust the routes the next day. (*Id.*) Similarly, Amaury Peralta, the company's Sales Manager, testified that, if "the issue of route length was raised," he would meet with the driver and then discuss the situation with Mr. DiMario or the individual coordinating the route and "tweak [that driver's route] immediately." (*Id.* at 11.) Like Mr. DiMario and Mr. Peralta, Ricardo Valentin,[2] the company's Operations Manager, also testified that "route concerns were addressed immediately when possible and no later than the next day if necessary." (*Id.* at 12.) The company's Vice President, Christopher Ustich, stated that "prior to this law suit there had been no unresolved issues with excessive route stops." (*Id.* at 10.)

Mr. Valentin, Mr. Peralta, and Jeff Brown, the company's Vice President of Operations, also testified that, when they worked previously as delivery drivers for the company, they had completed their routes in eight hours or less. (*Id.* at 11-12.) The Arbitrator found credible Mr. Peralta's and Mr. DiMario's statements that, "for the most part," drivers would return from their

---

[2] Neither party indicates whether Ricardo Valentin and defendant Ricardo Valentine are the same individual.

routes within eight hours, and noted that Mr. DiMario's statement that on Mondays it was not unusual for drivers to return even earlier was unrebutted by Plaintiffs. (*Id.* at 11-12.) Given this testimony, the Arbitrator "gave little consideration" to the eight affidavits from current delivery drivers. (*Id.*)

Relying on the testimony offered by Defendants' five witnesses, the Arbitrator found it "extremely difficult" to believe either why Plaintiffs did not complain about the length of their routes or that Plaintiffs' routes were not adjusted when they did complain. (*See generally*, Exhibits C-H to October 2015 Maguire Decl.) Specifically, the Arbitrator noted that Mr. DiMario "remember[ed] adjusting Pacheco's route on at least one occasion," and that Mr. Peralta also "recall[ed] resolving route problems with Mr. Pacheco." (Exhibit C, at 12 to October 2015 Maguire Decl.) The Arbitrator stated that this "testimony went unrebutted." (*Id.*) Mr. DiMario testified that Hill's route also had been adjusted twice at Hill's request. (Exhibit F, at 11 to October 2015 Maguire Decl.) Therefore, the Arbitrator concluded that Plaintiffs had not proven that they worked in excess of forty hours per week for the entirety of their employment and denied their claims. After the Arbitrator rendered his decisions, Plaintiffs moved to vacate the arbitration awards. (Dkt. Entry No. 31.)

## DISCUSSION

### A. Standard of Review

A district court's review of arbitration awards is "'narrowly limited,'" and an arbitrator's determinations are "generally accorded great deference under the [Federal Arbitration Act]." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 19 (2d Cir.1997)). The party moving to vacate an arbitration award bears a "heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace v.*

6

*Buttar,* 378 F.3d 182, 189 (2d Cir. 2004). Under the Federal Arbitration Act, a district court may vacate an arbitration award under four specific statutory grounds. *See* 9 U.S.C. § 10(a)(1)-(4). "Additionally, a petition to vacate an arbitration award can be based on two judicially created exceptions to confirmation: (1) that the award was made in 'manifest disregard' of the law and (2) that the award violates public policy." *Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp.2d 34, 39 (E.D.N.Y. 2004) (citing *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 27 (2d Cir.2000)).

## B. Application

Plaintiffs move to vacate the Arbitration Awards contending that: (1) the arbitration awards are in manifest disregard of the FLSA and the NYLL because they ignore the statutes and fail to consider the evidence introduced by Plaintiffs at the hearing; and (2) the arbitration awards violate public policy due to the Arbitrator's interpretation of the CBA. (*See* Pls.' Mem. at 1-4.) In response, Defendants assert that Plaintiffs' arguments are a disguised attempt to attack impermissibly the Arbitrator's credibility determinations and findings of fact and that the arbitration awards are consistent with public policy. (*See generally* Defs.' Mem.)

### 1. The Arbitrator Did Not Exhibit a Manifest Disregard of the Law

A court may "'set aside an arbitration award if it was rendered in manifest disregard of the law.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (internal citation omitted). However, vacating an arbitration award on this ground is proper only if the court "finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace,* 378 F.3d at 189 (internal citation and quotation marks omitted). The "manifest disregard" doctrine is "severely limited," and "extreme[ly]

7

deferent[ial] to arbitrators." *Id.* The doctrine is one "of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Id.* (internal citation omitted).

Plaintiffs claim that the Arbitrator disregarded the FLSA and the NYLL because the Arbitrator's foundation for denying the arbitration awards is based on his personal belief that union workers would not work overtime without receiving overtime pay. According to Plaintiffs, this personal belief supplanted the law's requirement to pay non-exempt workers overtime pay for all hours worked over forty hours per week. (Pls.' Mem. at 7-13.) Specifically, Plaintiffs rely on two statements in the Arbitrator's written decisions that they contend illustrate the point: (1) that "an employee working in a union environment who by his own testimony was hired to work at the most 40 hours a week for a specific amount of money would just accept these ridiculous working hours … as a given is hard to swallow;" and (2) that "[i]t does not make sense that a prudent person working in a union environment paying union dues would agree to work 60 to 70 hours per week for the same amount paid for 40 hours per week. If it doesn't make sense it is not true." (*Id.* at. 10-11.)

Although the Arbitrator's statements are disconcerting, the Arbitrator's written decisions demonstrate that he did not ignore or refuse to apply the law's overtime requirement. In the arbitration awards, the Arbitrator explicitly stated that the issue was whether Plaintiffs had worked overtime and, quoting Plaintiffs' post hearing brief, noted that "it is well-settled law that [Plaintiffs'] estimates of their work hours based on their recollection alone is enough to shift the burden to the Company to show that it did in fact pay the [Plaintiffs] for all hours worked." (Exhibit C, at 5 to October 2015 Maguire Decl.) The Arbitrator then made credibility determinations and factual findings concerning Plaintiffs' testimony, manifests, and recap

receipts. He found Plaintiffs' testimony unreliable because of their inconsistencies and the documents unsupportive of Plaintiffs' claims because they did not list a clear start and end time. The Arbitrator then "weighed all the evidence and testimony," and concluded that Plaintiffs had not met their burden. (Exhibit C, at 12 to October 2015 Maguire Decl.)

The Arbitrator applied the applicable law by analyzing Plaintiffs' testimony and their evidence and concluding that they had not worked the hours they alleged. While Plaintiffs and even the Court may disagree with how the Arbitrator reached his credibility determinations, what he extrapolated from the recap receipts and manifests, or with the conclusions he reached based on his findings, these are not proper grounds for vacating the arbitration awards. *See Wallace*, 378 F.3d at 193 ("[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award.").

Plaintiffs' reliance on the Arbitrator's sweeping statements about unionized workers do not merit a different result. A review of the arbitration awards demonstrates that the statements were made in connection with the Arbitrator's credibility findings that Plaintiffs' testimony either was "incredible," inconsistent, or "unreliable," and were not used as a basis for refusing to apply the applicable law. (*See* Exhibit C to October 2015 Maguire Decl., at 8, 13.)[3] It is well established that witness credibility determinations are an integral component of an arbitrator's findings of fact, and the Court cannot disturb them. *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) (Summary Order) (internal citation omitted); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002). Here, the Arbitrator's general observations as to what union workers would do or what working conditions they would accept served as further explanation of his credibility findings. The Court may not

---

[3] The arbitration awards all contain the same statement that each Plaintiff's "testimony was found to be incredible" and "unreliable."

disturb the Arbitrator's credibility or factual findings, even when it may disagree with the credibility determination, because it may not reassess the evidentiary record. *See Wallace*, 378 F.3d at 193; *Moorning-Brown v. Bear, Stearns & Co.*, 2005 WL 22851, at \*3 (S.D.N.Y. Jan. 5, 2005).

Even if somehow the Arbitrator's statements suggested that he ignored the law, the Court still would not vacate the arbitration awards because "where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). As discussed above, it is plausible to read the contested statements in the arbitration awards as only influencing the Arbitrator's credibility findings, and not as indicating a refusal to apply the applicable law. Indeed, the Arbitrator correctly applied the law, to the facts as he found them, that Plaintiffs' documentary evidence and testimony failed to show why Defendants had not met the overtime requirements. Thus, Plaintiffs' argument does not establish a manifest disregard of the law because it does not demonstrate that the Arbitrator's personal beliefs extended to a refusal to apply the FLSA.

Plaintiffs further assert that the Arbitrator imposed a heavier burden of proof on Plaintiffs in manifest disregard of the lenient standard established by the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Specifically, Plaintiffs contend that they met their initial burden of proof because each plaintiff testified that they worked over forty hours per week and some plaintiffs produced the manifests and recap receipts to support their testimony. They contend that, after this initial showing, Defendants were required to demonstrate that Plaintiffs did not work the alleged hours, but instead the Arbitrator kept the burden of proof on Plaintiffs by requiring them to present more evidence. (*See* Pls.' Mem. at 13-

10

16.) This is the same argument just discussed and rejected. No different result is warranted by Plaintiffs' repackaging it as a heavier burden of proof imposed on them contrary to law.

Under *Anderson*, Plaintiffs have the "burden of proving that [they] performed work for which [they were] not properly compensated." *Id.* at 687. Where the employer has "inaccurate or inadequate" records, Plaintiffs have carried their burden if they prove that they have "in fact performed work for which [they were] improperly compensated and if [they] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* In the appropriate case, a plaintiff's "recollection alone" of their hours worked may constitute sufficient evidence. *See Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir.2011). While "plaintiff's burden under *Anderson* is minimal, there must be at least some credible evidence that [Plaintiff] performed overtime work." *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012) (Summary Order). Once sufficient evidence is provided, the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88.

Here, the Arbitrator's determination that Plaintiffs had not provided "at least some credible evidence" that they worked overtime, prevented Plaintiffs from meeting their initial minimal burden of proof. *See Lugardo v. Prima Pasta & Cafe, Inc.*, 2013 WL 1386160, at *4 (E.D.N.Y. Apr. 4, 2013) (finding Plaintiff's testimony not credible and noting that plaintiff "failed to meet his minimal burden" of proof). Plaintiffs' testimony did not "conclusively establish the hours worked and wages paid[,]" and the "fact finder remain[ed] free to believe or disbelieve the plaintiff[s]." *Sai Qin Chen v. E. Mkt. Rest., Inc.*, 2015 WL 5730014, at *4 (S.D.N.Y. Sept. 30, 2015). Once the Arbitrator found Plaintiffs' testimony unreliable, because

they offered "cookie cutter response[s]" to how often they worked past eight hours and later contradicted the original claim, Plaintiffs were left with only three recap receipts and three manifests to meet their minimal burden of demonstrating that "they worked overtime for almost 4,000 hours." (Exhibit H, at 9 to October 2015 Maguire Decl.) The Arbitrator found that these documents were insufficient to support Plaintiffs' allegations and stated that Plaintiffs had not met their burden of proof. The Arbitrator did not ignore or refuse to apply *Anderson's* lenient standard, but found that there was no evidence that Plaintiffs' performed overtime work every day for the entirety of their employment. *See Daniels*, 497 F. App'x at 139. Plaintiffs cannot demonstrate a manifest disregard of the law simply because the Arbitrator was unconvinced by their evidence or because they do not like how the arbitrator applied the applicable law. *See Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 74 (2d Cir. 2013) (Summary Order).

The Second Circuit has held that a court cannot vacate an arbitration award under the manifest disregard doctrine because it disagrees with the award on the merits or "because of 'a simple error in law or a failure by the arbitrators to understand or apply it.'" *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (internal citation omitted); *Wallace*, 378 F.3d at 190. Here, the Arbitrator applied the law and found that Plaintiffs had not met their burden of proof. (*See* Exhibit C to October 2015 Maguire Decl., at 12.) Even if the Court disagrees with how the Arbitrator analyzed and weighed the evidence, by entering into the CBA, "the parties bargained for a decision by the arbitrator, not necessarily a good one, and that is what they received." *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997). The manifest disregard of the law doctrine cannot save Plaintiffs from the implications of their decision.

### 2. The Arbitration Awards Do Not Violate Public Policy

A Court may vacate an arbitration award on public policy grounds, if the public policy is "well defined and dominant" and, if it is "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011). The Second Circuit has "emphasized that the public policy exception must focus on 'result, as opposed to the arbitrator's reasoning,' and may only be invoked in the face of an explicit, not a speculative, conflict." *Neshgold LP v. New York Hotel & Motel Trades Council, AFL-CIO*, 2013 WL 5298332, at *8 (S.D.N.Y. Sept. 19, 2013) (quoting *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998)).

Plaintiffs assert that enforcement of the Arbitration Awards "would be in violation of that explicit public policy preventing employers from excluding non-exempt workers from overtime pay." (Pls.' Mem. at 18.) Here, the Arbitrator simply found that Plaintiffs did not work the necessary hours to receive overtime pay. Nothing in the arbitration awards suggests that this result is contrary to public policy. Indeed, the sole purpose of the arbitration hearing was to decide whether Plaintiffs were entitled to overtime pay. Plaintiffs further contend that to "uphold the Awards based on the Arbitrator's personal conviction…while flatly ignoring the statutes at issue" is a further violation of public policy. (*Id.*) Since this argument is nothing more than a rehashing of arguments this Court already addressed and rejected, it does not establish a violation of public policy. *See Hamerslough v. Hipple*, 2012 WL 5290318, at *6 (S.D.N.Y. Oct. 25, 2012) ("[P]etitioner's argument that the denial of his minimum wage claim violates public policy must fail as well, because it proceeds on the false assumption that the award violates the minimum wage provisions in the first place.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to vacate the arbitration awards is denied,

and this action is dismissed.

SO ORDERED.

Dated:  Brooklyn, New York
          September 30, 2016

                                        _____/s/_____
                                             DORA L. IRIZARRY
                                               Chief Judge